GOVERNMENT EXHIBIT MEPE
1
24-00129-MAJ      12/5/2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,
Plaintiff

v.

OSAKWE ISMAEL OSAGBUE,
Defendant.

CRIMINAL NO. 24-129(MAJ)

**UNITED STATES' MOTION SUBMITTING EXHIBITS
AS PART OF ITS RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS**

TO THE HONORABLE COURT:

COMES NOW, the United States of America through the undersigned attorneys and to this Honorable Court it very respectfully states, alleges, and prays as follows:

1. On September 19, 2024, the United States requested an Order seeking certain records pertaining an apartment located in 11215 Georgia Ave., Wheaton, MD 20902. (ECF No. 50).  On September 20, 2024, the Court granted the United States' request (ECF No. 54).

2. The United States has received the requested documents, which among other, contain a rental application, copies of identification documents, a lease agreement, and several other documents, that contain private information of a defense witness, Mr. Steve I. Osagbue, defendant's father.

3. The United States respectfully requests that the exhibits attached herein (1-4), be accepted and considered part of the United States' response in opposition to defendant's motion to suppress.

4. However, since the exhibits contain private information of a defense witness, access to

the exhibits should be restricted, and viewing should only be allowed to court personnel, the defense, and the government, in order to protect the information contained therein.

WHEREFORE, the United States respectfully requests and prays that the exhibits attached herein (1-4), be accepted by the Court and considered part of the United States' response in opposition to defendant's motion to suppress.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 30th day of September 2024.

W. STEPHEN MULDROW
United States Attorney

s/ *Jose Capo Iriarte*
Jose Capo Iriarte
Special Assistant United States Attorney

U.S. Attorney's Office
350 Chardón Ave. Suite 1201
San Juan, PR 00918
Tel. (787) 766-5656

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30th, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to defendant's attorney of record.

s/ *Jose Capo Iriarte*
Jose Capo Iriarte
Special Assistant United States Attorney

2



Payment Submitted For: Arrive Wheaton

Date Submitted: Thu, May 26, 2022 04:36 PM MDT    IP Address ███████

| Shown on Statement as | Payment Number | Payment Amount | Convenience Fee | Payment Total |
|---|---|---|---|---|
| Arrive Wheaton | ███ 1180 | $25.00 | $0.00 | $25.00 |

Payment Type: Visa

Payment Date: 05/26/2022 04:36 PM MDT

Steve Osagbue

Arrive Wheaton

## Application Submitted For: Arrive Wheaton

Date Submitted: Thu, May 26, 2022 04:36 PM MDT    IP Address ███████

Thank you for applying online. Your rental application has been submitted. If you have not already submitted proof of income with your online application, please email it to arrivewheaton@trinity-pm.com and indicate "Proof of Income" in the subject line. Proof of income must be received before your application can be processed as your stated application income will be adjusted to match only that of which can be supported by acceptable documentation. The following are acceptable forms of income verification: 1) 4 weeks of most recent payroll check stubs 2) Most recent W-2 form 3) Most recent three months' worth of statements in applicant's name; e.g. bank statements showing consistent deposits equaling income requirements or a lump sum equaling a total of the lease obligation times your monthly income requirement (investments, stocks and bonds do not apply) 4) Recent offer letter of employment with stated salary on company letterhead (if employed for less than two months) 5) Legal paper concerning alimony and child support (must be signed by judge) 6) Award letter from scholarship and grants with verifiable dates and payments The following are NOT acceptable as verifiable income: Parent contribution letters, notarized statements listing assets, deposit receipts/ tickets. Furthermore, you understand that the purpose of the Holding Deposit is to secure the apartment off the market while your application is further screened. If approved, additional sums may be required to be paid as Security Deposit or for other purposes and the Holding Deposit sum shall be applied to the total sums due upon the execution of your Lease Agreement. If your application is denied by us or canceled by you within 72 hours, the Holding Deposit shall be returned to the Primary Applicant. If you qualify but cancel after the 72-hour period or fail to provide us with the necessary documents within the 72-hour period, you understand that your Holding Deposit is forfeited. Also note that your Application Fee is always non-refundable and payment transactions may take up to 5 days to fully process. If you have any questions about your application, please contact the Leasing Office immediately. We're happy to be of service.

### Basic Information

| | |
|---|---|
| Application ID | ███ |

| Name : | Steve Ike Osagbue | Applicant Type : | Primary |
|---|---|---|---|
| Email : | ███@gmail.com | | |
| Birth Date : | ███/1945 | | |
| Mobile : | ███2551 | | |

| Preferences | | | |
|---|---|---|---|
| Lead Source | Walk-in/Drive-by | Desired Move-in Date | 05/30/2022 |
| Desired Lease Length : | 12 months | | |

| Unit Info | | | |
|---|---|---|---|
| Property | Arrive Wheaton | Building | 1 |
| Floor Plan | Cincinnati | Unit | Apt.1027 |

| Additional Info |
|---|

| Current Address: | | | |
|---|---|---|---|
| Address | 6916 Annapolis Rd HYATTSVILLE, MARYLAND 20784 United States | | |
| Residence Type | Detached Family Home | Reason For Leaving: | Marital Problems |
| Move In Date: | ███/1987 | | |
| Monthly Payment($): | $1,000.00 | Payment Recipient: | Mortgage Company |
| Owned/Rented: | Owned | | |

| Vehicle 1 | | | |
|---|---|---|---|
| Make: | Lexus | Model: | ES350 |
| Year: | 2016 | Color: | Black |
| Plate No.: | ▮▮▮467 | | |
| State/Province: | VA | | |

| General Questions : | |
|---|---|
| Have you ever been sued for rent? | No |
| Have you ever been sued for damages? | No |
| Have you ever been evicted? | No |
| Have you ever defaulted on a lease? | No |
| Have you ever had any public record suits, liens, judgments or repossessions? | No |
| Have you ever filed for bankruptcy protection? | No |
| Do you smoke? | No |

| Education | | | |
|---|---|---|---|
| University | | Area of Study | |
| Year of Study | | | |

| Financial |
|---|
| Income Details |
| **Current Employer** |

| Address | United States | |
|---|---|---|
| Income: | 0.00 | |

**Self Employer**

| Type of Business: | Tax Preperation Business | |
|---|---|---|
| Address | RIVERDALE PARK, MARYLAND 20737<br>United States | |
| Accountant Name: | Steve Osagbue | Accountant Phone: | 2551 |
| Monthly Income($): | 10000.00 | |
| Started On: | /1987 | |
| Description: | Business Owner of a Tax Preperation Service. I prepare my own taxes company has been making 350,000+ every year for the past 20 years | |

**Options & Fees**

**Pets**

**Total Number Of Pets: 0**

**Contacts**

**Emergency Contact**

| Name: | Odili Osagbue | Relation: | Son |
|---|---|---|---|
| Phone: | -7577 | | |

**Personal Reference #1**

| Name: | ▮ Nicuraga | Relation: | Employee |
|---|---|---|---|
| Age: | 37 | Phone: | ▮-9515 |
| Address: | United States | | |

**Personal Reference #2**

| Name: | ▮ Yorik | Relation: | Employee |
|---|---|---|---|
| Age: | 30 | Phone: | ▮-5116 |
| Address: | United States | | |

### Digital Signature

| **Full Name** | Steve Osagbue |
|---|---|
| **IP Address** | ▮ |

**Please retain for your records.**
**Terms and Conditions**.



Application Submitted For: Arrive Wheaton
Date Submitted: Thu, May 26, 2022 04:36 PM MDT      IP Address: ▮▮▮▮▮▮
Birth Date: ▮▮▮/1945    Email Address: ▮▮▮▮@gmail.com

Please retain for your records.
Entrata, Inc .
You can find the ProspectPortal™ Terms & Conditions here

Page **1** of **3**

## Rental Criteria

All applicants 18 years of age and older must complete an application. All sections of the application must be completed in full. When applying online with more than 1 applicant, please do not start individual applications for each applicant. You will be asked to add additional applicants during the online application process.

### OCCUPANCY STANDARDS

In compliance with State and Federal law, Trinity Property Consultants has developed written Occupancy Guidelines. All persons who propose to reside in the unit must be included in the occupancy calculation.

Studio = 3
One Bedroom = 3
Two Bedroom = 5
Three Bedroom = 7
Four Bedroom = N/A

### RENTAL INSURANCE REQUIREMENT

Arrive Wheaton requires all Residents and Guarantors to participate in our Resident Liability Insurance Program or opt out by enrolling in Renters Insurance with a minimum limit of $100,000. Proof of renters insurance is required for those opting to work with a third-party provider. Proof would be considered as providing a Declaration Page from your insurance company or a Certificate of Insurance. You must have the community's legal name listed as FPA/WC Wheaton Station, LLC named as an additional interest. Proof of Renters Insurance or participation in the Resident Liability Insurance Program will be required before the day of move-in.

### APPLICATION REQUIREMENTS

- **Fraud Conditions** – Future residents must present a valid government issued photo ID or passport on or before the day of Move-in for scanning and validation against application data. Future residents with IDs found to be fraudulent will have their lease terminated immediately and all deposits, application fees, and admin fees paid will be deemed nonrefundable.
- **Credit Conditions** - A third party algorithm uses several factors, including: income, payment history, credit trade lines, debt, and collections to assess the risk of an applicant (or group of applicants) and provide a score that ranges from 0-100. Scores pass at 50 & above, additional deposits are assessed 30 - 49, and fail 29 & below. Any bankruptcy filed within the last 10 years will be DENIED for rental.
- **Criminal Conditions** - Convictions reported for the below period of time as allowed under the federal Fair Credit Reporting Act ("FCRA"), unless the reportable period is limited by state law or contractor search limitations. (The District of Columbia and 11 states have limitations. Those states are – CA, CO, KS, MD, MA, MT, NH, NM, NY, TX, WA. Newark, NJ has a reporting limitation of 8 years.)
  **Property** - Theft, Embezzlement, Burglary, Breaking & Entering, Larceny, Shoplifting, Vandalism, Destruction of Property, Arson, Vehicular Theft, Receiving Stolen Property
  Felony within the last 10 years - Misdemeanors within the last 7 years
  **Animal** - Cruelty, Abandonment or Neglect of Animal, Animal Fighting, Dangerous Animals, Animal at Large, Violation of Leash law, Failure to Vaccinate, Barking Dog, Hunting/Fishing Without a License, Possession of Wildlife Illegally, Animal Bite or Attack
  Felony within the last 2 years
  **Fraud** - Bribery, Fraud, Deception, Corruption, Forgery, Falsifying Documents, Counterfeiting, Insurance Fraud, Misuse, Libel, Altered License Plate/Tags/Registration, Use False ID, Credit Card Abuse, Welfare Fraud, Obtain Under False Pretenses
  Felony within the last 10 years
  **Technology** - Interception, Hacking, Cyber Stalking, Crime Against Computers, Wire Tapping, Improper Telephone Usage, Possession of Access Device (Cybercrime)
  Felony within the last 10 years
  **Family** - Family Related (Non-Violent) - Contributing to Delinquency of Minor, Harboring a Runaway Child, Non-Support, Truancy, Abandonment, Neglect
  Felony within the last 2 years



© 2021, Trinity Property Consultants

Page **2** of **3**

**Weapon -** Weapons Law Related - Carrying Concealed Weapon without License, Felon Possessing Firearm, Negligent Use of Firearm, Discharging Firearm, Possession of Deadly Weapon, No Gun Permit, Manufacturing Destructive Device, Carrying Weapon in Non-Permitted Area

Felony within the last 10 years - Misdemeanors & Other Within the last 7 years

**Organized -** Conspiracy, Laundering, Extortion, Racketeering, Attempt to Engage in Organized Crimes, Blackmail, Gang Participation

Felony within the last 2 years

**Drug -** Drug/Narcotic Related- Possession of Controlled Substance, Possession of Cocaine, Attempt to Purchase, Manufacture/Sale/Distribute Drugs, Drug Trafficking or Smuggling, Maintain Place for Drug Use, Possession within School Zone

Felony within the last 10 years - Misdemeanors & Other Within the last 7 years

**Sex -** Sex Related Offenses - Forcible/Non-Forcible, Sex Offender, Prostitution, Pornography, Obscene Material, Peeping Tom, Public Lewdness, Sodomy, Failure to Register as Sex Offender, Indecent Exposure, Rape, Exploitation of Minor

Felony All - Misdemeanors & Other All

**Violence -** Homicide/Murder, Kidnapping, Robbery, Assault &/or Battery, Domestic Violence, Manslaughter, Injury to Child or Elderly, Deadly Conduct

Felony All - Misdemeanors & Other All

**Unclassified/ Unknown -** Reporting Jurisdiction has not provided enough information on the offense to determine the categorization, classification or what the offense was

Felony within the last 10 years - Misdemeanors & Other Within the last 7 years

**Theft By Check-** Theft by issuing or passing a bad check

Felony within the last 10 years

- **Eviction Conditions -** Applicants must have NO evictions filed within the last 6 months and NO eviction judgments within the last 7 years.
- **Income Conditions –** Applicants' combined verifiable household income must be equal to or greater than 3 times the monthly rent. Guarantors may be added as a condition of approval for income between 2.99and 2.5. Assets may not contribute to the qualifying income. Stated income will be adjusted to match only that of which can be supported with acceptable documentation.

**One or a combination of the following will suffice as acceptable income documentation.**

4 weeks' most recent payroll check stubs.

Most recent year's filings (W-2 form).

Most recent three months' worth of bank statements in applicant's name; e.g. bank statements showing consistent deposits equaling income requirements or a lump sum equaling a total of the lease obligation times the monthly income requirement.

Recent offer letter of employment with stated salary on company letterhead (only accepted if employed for less than two months).

Legal paper concerning alimony and child support (must be signed by judge).

Award letter from scholarship and grants for the academic period covering lease term applied for with verifiable dates and payments.

**\*May require additional documents to support verification**

**The following are NOT acceptable forms of income documentation.**

Parent contribution letters.

Notarized statements listing assets.

Deposit tickets.

<u>**TERMS AND CONDITIONS**</u>

After submitting your application, additional information will be needed to verify your identity. Once your income has been verified, you will receive an email with instructions on this process, which may include a single-use authentication code sent to your cell phone and/or a series of authentication questions. Before beginning, please ensure all credit holds are lifted. This process is time-sensitive and will need to be completed within 10 minutes of clicking on the link in the email.



© 2021, Trinity Property Consultants

Page **3** of **3**

## GUARANTOR REQUIREMENTS

• **Credit Conditions** – A third party algorithm uses several factors, including: income, payment history, credit trade lines, debt, and collections to assess the risk of a Guarantor and provide a score that ranges from 0-100. Scores pass at 60 & above and fail 59 & Below. Any bankruptcy filed within the last 10 years will be DENIED for rental.

• **Eviction Conditions** - Guarantor must have NO evictions filed within the last 6 months and NO eviction judgments within the last 7 years.

• **Income Conditions** – Guarantor's verifiable household income must be equal to or greater than 6 times the monthly rent. Assets may not contribute to the qualifying income. Stated income will be adjusted to match only that of which can be supported with acceptable documentation.

**One or a combination of the following will suffice as acceptable income documentation.**

4 weeks most recent payroll check stubs.

Most recent year's filings (W-2 form).

Most recent three months' worth of bank statements in applicant's name; e.g. bank statements showing consistent deposits equaling income requirements or a lump sum equaling a total of the lease obligation times the monthly income requirement.

Recent offer letter of employment with stated salary on company letterhead (only accepted if employed for less than two months).

Legal paper concerning alimony and child support (must be signed by judge).

Award letter from scholarship and grants for the academic period covering lease term applied for with verifiable dates and payments.

**\*May require additional documents to support verification**

**The following are NOT acceptable forms of income documentation.**

Parent contribution letters.

Notarized statements listing assets.

Deposit tickets.

*\* Credit reports will only be processed through management's approved vendor. Any disputes you may have regarding the credit reporting information can be disputed with the rental relations department. Contact information to be listed on the adverse action letter.*
*\*\*Applicant and/or Guarantor must show a valid government issued photo I.D. or passport before position of premises. International Students must show a copy of I20.*
*\*\*\*ANY APPLICANTS THAT FALSIFY INFORMATION ON AN APPLICATION WILL BE AUTOMATICALLY DENIED FOR RENTAL.*



05/26/22 16:33 PM

*Steve J Osagbue*
Primary-ID

© 2021, Trinity Property Consultants

**residentverify**

## Consumer Authorization

In connection with my application as a tenant, I hereby authorize the above named Property and its designated agents and representatives, Resident Verify, LLC, 4205 Chapel Ridge Rd, Lehi, UT 84043, to conduct a background investigation to obtain information relating to my character, work habits, performance and to verify the accuracy of the information which I have provided on my rental application or lease.

I understand the scope of the investigation may include, but will not be limited to the following: Character References, Hard Inquiry to pull Consumer Credit History (in compliance with the Fair Credit Reporting Act), Joint Score of Applicants, Criminal Records, Civil Court Records, Current and Past Residence Verifications, Social Security Trace, Driving Records and additional services.

I understand that I must provide my date of birth to adequately complete said screening and acknowledge that my date of birth will not affect any residency decisions.

I authorize, without reservation, any law enforcement agency, business, individual, school, employer, information service bureau or public agency to release any and all information, verbal or written, pertaining to me.

I acknowledge that an electronic, facsimile or photographic copy shall be as valid as the original. This release is valid for federal, state and county agencies.

## Notice to City of Berkeley applicants only:

The tenant screening investigation will include a criminal background screening that is limited to only the Sex Offender Registry operated by the State of California Department of Justice. Your signature below will serve as your written consent to this search.

## Notice to City of Oakland applicants only:

The tenant screening investigation will include a criminal background screening that is limited to only the Sex Offender Registry operated by the State of California Department of Justice. Your signature below will serve as your written consent to this search.

**Precise ID users:**

If the property you are applying for uses the Precise ID product, you authorize your wireless operator to disclose to us your account subscriber, device, and billing information, if available, to support verification of your identity. This information may also be shared by us with other companies to support your transactions and for fraud avoidance purposes. You can find more detail about how we use your data in our Privacy Policy.

**State of Washington applicants or tenants only:** You have the right to receive a complete and accurate disclosure of the nature and scope of any investigative consumer report as well as a written summary of rights of your rights and remedies under Washington law.

**Notice to City of Seattle applicants only:**

The tenant screening investigation includes a criminal background screening, limited to sex offender registry information only. All applicants will be screened for registry information. Housing Provider considers the entire application and considers prior convictions reportable under the Fair Credit Reporting Act and rules of Washington, limited to those appearing on a local, state, or national registry only. Consideration will be given to the following factors relating to the conviction(s) that requires registry on a local, state, or national sex offender registry:

(1)        The nature and severity of the conviction;

(2)        The number and types of convictions;

(3)        The time that has elapsed since the date of conviction;

(4)        Age of the individual at the time of convictions;

(5) and        Evidence of good tenant history before and/or after the conviction occurred;

(6)        Any supplemental information related to the individual's rehabilitation, good conduct, and additional facts or explanations provided by the individual.

**New York and Maine applicants or tenants only:** You have the right to inspect and receive a copy of any investigative consumer report requested by the Company by contacting the consumer reporting agency identified above directly.

## Summary of Rights Under California Code 1786.22

This is a summary of your rights under California Code 1786.22. If you have questions or would like to request a copy of your consumer report, please contact Resident Verify by writing to the address 4205 Chapel Ridge Road, Lehi UT 84043 or by calling 866-698-0661. We will supply files and information that you have a right to inspect during normal business hours and on reasonable notice.

You have the right to request a copy of your consumer report as well as a summary of all information contained in your file, as required under the California Civil code. The requested information will be provided by telephone, if you have made a written request, with Proper Identification for telephone disclosure, and the toll charge, if any, for the telephone call if prepaid or charged directly to you.

All files the agency maintains on you will be made available for your visual inspection, as follows:

In person, if you appear in person and furnish proper identification, for copies to be sent to a specified address. However, agencies complying for a request for such a mailing will not be liable for disclosures to third parties caused by mishandling of mail after it leaves the Agency.

A summary of all information contained in your file and required to be provided to you under the California Civil code will be provided by telephone, if you have made a written request, with proper identification for telephone disclosure, and the toll charge, if any, for the telephone call is prepaid or charged directly to you.

"Proper identification" includes documents such as valid driver's license, social security number, military identification card, and credit cards. Only if you cannot identify yourself with such information may the Agency require additional information concerning your employment and personal or family history in order to verify his identity.

The Agency will provide trained personnel to explain any information furnished to you pursuant to § 1786.10

The Agency will provide a written explanation of any coded information in your file. This written explanation shall be distributed whenever a file is provided to you for visual inspection.

One other person of your choice may accompany you when you come to inspect your file. This person must furnish reasonable identification. The Agency may require you to furnish a written statement granting permission to the Agency to discuss your file in your companion presence.

**Disclosure to Consumers under Vermont Code 2480b**

**( Applicable to consumers for whom a consumer credit report was requested)**

(1)     Under Vermont law, you are allowed to receive one free copy of your credit report every 12 months from each credit reporting agency. If you would like to obtain your free credit report from Resident Verify, LLC, you should contact us by [writing to the following address: 4205 Chapel Ridge Rd, Lehi, UT 84043 or [calling the following number: (866) 698-0661 or both].

(2)     Under Vermont law, no one may access your credit report without your permission except under the following limited circumstances:

(A)       in response to a court order;

(B)       for direct mail offers of credit;

(C)       if you have given ongoing permission and you have an existing relationship with the person requesting a copy of your credit report;

(D)       where the request for a credit report is related to an education loan made, guaranteed, or serviced by the Vermont Student Assistance Corporation;

(E)       where the request for a credit report is by the Office of Child Support Services when investigating a child support case;

(F)       where the request for a credit report is related to a credit transaction entered into prior to January 1, 1993; and

(G)       where the request for a credit report is by the Vermont State Tax Department and is used for the purpose of collecting or investigating delinquent taxes.

(3)     If you believe a law regulating consumer credit reporting has been violated, you may file a complaint with the Vermont Attorney General's Consumer Assistance Program, 104 Morrill Hall, University of Vermont, Burlington, Vermont 05405.

You have a right to place a "security freeze" on your credit report pursuant to 9 V.S.A. § 2480h at no charge if you are a victim of identity theft. All other Vermont consumers will pay a fee to the credit reporting agency of up to $10.00 to place the freeze on their credit report. The security freeze will prohibit a credit reporting agency from releasing any information in your credit report without your express authorization. A security freeze must be requested in writing by certified mail.

The security freeze is designed to help prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a

security freeze to take control over who gains access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding new loans, credit, mortgage, insurance, government services or payments, rental housing, employment, investment, license, cellular phone, utilities, digital signature, internet credit card transaction, or other services, including an extension of credit at point of sale.

When you place a security freeze on your credit report, within ten business days you will be provided a personal identification number or password to use if you choose to remove the freeze on your credit report or authorize the release of your credit report for a specific party, parties or period of time after the freeze is in place. To provide that authorization, you must contact the credit reporting agency and provide all of the following:

(1)     The unique personal identification number or password provided by the credit reporting agency.

(2)     Proper identification to verify your identity.

(3)     The proper information regarding the third party or parties who are to receive the credit report or the period of time for which the report shall be available to users of the credit report.

A credit reporting agency may charge a fee of up to $5.00 to a consumer who is not a victim of identity theft to remove the freeze on your credit report or authorize the release of your credit report for a specific party, parties, or period of time after the freeze is in place. For a victim of identity theft, there is no charge when the victim submits a copy of a police report, investigative report, or complaint filed with a law enforcement agency about unlawful use of the victim's personal information by another person.

A credit reporting agency that receives a request from a consumer to lift temporarily a freeze on a credit report shall comply with the request no later than three business days after receiving the request.

A security freeze will not apply to "preauthorized approvals of credit." If you want to stop receiving preauthorized approvals of credit, you should call (866) 698-0661.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account, provided you have previously given your consent to this use of your credit reports. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

You have a right to bring a civil action against someone who violates your rights under the credit reporting laws. The action can be brought against a credit reporting agency or a user of your credit report."

(d) The information required to be disclosed by this section shall be disclosed in writing. The information required to be disclosed pursuant to subsection (c) of this section shall be disclosed on one side of a separate document, with text no smaller than that prescribed by the Federal Trade Commission for the notice required under 15 U.S.C. §

1681q. The information required to be disclosed pursuant to subsection (c) of this section may accurately reflect changes in numerical items that change over time (such as the phone number or address of Vermont State agencies), and remain in compliance.

_____                    _____


_____                    _____



05/26/22 16:33 PM

*Steve J Osagbue*

Primary-ID

**resident**verify

## Agreement to Conduct an Electronic
## Transaction

The parties to this Electronic Document Delivery agreement ("Electronic Agreement") are the applicant/ resident ("you") and Resident Verify, LLC. ("Resident Verify"), and (collectively "us" or "we"). The parties agree to the following:

1. **Electronic delivery.** Resident Verify will electronically deliver to you requested information related to your application for residency or disclosure pursuant to any laws, acts, regulations or statutes with regards to consumer reporting and/or dispute communication. Resident Verify will electronically deliver a copy of your consumer report and/or dispute communication until either party modifies or cancels this Electronic Agreement. You will receive a copy of your consumer report and/or dispute communication electronically in lieu of receiving hard copies through the U.S. Mail.

2. **Paper copy.** You may obtain a hard copy of your consumer report and/or dispute communication at any time and at no cost by contacting Resident Verify and requesting a paper copy. This can be accomplished in the following ways: by phone (866)- 698-0661, by email consumerrequests@entrata.com, or in writing at 4205 Chapel Ridge Rd, Lehi, Ut 84043.

3. **Termination.** You may terminate this Electronic Agreement by contacting Resident Verify through any of the following ways: by phone at (866)-698-0661, by email at consumerrequests@entrata.com, or in writing at 4205 Chapel Ridge Rd, Lehi, Ut 84043. After Resident Verify processes the termination we will provide only hard copies of the consumer report and/or dispute communication to you, in paper form via the U.S. Mail at the address you provide us. If this Electronic Agreement is terminated it has no legal effect on the enforceability of any other contracts we have executed with you.

4. **Notification.** You must immediately give Resident Verify notification if you change or delete the email address we use to deliver you the consumer report and/or dispute communication. Because email is the agreed upon medium used to deliver the requested documents, it is crucial that you give Resident Verify prompt notice of any changes.

5. **Legal effect.** Electronic documents have the same legal effect as hard copies. You are responsible to obtain access to your consumer report and/or dispute communication, and to open and read them. If you cannot open or access your documents please contact us to resolve this. By initialing this policy document you agree that you have a functioning and operating email account to receive emails from Resident Verify.

6. **Amendments.** Resident Verify may make amendments to the terms and conditions of this Electronic Agreement. We will provide you commercially reasonable notice of the amendments. If you do not agree to these new terms and conditions you can terminate this Electronic Agreement by the methods mentioned in section 3 of this Agreement.

7. **Delivery and access errors.** Errors in delivering and accessing your electronic documents may occur. We are not liable for anything that may arise from problems in accessing or retrieving your documents that may occur from problems associated with your telecommunications provider, or for any equipment malfunctions that are outside of our control.

8. **Acceptance.** If you accept the terms and conditions in this Electronic Agreement you will initial the policy document on the Summary page of the application. By initially the policy document, you acknowledge that you have read and understand this Electronic Agreement. This Electronic Agreement becomes effective when we receive your acceptance.

I AGREE to conduct this transaction by electronic means. I understand that by initialing the policy document I am conducting an electronic transaction and agree to use and receive communications through electronic means. I agree to enter into this Electronic Agreement electronically via the use of the Internet, and to be notified regarding this Electronic Agreement and application electronically through the email address I have ... efuse to conduct other electronic transactions.

05/26/22 16:33 PM

*Steve J Osagbue*

Primary-ID

## Addendum To Rental Application
### Criminal History and Background Screening

This Addendum MUST be presented as part of a rental application and acknowledged by the applicant.

Applicant Name- Steve Osagbue

Date- 05/26/2022

1. The Landlord has attached the following steps/processes that the landlord will follow regarding inquiries into criminal history and credit history in evaluating the application to determine your eligibility to rent:

    - The Landlord may not require the applicant to disclose any criminal background history unless the landlord has made a conditional offer to the applicant.

    - The Landlord may only conduct a criminal background check concerning the applicant after the landlord has made a conditional offer to lease the property to the applicant.

    - These Processes cannot be changed during the application process.

2. The Landlord must not require applicant to reveal any arrests or criminal record prior to making a conditional offer to rent.

3. The Landlord may not raise the rent offered in this application within 7 days after receiving the completed application.

h) and (i), Montgomery County code. Call 240-777-0311 if you have any questions.

05/26/22 16:33 PM

*Steve J Osagbue*
Primary-ID
IP

Case 3:24-cr-00129-MAJ    Document 57-1    Filed 09/30/24    Page 18 of 18

# Resident Liability Insurance
## What You Need To Know

As a condition of our lease, we require all residents to carry legal liability insurance ($100,000) for damage to the landlord's property during the term of their lease.

To satisfy this lease requirement you have two options:

### Option 1 : Do nothing - you will be automatically enrolled in our Resident Liability Insurance Program

This is an easy and low-cost way to meet your lease requirement but does not cover your personal belongings. You pay the monthly premium together with rent. (See complete details below).

**Cost: $10.95 per month**

### Option 2: Sign up for Renter's Insurance and provide proof of coverage

Having renter's insurance not only meets your lease requirement it will also protect your personal belongings from theft or damage.

**Cost: Depends on your provider**

## Resident Liability Insurance Program Details
### Policy Coverage: $100,000 Legal Liability for damage to Landlord's property.

The coverage provided by our resident liability insurance program meets the minimum requirements of the lease. The policy covers only your legal liability for damage to the landlord's property (covered losses include fire, smoke, explosion, water damage or backup or overflow of sewer, drain or sump) up to $100,000.

The policy is not personal liability insurance or renter's insurance. The policy does not cover any of your personal belongings, additional living expenses, or liability arising out of bodily injury or property damage to any third party. If you require any of this coverage, you should contact an insurance agent or insurance company of your choice and sign up for a renter's insurance policy.

**Monthly Cost:** $10.95 / Per Month

**Policy Details:** All Claims should be reported to your Property Manager.

**Questions Regarding Insurance Requirements to Maintain Lease Compliance:** Contact Aubrie DesCombes,

Stern Risk Partners: 720-417-2748 or adescombes@sternrisk.com

05/26/22 16:33 PM

*Steve I Osagbue*
Primary-ID
IP

...gation to participate in our resident liability insurance program. You may satisfy the lease ...renter's insurance or liability insurance policy from an insurance agent or insurance company coverage (a copy of the declarations page) for the duration of your lease.

...d by Great American E&S Insurance Company 300 E. Fourth Street, 20th Floor | Cincinnati, OH 45202





## ADDITIONAL SPECIAL PROVISIONS

**NAA**
NATIONAL APARTMENT ASSOCIATION

**DWELLING UNIT DESCRIPTION.**  Unit No. _____1027_____ , 11215 Georgia Avenue _____
_____ _(street address)_ in
_____Wheaton_____ _(city)_, Maryland, ___20902___ _(zip code)._

**LEASE CONTRACT DESCRIPTION.**  Lease Contract date: May 27, 2022 _____
Owner's Name:    FPA/WC Wheaton Station, LLC _____

Residents _(list all residents)_: Steve Osagbue _____

Paragraph 42 special provision. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same Agreement. Electronic signatures shall be accepted as original signatures hereof for all purposes. The Rent on page one of this agreement does not include all rentable items that were chosen during the rental process. See the additional addenda included in this lease packet for additional monthly charges.

| Resident(s)  _(All residents must sign)_ | Date of Signing Addendum |
|---|---|
| | |
| | |
| | |
| | |
| | |
| Owner or Owner's Representative | Date of Signing Addendum |

© 2019, National Apartment Association, Inc. - 2/2019, Maryland



¹ _Steve J Osagbue_    ⁴⁹ _Kristin Shafer_

# STATE OF MARYLAND UTILITY
# AND SERVICES ADDENDUM



This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated
_____ May 27, 2022 _____ between **FPA/WC Wheaton Station, LLC**

("We" and/or "we" and/or "us) and **Steve Osagbue**

"You" and/or "you") of Apt. No. _____ 1027 _____ located at **11215 Georgia Avenue**

(street address) in **Wheaton, MD 20902**
and is in addition to all terms and conditions in the Lease. This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

1. Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.

    a) **Water** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ water bills will be billed by the service provider to us and then allocated to you based on the following formula: **8**
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☒ 3rd party billing company if applicable **Conservice**

    b) **Sewer** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ sewer bills will be billed by the service provider to us and then allocated to you based on the following formula: **8**
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☒ 3rd party billing company if applicable **Conservice**

    c) **Gas** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☐ gas bills will be billed by the service provider to us and then allocated to you based on the following formula: **n/a**
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☐ 3rd party billing company if applicable _____

    d) **Trash** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☐ trash bills will be billed by the service provider to us and then allocated to you based on the following formula: **n/a**
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☐ 3rd party billing company if applicable _____

    e) **Electric** service to your dwelling will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ electric bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☐ 3rd party billing company if applicable _____

    f) **Stormwater** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ stormwater bills will be billed by the service provider to us and then allocated to you based on the following formula: **8**
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☒ 3rd party billing company if applicable **Conservice**

    g) **Cable TV** service to your dwelling will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ cable TV bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☐ 3rd party billing company if applicable _____

    h) **Master Antenna** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☐ master antenna bills will be billed by the service provider to us and then allocated to you based on the following formula: **n/a**
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☐ 3rd party billing company if applicable _____

    i) **Internet** service to your dwelling will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ internet bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☐ 3rd party billing company if applicable _____

    j) (Other) **Pest Control** _____ service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: **4**
        ☒ If flat rate is selected, the current flat rate is $ **7.00** per month.
        ☒ 3rd party billing company if applicable **Conservice**

    k) (Other) _____ service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☐ bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
        ☐ If flat rate is selected, the current flat rate is $ _____ per month.
        ☐ 3rd party billing company if applicable _____

© 2020, National Apartment Association, Inc. - 5/2020, Maryland

Page 1 of 3

    2 *Steve J Osagbue*    50 *Kristin Shafer*

METERING/ALLOCATION METHOD KEY
"1" - Sub-metering of all of your water/gas/electric use
"2" - Calculation of your total water use based on sub-metering of hot water
"3" - Calculation of your total water use based on sub-metering of cold water
"4" - Flat rate per month
"5" - Allocation based on the number of persons residing in your dwelling unit
"6" - Allocation based on the number of persons residing in your dwelling unit using a ratio occupancy formula
"7" - Allocation based on square footage of your dwelling unit
"8" - Allocation based on a combination of square footage of your dwelling unit and the number of persons residing in your dwelling unit
"9" - Allocation based on the number of bedrooms in your dwelling unit
"10" - Allocation based on a lawful formula not listed here
       (Note: if method "10" is selected, a separate sheet will be attached describing the formula used)

2. If an allocation method is used, we or our billing company will calculate your allocated share of the utilities and services provided and all costs in accordance with state and local statutes. Under any allocation method, Resident may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Resident and Owner agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Resident. Where lawful, we may change the above methods of determining your allocated share of utilities and services and all other billing methods, in our sole discretion, and after providing written notice to you. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request.

   If a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

3. When billed by us directly or through our billing company, you must pay utility bills within _____10_____ days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there are any new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.

   New Account Fee:                        $ __15.00__ (not to exceed $ __15.00__)
   Monthly Administrative Billing Fee:     $ __5.00__ (not to exceed $ __5.00__)
   Late Fee:                               $ __10.00__ (not to exceed $ __200.00__)
   Final Bill Fee:                         $ __10.00__ (not to exceed $ __20.00__)

   If allowed by state law, we at our sole discretion may amend these fees, with written notice to you.

4. You will be charged for the full period of time that you were living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your dwelling and may charge a reasonable administration fee for billing for the utility service in the amount of $ __50.00__.

5. When you move out, you will receive a final bill which may be estimated based on your prior utility usage. This bill must be paid at the time you move out or it will be deducted from the security deposit.

6. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations

7. You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease, this Utility Addendum and at law.

8. Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to non-rent charges and to rent last.

9. You represent that all occupants that will be residing in the Unit are accurately identified in the Lease. You agree to promptly notify Owner of any change in such number of occupants.

10. You agree that you may, upon thirty (30) days prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities.

11. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

12. Baltimore City Required Disclosures. Unless exempt, if your dwelling unit is located in Baltimore City, you are made a designee under the Maryland's Public Information Act to request and receive copies of account records for the water or wastewater account(s) at issue.

   Unless exempt, if your dwelling unit is located in Baltimore City, we are required by law to specify the average monthly allocated costs of water and wastewater services for the leased dwelling unit in the 12 months preceding execution of the lease/renewal of the lease. The average monthly allocated costs of water and wastewater services for the leased dwelling unit are: _____. The calculation method used for water and wastewater services for the leased dwelling unit during the 12 months preceding execution of the lease/renewal of the lease is: _____.

© 2020, National Apartment Association, Inc. - 5/2020, Maryland

*Steve J Osagbue*    *Kristin Shafer*

13. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Contract.

Your Concervise bill must be paid along with your monthly rent each month. All payments received after 5pm on the 10th of the month are subject to a late fee. Conservice is billed 2 months in arrears.

Resident Signature _____    Date _____
Resident Signature _____    Date _____
Resident Signature _____    Date _____
Resident Signature _____    Date _____
Resident Signature _____    Date _____
Resident Signature _____    Date _____
Management _____    Date _____

4 *Steve I Osagbue*    52 *Kristin Shafer*

## BED BUG ADDENDUM



Date: _____ **May 27, 2022** _____
(when this Addendum is filled out)

> *Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize the potential for any bed bugs in your dwelling or surrounding dwellings. This addendum contains important information that outlines your responsibility and potential liability with regard to bed bugs.*

**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____ **1027** _____ , **11215 Georgia Avenue**
_____ *(street address)* in
_____ **Wheaton** _____
*(city)*, Maryland, _____ **20902** _____ *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **May 27, 2022**
Owner's name: **FPA/WC Wheaton Station, LLC**
_____
_____
_____
_____

Residents *(list all residents)*:
**Steve Osagbue**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE.** This Addendum modifies the Lease Contract and addresses situations related to bed bugs *(cimex lectularius)* which may be discovered infesting the dwelling or personal property in the dwelling. You understand that we relied on your representations to us in this Addendum.

**4. INSPECTION AND INFESTATIONS.** BY SIGNING THIS ADDENDUM, YOU REPRESENT THAT:

- YOU HAVE INSPECTED THE DWELLING PRIOR TO MOVING IN, OR PRIOR TO SIGNING THIS ADDENDUM, AND YOU DID NOT FIND ANY EVIDENCE OF BED BUGS OR A BED BUG INFESTATION;

OR

- YOU WILL INSPECT THE DWELLING WITHIN 48 HOURS AFTER MOVING IN, OR WITHIN 48 HOURS AFTER SIGNING THIS ADDENDUM AND WILL NOTIFY US OF ANY BED BUGS OR BED BUG INFESTATIONS.

You agree that you have read the information provided in this Addendum and that you are not aware of any infestation or presence of bed bugs in your current or previous dwellings, furniture, clothing, personal property, or possessions. You also acknowledge that you have fully disclosed to us any previous bed bug infestations or bed bug issues that you have experienced.

If you disclose to us a previous experience with bed bug infestations or other bed bug related issues, we can review documentation of the previous treatment(s) and inspect your personal property and possession to confirm the absence of bed bugs.

**5. ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the dwelling at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate and will not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the dwelling and building. We can select the method of treating the dwelling, building and common areas for bed bugs. We can also inspect and treat adjacent or neighboring dwellings to the infestation even if those dwellings are not the source or cause of the known infestation. Unless otherwise prohibited by law, you are responsible for and must, at your own expense, have your own personal property, furniture, clothing and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so as close as possible to the time we treated the dwelling. If you fail to do so, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract. You agree not to treat the dwelling for a bed bug infestation on your own.

**6. NOTIFICATION.** You must promptly notify us:
- of any known or suspected bed bug infestation or presence in the dwelling, or in any of your clothing, furniture or personal property.
- of any recurring or unexplained bites, stings, irritations, or sores of the skin or body which you believe is caused by bed bugs, or by any condition or pest you believe is in the dwelling.
- if you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or of any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

**7. COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the dwelling and building that are infested. You must remove or destroy personal property that cannot be treated or cleaned as close as possible to the time we treated the dwelling. Any items you remove from the dwelling must be disposed of off-site and not in the property's trash receptacles. If we confirm the presence or infestation of bed bugs in your dwelling, we have the right to require you to temporarily vacate the dwelling and remove all furniture, clothing and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract.

**8. RESPONSIBILITIES.** You may be required to pay all reasonable costs of cleaning and pest control treatments incurred by us to treat your dwelling unit for bed bugs. If we confirm the presence or infestation of bed bugs after you vacate your dwelling, you may be responsible for the cost of cleaning and pest control treatments. If we must move other residents in order to treat adjoining or neighboring dwellings to your dwelling unit, you may be liable for payment of any lost rental income and other expenses incurred by us to relocate the neighboring residents and to clean and perform pest control treatments to eradicate infestations in other dwellings. If you fail to pay us for any costs you are liable for, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract, and obtain immediate possession of the dwelling. If you fail to move out after your right of occupancy has been terminated, you will be liable for holdover rent under the Lease Contract.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland

Page 1 of 3

*Steve I Osagbue*    *Kristin Shafer*

9. **TRANSFERS.** If we allow you to transfer to another dwelling in the community because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction.

10. Unless otherwise prohibited by applicable law, we are not liable for any personal injury or property damage that may result from a bed bug infestation and recommend that you obtain renter's insurance to protect against any loss or damages.

11. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**You are legally bound by this document. Please read it carefully.**

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

_____

_____

_____          **Date of Signing Addendum**

_____

_____          _____

_____

*You are entitled to receive an original of this Addendum after it is fully signed. Keep it in a safe place.*

© 2021, National Apartment Association, Inc. - 9/2021, Maryland

*Steve J Osagbue*    *Kristin Shafer*

## BED BUGS — A Guide for Rental Housing Residents

Bed bugs, with a typical lifespan of 6 to 12 months, are wingless, flat, broadly oval-shaped insects. Capable of reaching the size of an apple seed at full growth, bed bugs are distinguishable by their reddish-brown color, although after feeding on the blood of humans and warm-blooded animals—their sole food source—the bugs assume a distinctly blood-red hue until digestion is complete.

### Bed bugs don't discriminate

Bed bugs increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness.

Bottom line: bed bugs know no social and economic bounds; claims to the contrary are false.

### Bed bugs don't transmit disease

There exists no scientific evidence that bed bugs transmit disease. In fact, federal agencies tasked with addressing pest of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease transmitting pests. Again, claims associating bed bugs with disease are false.

### Identifying bed bugs

*Bed bugs can often be found in, around and between:*
- Bedding
- Bed frames
- Mattress seams
- Upholstered furniture, especially under cushions and along seams
- Around, behind and under wood furniture, especially along areas where drawers slide
- Curtains and draperies
- Along window and door frames
- Ceiling and wall junctions
- Crown moldings
- Behind and around wall hangings and loose wallpaper
- Between carpeting and walls (carpet can be pulled away from the wall and tack strip)
- Cracks and crevices in walls and floors
- Inside electronic devices, such as smoke and carbon monoxide detectors

- Because bed bugs leave some persons with itchy welts strikingly similar to those caused by fleas and mosquitoes, the origination of such markings often go misdiagnosed. However, welts caused by bed bugs often times appear in succession and on exposed areas of skin, such as the face, neck and arms. In some cases, an individual may not experience any visible reaction resulting from direct contact with bed bugs.
- While bed bugs typically prefer to act at night, they often do not succeed in returning to their hiding spots without leaving traces of their presence through fecal markings of a red to dark brown color, visible on or near beds. Blood stains tend also to appear when the bugs have been squashed, usually by an unsuspecting host in their sleep. And, because they shed, it's not uncommon for skin casts to be left behind in areas typically frequented by bed bugs.

### Preventing bed bug encounters when traveling

Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, so as to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

### Bed bug do's and don'ts
- **Do not bring used furniture from unknown sources into your dwelling.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture. Unless the determination can be made with absolute certainty that a piece of second-hand furniture is bed bug-free, residents should assume that the reason a seemingly nice looking leather couch, for example, is sitting curbside, waiting to be hauled off to the landfill, may very well be due to the fact that it's teeming with bed bugs.
- **Do address bed bug sightings immediately.** Rental housing residents who suspect the presence of bed bugs in their unit must immediately notify the owner.
- **Do not attempt to treat bed bug infestations.** Under no circumstance should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your unit is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both your owner and their designated pest management company.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland

Page 3 of 3

*Steve J Osagbue    Kristin Shafer*

## MOLD INFORMATION AND PREVENTION ADDENDUM



> *Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize any mold growth in your dwelling. That is why this addendum contains important information for you, and responsibilities for both you and us.*

**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____1027_____ , __11215 Georgia__ __Avenue__
_____ *(street address)* in
_____ Wheaton _____
*(city)*, Maryland, _____20902_____ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **May 27, 2022** _____
Owner's name: **FPA/WC Wheaton Station, LLC** _____
_____
_____
_____
_____

Residents *(list all residents)*:
**Steve Osagbue** _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ABOUT MOLD.** Mold is found virtually everywhere in our environment—both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores and have existed practically from the beginning of time. All of us have lived with mold spores all our lives. Without molds we would all be struggling with large amounts of dead organic matter.

Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside a dwelling, mold can grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for person with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken.

**4. PREVENTING MOLD BEGINS WITH YOU.** In order to minimize the potential for mold growth in your dwelling, you must do the following:

• Keep your dwelling clean—particularly the kitchen, the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away moldy food.

• Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines—especially if the leak is large enough for water to infiltrate nearby walls. Turn on any exhaust fans in the bathroom and kitchen *before* you start showering or

cooking with open pots. When showering, be sure to keep the shower curtain *inside* the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off of shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.

• Promptly notify us in writing about any air conditioning or heating system problems you discover. Follow our rules, if any, regarding replacement of air filters. Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your dwelling dry out.

• Promptly notify us in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.

• Keep the thermostat set to automatically circulate air in the event temperatures rise to or above 80 degrees Fahrenheit.

**5. IN ORDER TO AVOID MOLD GROWTH,** it is important to prevent excessive moisture buildup in your dwelling. Failure to promptly pay attention to leaks and moisture that might accumulate on dwelling surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:

• rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level;

• overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines;

• leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;

• washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;

• leaks from clothes dryer discharge vents (which can put lots of moisture into the air); and

• insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

**6. IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON** *NON-POROUS* **SURFACES** (such as ceramic tile, formica, vinyl flooring, metal, wood or plastic), the federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water, let the surface dry, and then within 24 hours apply a pre-mixed, spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold). Tilex® and Clorox® contain bleach which can discolor or stain. **Be sure to follow the instructions on the container.** Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.

Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be

© 2019, National Apartment Association, Inc. - 2/2019, Maryland

Page 1 of 2

<sup>8</sup> *Steve I Osagbue*    <sup>56</sup> *Kristin Shafer*

used to help remove non-visible mold products from porous items, such as fibers in sofas, chairs, drapes and carpets—provided the fibers are completely dry. Machine washing or dry cleaning will remove mold from clothes.

7. **DO NOT CLEAN OR APPLY BIOCIDES TO:** (1) visible mold on porous surfaces, such as sheetrock walls or ceilings, or (2) large areas of visible mold on non-porous surfaces. Instead, notify us in writing, and we will take appropriate action.

8. **COMPLIANCE.** Complying with this addendum will help prevent mold growth in your dwelling, and both you and we will be able to respond correctly if problems develop that could lead to mold growth. If you have questions regarding this addendum, please contact us at the management office or at the phone number shown in your Lease Contract.

**If you fail to comply with this Addendum, you can be held responsible for property damage to the dwelling and any health problems that may result. We can't fix problems in your dwelling unless we know about them.**

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs here)*

_____

**Date of Lease Contract**

_____ May 27, 2022 _____

Page 2 of 2

Maryland/National Apartment Association Official Form, February 2019
© 2019, National Apartment Association, Inc.

*⁹ Steve J Osagbue    ⁵¹ Kristin Shafer*

## LEASE CONTRACT BUY-OUT AGREEMENT

**NAA**
NATIONAL APARTMENT ASSOCIATION
— We Lead the Way Home —

**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____1027_____ , 11215 Georgia Avenue
_____ (street address) in
_____Wheaton_____
(city), Maryland, _____20902_____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: May 27, 2022
Owner's name: FPA/WC Wheaton Station, LLC
_____
_____
_____

Residents (list all residents):
Steve Osagbue
_____
_____
_____
_____
_____
_____
_____
_____

**3. PURPOSE OF AGREEMENT.** The purpose of this Buy-Out Agreement is to give you the right to buy out of your Lease Contract early—subject to any special provisions in paragraph 9 below. In order to buy out early, your notice must be signed by all residents listed in paragraph 1 of the Lease Contract and you must comply with all provisions of this Buy-Out Agreement.

**4. BUY-OUT PROCEDURES.** You may buy out of the Lease Contract prior to the end of the lease term and cut off all liability for paying rent for the remainder of the lease term *if all of the following occur:*

(a) you give us written notice of buy-out at least __90__ days prior to the new termination date (i.e., your new move-out date), which *(check one)* ☐ must be the last day of a month or ☒ may be during a month;

(b) you specify the new termination date in the notice, i.e., the date by which you'll move out;

(c) you are not in default under the Lease Contract on the date you give us the notice of buy-out;

(d) you are not in default under the Lease Contract on the new termination date (move-out date);

(e) you move out on or before the new termination date and do not hold over;

(f) you pay us a buy-out fee (consideration) of $ _2739.00_ ;

(g) you pay us the amount of any concessions you received when signing the Lease Contract; and

(h) you comply with any special provisions in paragraph 9 below.

**5. WHEN PAYABLE.** The buy-out fee in paragraph 4(f) is due and payable no later than __0__ days after you give us your buy-out notice. The total dollar amount of any concessions regarding rent or other monetary lease obligations for the entire lease term is $ __0.00__ and is due payable on the same day as the buy-out fee, subject to any special provisions in paragraph 9 regarding the amount, calculation method, or payment date.

**6. SHOWING UNIT TO PROSPECTIVE RESIDENTS.** After you give us notice of buy-out, the Lease Contract gives us the right to begin showing your unit to prospective residents and telling them it will be available immediately after your new termination date.

**7. COMPLIANCE ESSENTIAL.** Our deposit of all amounts due under paragraphs 4(f) and 4(g) constitutes our approval of the new termination date stated in your notice of buy-out. If you fail to comply with any of the procedures or requirements in this agreement after we deposit such monies, your buy-out right and this agreement will be voided automatically; and (1) any amounts you have paid under this agreement will become part of your security deposit, and (2) the lease will continue without buy-out. Then, if you move out early, you are subject to all lease remedies, including reletting fees and liability for all rents for the remainder of the original lease term.

**8. MISCELLANEOUS.** If moving out by the new termination date becomes a problem for you, contact us. An extension may be possible if we have not already relet the dwelling unit to a successor resident. We and any successor residents who may be leasing your unit will be relying on your moving out on or before the new termination date. Therefore, you may not hold over beyond such date without our written consent—even if it means you have to make plans for temporary lodging elsewhere. "Default" as used in paragraphs 4(c) and 4(d) of this agreement means default as defined in the Lease Contract. You will continue to be liable for any damages and any sums accruing and unpaid prior to the new termination date.

**9. SPECIAL PROVISIONS.** Your right of buy-out *(check one)* ☐ is or ☒ is not limited to a particular fact situation. If limited, buy-out may be exercised only if the following facts (see below) occur and any described documents are furnished to us. Any special provisions below will supersede any conflicting provision of this printed agreement. Any false statements or documents presented to us regarding buy-out will automatically void your right to buy-out of the Lease Contract. The special provisions are:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs below)*
_____

**Date of Lease Contract**
_____May 27, 2022_____

© 2019, National Apartment Association, Inc. - 2/2019, Maryland

*Steve J Osagbue    Kristin Shafer*

## LEASE CONTRACT ADDENDUM
## FOR SATELLITE DISH OR ANTENNA



Under a Federal Communications Commission (FCC) order, you as our resident have a right to install a transmitting or receiving satellite dish or antenna on the leased dwelling, subject to FCC limitations. We as a rental housing owner are allowed to impose reasonable restrictions relating to such installation. You are required to comply with these restrictions as a condition of installing such equipment. This addendum contains the restrictions that you and we agree to follow.

**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____1027_____, 11215 Georgia Avenue
_____ (street address) in
_____Wheaton_____
(city), Maryland, _____20902_____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: May 27, 2022
Owner's name: FPA/WC Wheaton Station, LLC
_____
_____
_____

Residents (list all residents):
Steve Osagbue
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. NUMBER AND SIZE.** You may install ___0___ satellite dish(es) or antenna(s) on the leased premises. A satellite dish may not exceed one meter (3.3 feet) in diameter. Antennas that only transmit signals or that are not covered by 47 CFR § 1.4000 are prohibited.

**4. LOCATION.** Your satellite dish or antenna must be located: (1) inside your dwelling; or (2) in an area outside your dwelling such as a balcony, patio, yard, etc. of which you have exclusive use under your lease. Installation is not permitted on any parking area, roof, exterior wall, window, window sill, fence or common area, or in an area that other residents are allowed to use. A satellite dish or antenna may not protrude beyond the vertical and horizontal space that is leased to you for your exclusive use.

**5. SAFETY AND NON-INTERFERENCE.** Your installation: (1) must comply with all applicable ordinances and laws and all reasonable safety standards; (2) may not interfere with our cable, telephone or electrical systems or those of neighboring properties; (3) may not be connected to our telecommunication systems; and (4) may not be connected to our electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by one of three methods: (1) securely attaching it to a portable, heavy object such as a small slab of concrete; (2) clamping it to a part of the building's exterior that lies within your leased premises (such as a balcony or patio railing); or (3) any other method approved by us in writing. No other methods are allowed. We may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

**6. SIGNAL TRANSMISSION FROM EXTERIOR DISH OR ANTENNA TO INTERIOR OF DWELLING.** You may not damage or alter the leased premises and may not drill holes through outside walls, door jams, window sills, etc. If your satellite dish or antenna is installed outside your dwelling (on a balcony, patio, etc.), the signals received by it may be transmitted to the interior of your dwelling only by the following methods: (1) running a "flat" cable under a door jam or window sill in a manner that does not physically alter the premises and does not interfere with proper operation of the door or window; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables "through a window pane," similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window—without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the dwelling; or (5) any other method approved by us in writing.

**7. SAFETY IN INSTALLATION.** In order to assure safety, the strength and type of materials used for installation must be approved by us. Installation must be done by a qualified person or company approved by us. Our approval will not be unreasonably withheld. An installer provided by the seller of the satellite dish or antenna is presumed to be qualified.

**8. MAINTENANCE.** You will have the sole responsibility for maintaining your satellite dish, antenna and all related equipment.

**9. REMOVAL AND DAMAGES.** You must remove the satellite dish or antenna and all related equipment when you move out of the dwelling. In accordance with the Lease Contract, you must pay for any damages and for the cost of repairs or repainting caused by negligence, carelessness, accident or abuse which may be reasonably necessary to restore the leased premises to its condition prior to the installation of your satellite dish, antenna or related equipment. You will not be responsible for normal wear.

**10. LIABILITY INSURANCE.** You must take full responsibility for the satellite dish, antenna and related equipment. If the dish or antenna is installed at a height that could result in injury to others if it becomes unattached and falls, you must provide us with evidence of liability insurance (if available) to protect us against claims of personal injury and property damage to others, related to your satellite dish, antenna and related equipment. The insurance coverage must be $ ___200000.00___, which is an amount reasonably determined by us to accomplish that purpose. Factors affecting the amount of insurance include height of installation above ground level, potential wind velocities, risk of the dish/antenna becoming unattached and falling on someone, etc.

**11. SECURITY DEPOSIT.** An additional security deposit of $ ___0.00___ will be charged. The security deposit amount in the Security Deposit paragraph of the Lease Contract (check one) ☐ does or ☒ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract.

*Steve J Osagbue*          *Kristin Shafer*

This additional security deposit is required to help protect us against possible repair costs, damages, or failure to remove the satellite dish, antenna and related equipment at time of move-out. Factors affecting any security deposit may vary, depending on: (1) how the dish or antenna is attached (nails, screws, lag bolts drilled into walls); (2) whether holes were permitted to be drilled through walls for the cable between the satellite dish and the TV; and (3) the difficulty and cost repair or restoration after removal, etc.

12. **WHEN YOU MAY BEGIN INSTALLATION.** You may start installation of your satellite dish, antenna or related equipment only after you have: (1) signed this addendum; (2) provided us with written evidence of the liability insurance referred to in paragraph 10 of this addendum; (3) paid us the additional security deposit, if applicable, in paragraph 11; and (4) received our written approval of the installation materials and the person or company that will do the installation, which approval may not be unreasonably withheld.

13. **MISCELLANEOUS.** If additional satellite dishes or antennas are desired, an additional lease addendum must be executed.

14. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

Building structure prohibits any installation of satellites.

**Resident or Residents**
*(All residents must sign here)*

**Owner or Owner's Representative**
*(Signs here)*

**Date of Lease Contract**

May 27, 2022

© 2021, National Apartment Association, Inc. - 9/2021, Maryland

1.2  *Steve J Osagbue*    60  *Kristin Shafer*

## COMMUNITY POLICIES, RULES AND REGULATIONS
### ADDENDUM



*This addendum is incorporated into the Lease Contract (the "Lease") identified below and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Owner:*  FPA/WC Wheaton Station, LLC

*Resident(s):*  Steve Osagbue

*Unit No./Address:*  #1027, 11215 Georgia Avenue, Wheaton, MD 20902

*Lease Date:*  05/27/2022

**I.  GENERAL CONDITIONS FOR USE OF DWELLING PROPERTY AND RECREATIONAL FACILITIES.**
Resident(s) permission for use of all common areas, Resident amenities, and recreational facilities (together, "Amenities") located at the Dwelling Community is a privilege and license granted by Owner, and not a contractual right except as otherwise provided for in the Lease. Such permission is expressly conditioned upon Resident's adherence to the terms of the Lease, this Addendum, and the Community rules and regulations ("Rules") in effect at any given time, and such permission may be revoked by Owner at any time for any lawful reason. In all cases, the most strict terms of either the Lease, this Addendum, or the Community Rules shall control. Owner reserves the right to set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Resident. Owner and management may make changes to the Rules for use of any Amenity at any time.

**II.  POOL.**  This Community ☒ DOES;  ☐ DOES NOT have a pool. When using the pool, Resident(s) agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the pool area and Management policies.
- All Swimmers swim at their own risk. Unless otherwise prohibited by law, Owner is not responsible for accidents or injuries.
- For their safety, Residents should not swim alone.
- Pool hours are posted at the pool.
- No glass, pets, or alcoholic beverages are permitted in the pool area. Use paper or plastic containers only.
- Proper swimming attire is required at all times and a swimsuit "cover up" should be worn to and from the pool.
- No running or rough activities are allowed in the pool area. Respect others by minimizing noise, covering pool furniture with a towel when using suntan oils, leaving pool furniture in pool areas, disposing of trash, and keeping pool gates closed.
- Resident(s) must accompany their guests.
- Resident(s) must notify Owner any time there is a problem or safety hazard at the pool.

### IN CASE OF EMERGENCY DIAL 911

**III.  FITNESS CENTER.**  This Community ☒ DOES;  ☐ DOES NOT have a fitness center. When using the fitness center, Resident agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the fitness center and Management policies.
- The Fitness Center is not supervised. Resident(s) are solely responsible for their own appropriate use of equipment.
- Resident(s) shall carefully inspect each piece of equipment prior to Resident's use and shall refrain from using any equipment that may be functioning improperly or that may be damaged or dangerous.
- Resident(s) shall immediately report to Management any equipment that is not functioning properly, is damaged or appears dangerous, as well any other person's use that appears to be dangerous or in violation of Management Rules and Policies.
- Resident(s) shall consult a physician before using any equipment in the Fitness Center and before participating in any aerobics or exercise class, and will refrain from such use or participation unless approved by Resident's physician.
- Resident(s) will keep Fitness Center locked at all times during Resident's visit to the Fitness Center.
- Resident(s) will not admit any person to the Fitness Center who has not registered with the Management Office.
- Resident(s) must accompany guests, and no glass, smoking, eating, alcoholic beverages, pets, or black sole shoes are permitted in the Fitness Center.

Card # issued:  (1) _____  (3) _____  (5) _____
                (2) _____  (4) _____  (6) _____

**IV.  PACKAGE RELEASE.**  This Community ☒ DOES;  ☐ DOES NOT accept packages on behalf of Residents.

*For communities that do accept packages on behalf of its Residents:*
Resident(s) gives Owner permission to sign and accept any parcels or letters sent to Resident(s) through UPS, Federal Express, Airborne, United States Postal Service or the like. Resident agrees that Owner does not accept responsibility or liability for any lost, damaged, or unordered deliveries, and agrees to hold Owner harmless for the same.

**V.  BUSINESS CENTER.**  This Community ☒ DOES;  ☐ DOES NOT have a business center.
Resident(s) agrees to use the business center at Resident(s) sole risk and according to the Rules and Regulations posted in the business center and Management policies. Owner is not responsible for data, files, programs or any other information lost or damaged on Business Center computers or in the Business Center for any reason. No software may be loaded on Business Center computers without the written approval of Community Management. No inappropriate, offensive, or pornographic images or files (in the sole judgment of Owner) will be viewed or loaded onto the Business Center computers at any time. Residents will limit time on computers to _____60_____ minutes if others are waiting to use them. Smoking, eating, alcoholic beverages, pets, and any disturbing behavior are prohibited in the business center.

Revised 9/2021, Maryland                                                                    Page 1 of 3

*13* Steve J Osagbue    *61* Kristin Shafer

VI.   **AUTOMOBILES/BOATS/RECREATIONAL VEHICLES.**   The following policies are in addition to those in the Lease, and may be modified by the additional rules in effect at the Community at any given time:
- Only _____1_____ vehicle per licensed Resident is allowed.
- All vehicles must be registered at the Management office.
- Any vehicle(s) not registered, considered abandoned, or violating the Lease, this Addendum, or the Community Rules, in the sole judgment of Management, will be towed at the vehicle owner's expense after a _____24_____ hour notice is placed on the vehicle.
- Notwithstanding this, any vehicle illegally parked in a fire lane, designated no parking space or handicapped space, or blocking an entrance, exit, driveway, dumpster, or parked illegally in a designated parking space, will immediately be towed, without notice, at the vehicle owner's expense.
- The washing of vehicles is not permitted on the property unless specifically allowed in designated area.
- Any on property repairs and/or maintenance of any vehicle must be with the prior written permission of the Management.
- Recreational vehicles, boats or trailers may only be parked on the property with Management's permission (in Management's sole discretion), and must be registered with the Management Office and parked in the area(s) designated by Management.

VII.   **FIRE HAZARDS.**   In order to minimize fire hazards and comply with applicable law, Resident shall comply with the following:
- Residents and guests will adhere to the Community rules and regulations and other Management policies concerning fire hazards, which may be revised from time to time.
- No person shall knowingly maintain a fire hazard.
- **Grills, Barbeques, and any other outdoor cooking or open flame devices will be used only on the ground level and will be placed a minimum of _____90_____ feet from any building.** Such devices will not be used close to combustible materials, tall grass or weeds, on exterior walls or on roofs, indoors, on balconies or patios, or in other locations which may cause fires.
- Fireplaces:   Only firewood is permitted in the fireplace. No artificial substances, such as Duraflame® logs are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold.
- Flammable or combustible liquids and fuels shall not be used or stored (including stock for sale) in dwellings, near exits, stairways, breezeways, or areas normally used for the ingress and egress of people. This includes motorcycles and any apparatus or engine using flammable or combustible liquid as fuel.
- No person shall block or obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.
- Resident(s) are solely responsible for fines or penalties caused by their actions in violation of local fire protection codes.

VIII.   **EXTERMINATING.**   Unless prohibited by statute or otherwise stated in the Lease, Owner may conduct extermination operations in Residents' dwelling several times a year and as needed to prevent insect infestation. Owner will notify Residents in advance of extermination in Residents' Dwelling, and give Resident instructions for the preparation of the Dwelling and safe contact with insecticides. Residents will be responsible to prepare the Dwelling for extermination in accordance with Owner's instructions. If Residents are unprepared for a scheduled treatment date Owner will prepare Residents' dwelling and charge Residents accordingly. Residents must request extermination treatment in addition to those regularly provided by Owner in writing. **Residents agree to perform the tasks required by Owner on the day of interior extermination to ensure the safety and effectiveness of the extermination. These tasks will include, but are not limited to, the following:**
- Clean in all cabinets, drawers and closets in kitchen and pantry.
- If roaches have been seen in closets, remove contents from shelves and floor.
- Remove infants and young children from the dwelling.
- Remove pets or place them in bedrooms, and notify Owner of such placement.
- Remove chain locks or other types of obstruction on day of service.
- Cover fish tanks and turn off their air pumps.
- Do not wipe out cabinets after treatment.

In the case of suspected or confirmed bed bug infestation, resident will agree to the following:
- Resident will wash all clothing, bed sheets, draperies, towels, etc. in extremely hot water.
- Resident will thoroughly clean, off premises, all luggage, handbags, shoes and clothes hanging containers.
- Resident will cooperate with Owner's cleaning efforts for all mattresses and seat cushions or other upholstered furniture, and will dispose of same if requested.

<u>**RESIDENTS ARE SOLELY RESPONSIBLE TO NOTIFY OWNER IN WRITING PRIOR TO EXTERMINATION OF ANY ANTICIPATED HEALTH OR SAFETY CONCERNS RELATED TO EXTERMINATION AND THE USE OF INSECTICIDES**</u>

IX.   **DRAPES AND SHADES.**   Drapes or shades installed by Resident, when allowed, must be lined in white and present a uniform exterior appearance.

X.   **WATER BEDS.**   Resident shall not have water beds or other water furniture in the dwelling without prior written permission of Owner.

XI.   **BALCONY or PATIO.**   Balconies and patios shall be kept neat and clean at all times. No rugs, towels, laundry, clothing, appliances or other items shall be stored, hung or draped on railings or other portions of balconies or patios. No misuse of the space is permitted, including but not limited to, throwing, spilling or pouring liquids or other items, whether intentionally or negligently, over the balconies or patios.

XII.   **SIGNS.**   Resident shall not display any signs, exterior lights or markings on dwelling. No awnings or other projections shall be attached to the outside of the building of which dwelling is a part.

XIII.   **SATELLITE DISHES/ANTENNAS.**   You must complete a satellite addendum and abide by its terms prior to installation or use.

XIV.   **WAIVER/SEVERABILITY CLAUSE.**   No waiver of any provision herein, or in any Community rules and regulations, shall be effective unless granted by the Owner in a signed and dated writing. If any court of competent jurisdiction finds that any clause, phrase, or provision of this Part is invalid for any reason whatsoever, this finding shall not effect the validity of the remaining portions of this addendum, the Lease Contract or any other addenda to the Lease Contract.

Revised 9/2021, Maryland                                                                                                          Page 2 of 3

*14 Steve J Osagbue    6.2 Kristin Shafer*

XV. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

Grills of any kind are not permitted.

I have read, understand and agree to comply with the preceding provisions.

| | | | |
|---|---|---|---|
| Resident | Date | Resident | Date |
| Resident | Date | Resident | Date |
| Resident | Date | Resident | Date |
| Owner Representative | | Date | |

Revised 9/2021, Maryland                                                                 Page 3 of 3

*Steve J Osagbue*    *Kristin Shafer*

**LEASE ADDENDUM**
**LIABILITY INSURANCE REQUIRED OF RESIDENT**



**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____1027_____, _11215 Georgia_
_Avenue_
_____ (street address) in
_____Wheaton_____
(city), Maryland, _____20902_____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: _May 27, 2022_
Owner's name: _FPA/WC Wheaton Station, LLC_
_____
_____
_____

Residents _(list all residents)_:

_Steve Osagbue_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ACKNOWLEDGMENT CONCERNING INSURANCE OR DAMAGE WAIVER.** You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own liability for injury, loss or damage you (or your occupants or guests or the guest of any occupants) may cause others. You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) for the full cost of any injury, loss or damage caused by your actions or the actions of your occupants or guests or the guest of any occupants. You understand that the Insurance paragraph of the Lease Contract requires you to maintain a liability insurance policy, which provides limits of liability to third parties in an amount not less than $ _____100000.00_____ per occurrence. You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods a policy of personal liability insurance satisfying the requirements listed below, at your sole expense.

**4. REQUIRED POLICY.** You are required to purchase and maintain personal liability insurance covering you, your occupants and guests and the guest of any occupants, for personal injury and property damage any of you cause to third parties (including damage to our property), naming the owner as an insured in the minimum amount of $ _100000.00_

for property and $ ___100000.00___ for personal liability, from a carrier with an AM Best rating of A-VII or better, licensed to do business in Maryland. The carrier is required to provide notice to us within 30 days of any cancellation, non-renewal, or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

**5.** We may provide you with information of an insurance program that we make available to residents, which provides you with an opportunity to buy renter's insurance from a preferred company. However, you are free to contract for the required insurance with a provider of your choosing.

**6. SUBROGATION ALLOWED.** You and we agree that subrogation is allowed by all parties and that this agreement supersedes any language to the contrary in the Lease Contract.

**7. YOUR INSURANCE COVERAGE.** You have purchased the required personal liability insurance from the insurance company of your choosing listed below that is licensed to do business in this state, and have provided us with written proof of this insurance prior to the execution and commencement of the Lease Contract. You will provide additional proof of insurance in the future at our request.

Insurance Company: _____
_____

**8. DEFAULT.** Any default under the terms of this Addendum shall be deemed an immediate, material and incurable default under the terms of the Lease Contract, and we shall be entitled to exercise all rights and remedies under the law.

**9. MISCELLANEOUS.** Except as specifically stated in this Addendum, all other terms and conditions of the Lease Contract shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease Contract, the terms of this Addendum shall control.

**10. SPECIAL PROVISIONS:**

_Trinity Property Consultants requires each_
_Resident and Guarantor to maintain Renters_
_Insurance. Renters Insurance may be_
_acquired from the approved carrier for the_
_property or with proof from a third-party_
_carrier. Proof would be considered as_
_providing a Declaration Page from your_
_Insurance Company or a Certificate of_
_insurance provided by the provider. You_
_must have the community's legal name_
_listed as an additional interest. Proof of_
_Insurance will be required before the day_
_of move-in. Trinity requires all new and_
_renewing residents to have a Renters_
_Insurance policy with a minimum liability_
_limit of $100,000._
_____
_____
_____
_____

I have read, understand and agree to comply with the preceding provisions.

| Resident or Residents | Owner or Owner's Representative |
|---|---|
| _(All residents must sign here)_ | _(Signs here)_ |

_____

_____

_____    Date of Lease Contract

_____

_____    _May 27, 2022_

© 2021, National Apartment Association, Inc. · 9/2021, Maryland

_Steve J Osagbue_    _Kristin Shafer_

## LEASE ADDENDUM
## FOR REMOTE CONTROL, CARD, OR CODE ACCESS GATE



**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____1027_____, 11215 Georgia Avenue _____
_____ (street address) in
_____Wheaton_____
(city), Maryland, _____20902_____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: May 27, 2022 _____
Owner's name: FPA/WC Wheaton Station, LLC _____
_____
_____
_____

Residents (list all residents):

Steve Osagbue _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. REMOTE CONTROL/CARDS/CODE FOR GATE ACCESS.**

☒ **Remote control for gate access.** Each person who is listed as a resident on the lease will be given a remote control at no cost to use during his or her residency. Each additional remote control for you or other occupants will require a $ __100.00__ non-refundable fee.

☐ **Cards for gate access.** Each person who is listed as a resident on the lease will be given a card at no cost to use during his or her residency. Each additional card for you or other occupants will require a $ _____ non-refundable fee.

☐ **Code for gate access.** Each resident will be given, at no cost, an access code (keypad number) for the pedestrian or vehicular access gates. It is to be used only during your residency. We may change the access code at any time and will notify you of any such changes. Resident acknowledges and agrees that any access device is intended solely for use by Resident and/or authorized occupants listed in the Lease Contract. Unless otherwise agreed by us in writing, any use by person(s) other than Resident and/or authorized occupants listed in the Lease Contract shall be considered a material breach of the Lease.

**4. DAMAGED, LOST OR UNRETURNED REMOTE CONTROLS, CARDS OR CODE CHANGES.**

☒ If a remote control is lost, stolen or damaged, a $ __100.00__ fee will be charged for a replacement. If a remote control is not returned or is returned damaged when you move out, there will be a $ __100.00__ deduction from the security deposit.

☐ If a card is lost, stolen or damaged, a $ _____ fee will be charged for a replacement card. If a card is not returned or is returned damaged when you move out, there will be a $ _____ deduction from the security deposit.

☐ We may change the code(s) at any time and notify you accordingly.

**5. REPORT DAMAGE OR MALFUNCTIONS.** Please immediately report to the office any malfunction or damage to gates, fencing, locks or related equipment.

**6. FOLLOW WRITTEN INSTRUCTIONS.** We ask that you and all other occupants read the written instructions that have been furnished to you regarding the access gates. This is important because if the gates are damaged by you or other occupants, guests or invitees through negligence or misuse, you are liable for the damages under your lease, and collection of damage amounts will be pursued.

**7. PERSONAL INJURY AND/OR PERSONAL PROPERTY DAMAGE.** Except as specifically required by law, we have no duty to maintain the gates and cannot guaranty against gate malfunctions. We make no representations or guarantees to you concerning security of the community. Any measures, devices, or activities taken by us are solely for the benefit of us and for the protection of our property and interests, and any benefit to you of the same is purely incidental. Anything mechanical or electronic is subject to malfunction. Fencing, gates or other devices will not prevent all crime. No security system or device is foolproof or 100 percent successful in deterring crime. Crime can still occur. Protecting residents, their families, occupants, guests and invitees from crime is the sole responsibility of residents, occupants and law enforcement agencies. You should first call 911 or other appropriate emergency police numbers if a crime occurs or is suspected. We are not liable to any resident, family member, guest, occupant or invitee for personal injury, death or damage/loss of personal property from incidents related to perimeter fencing, automobile access gates and/or pedestrian access gates. We reserve the right to modify or eliminate security systems other than those statutorily required. You will be held responsible for the actions of any persons to whom you provide access to the community.

**8. RULES IN USING VEHICLE GATES.**

• Always approach entry and exit gates with caution and at a very slow rate of speed.

• Never stop your car where the gate can hit your vehicle as the gate opens or closes.

• Never follow another vehicle into an open gate. Always use your card to gain entry.

• Report to management the vehicle license plate number of any vehicle that piggybacks through the gate.

• Never force the gate open with your car.

• Never get out of your vehicle while the gates are opening or closing.

• If you are using the gates with a boat or trailer, please contact management for assistance. The length and width of the trailer may cause recognition problems with the safety loop detector and could cause damage.

• Do not operate the gate if there are small children nearby who might get caught in it as it opens or closes.

• If you lose your card, please contact the management office immediately.

• Do not give your card or code to anyone else.

• Do not tamper with gate or allow your occupants to tamper or play with gates.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland

Page 1 of 2

*Steve J Osagbue*    *Kristin Shafer*

9. SPECIAL PROVISIONS.   The following special provisions control over conflicting provisions of this printed form:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

|                                    |                                    |
|------------------------------------|------------------------------------|
| **Resident or Residents**          | **Owner or Owner's Representative** |
| *(All residents must sign here)*    | *(Signs here)*                      |

**Date of Lease Contract**

May 27, 2022

© 2021, National Apartment Association, Inc. - 9/2021, Maryland

*18* Steve I Osagbue    *66* Kristin Shafer

## NO-SMOKING ADDENDUM

**NAA**
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

Date: _____ **May 27, 2022** _____
(when this Addendum is filled out)

*All use of any tobacco product involving smoking, burning, or combustion of tobacco is prohibited in any portion of the apartment community. You are entitled to receive an original of this No-Smoking Addendum after it is fully signed. Keep it in a safe place.*

1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____ **1027** _____ , **11215 Georgia**
   **Avenue**
   _____ *(street address)* in
   _____ **Wheaton** _____
   *(city)*, Maryland, _____ **20902** _____ *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: **May 27, 2022**
   Owner's name: **FPA/WC Wheaton Station, LLC**
   _____
   _____
   _____

   Residents *(list all residents)*:

   **Steve Osagbue**
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **DEFINITION OF SMOKING.** Smoking refers to any use or possession of a cigar, cigarette, e-cigarette, hookah, vaporizer, or pipe containing tobacco or a tobacco product while that tobacco or tobacco product is burning, lighted, vaporized, or ignited, regardless of whether the person using or possessing the product is inhaling or exhaling the smoke from such product. The term tobacco includes, but is not limited to any form, compound, or synthesis of the plant of the genus Nicotiana or the species N. tabacum which is cultivated for its leaves to be used in cigarettes, cigars, e-cigarettes, hookahs, vaporizers, or pipes. Smoking also refers to use or possession of burning, lighted, vaporized, or ignited non-tobacco products if they are noxious, offensive, unsafe, unhealthy, or irritating to other persons.

4. **SMOKING ANYWHERE INSIDE BUILDINGS OF THE APARTMENT COMMUNITY IS STRICTLY PROHIBITED.** All forms and use of burning, lighted, vaporized, or ignited tobacco products and smoking of tobacco products inside any dwelling, building, or interior of any portion of the apartment community is strictly prohibited. Any violation of the no-smoking policy is a material and substantial violation of this Addendum and the Lease Contract.

   The prohibition on use of any burning, lighted, vaporized, or ignited tobacco products or smoking of any tobacco products extends to all residents, their occupants, guests, invitees and all others who are present on or in any portion of the apartment community. The no-smoking policy and rules extend to, but are not limited to, the management and leasing offices, building interiors and hallways, building common areas, dwellings, club house, exercise or spa facility, tennis courts, all interior areas of the apartment community, commercial shops, businesses, and spaces, work areas, and all other spaces whether in the interior of the apartment community or in the enclosed spaces on the surrounding community grounds. Smoking of non-tobacco products which are harmful to the health, safety, and welfare of other residents inside any dwelling or building is also prohibited by this Addendum and other provisions of the Lease Contract.

5. **SMOKING OUTSIDE BUILDINGS OF THE APARTMENT COMMUNITY.** Smoking is permitted only in specially designated areas outside the buildings of the apartment community. Smoking must be at least ___ **25** ___ feet from the buildings in the apartment community, including administrative office buildings. If the previous field is not completed, smoking is only permitted at least 25 feet from the buildings in the apartment community, including administrative office buildings. The smoking-permissible areas are marked by signage.

   Smoking on balconies, patios, and limited common areas attached to or outside of your dwelling ☐ is ☒ is not permitted.

   The following outside areas of the community may be used for smoking: _____
   _____
   _____

   Even though smoking may be permitted in certain limited outside areas, we reserve the right to direct that you and your occupants, family, guests, and invitees cease and desist from smoking in those areas if smoke is entering the dwellings or buildings or if it is interfering with the health, safety, or welfare or disturbing the quiet enjoyment, or business operations of us, other residents, or guests.

6. **YOUR RESPONSIBILITY FOR DAMAGES AND CLEANING.** You are responsible for payment of all costs and damages to your dwelling, other residents' dwellings, or any other portion of the apartment community for repair, replacement, or cleaning due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees, regardless of whether such use was a violation of this Addendum. Any costs or damages we incur related to repairs, replacement, and cleaning due to your smoking or due to your violation of the no-smoking provisions of the Lease Contract are in excess of normal wear and tear. Smoke related damage, including but not limited to, the smell of tobacco smoke which permeates sheetrock, carpeting, wood, insulation, or other components of the dwelling or building is in excess of normal wear and tear in our smoke free apartment community.

7. **YOUR RESPONSIBILITY FOR LOSS OF RENTAL INCOME AND ECONOMIC DAMAGES REGARDING OTHER RESIDENTS.** You are responsible for payment of all lost rental income or other economic and financial damages or loss to us due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees which results in or causes other residents to vacate their dwellings, results in disruption of other residents' quiet enjoyment, or adversely affects other residents' or occupants' health, safety, or welfare.

8. **LEASE CONTRACT TERMINATION FOR VIOLATION OF THIS ADDENDUM.** We have the right to terminate your Lease Contract or right of occupancy of the dwelling for any violation of this No-Smoking Addendum. Violation of the no-smoking provisions is a material and substantial default or violation of the Lease Contract. Despite the termination of the Lease Contract or your occupancy, you will remain liable for rent through the end of the Lease Contract term or the date on which the dwelling is re-rented to a new occupant, whichever comes first. Therefore, you may be responsible for payment of rent after you vacate the leased premises even though you are no longer living in the dwelling.

© 2019, National Apartment Association, Inc. - 2/2019, Maryland

Page 1 of 2

*Steve I Osagbue*    *Kristin Shafer*

9. **EXTENT OF YOUR LIABILITY FOR LOSSES DUE TO SMOKING.** Your responsibility for damages, cleaning, loss of rental income, and loss of other economic damages under this No-Smoking Addendum are in addition to, and not in lieu of, your responsibility for any other damages or loss under the Lease Contract or any other addendum.

10. **YOUR RESPONSIBILITY FOR CONDUCT OF OCCUPANTS, FAMILY MEMBERS, AND GUESTS.** You are responsible for communicating this community's no-smoking policy and for ensuring compliance with this Addendum by your occupants, family, guests, and invitees.

11. **THERE IS NO WARRANTY OF A SMOKE FREE ENVIRONMENT.** Although we prohibit smoking in all interior parts of the apartment community, there is no warranty or guaranty of any kind that your dwelling or the apartment community is smoke free. Smoking in certain limited outside areas is allowed as provided above. Enforcement of our no-smoking policy is a joint responsibility which requires your cooperation in reporting incidents or suspected violations of smoking. You must report violations of our no-smoking policy before we are obligated to investigate and act, and you must thereafter cooperate with us in prosecution of such violations.

This is an important and binding legal document. By signing this Addendum you are acknowledging that a violation could lead to termination of your Lease Contract or right to continue living in the dwelling. If you or someone in your household is a smoker, you should carefully consider whether you will be able to abide by the terms of this Addendum.

12. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs here)*

_____

© 2019, National Apartment Association, Inc. - 2/2019, Maryland

*Steve J Osaqbue*    *Kristin Shafer*

**ADDENDUM REGARDING MEDICAL MARIJUANA USE
AND LANDLORD'S COMMITMENT TO ENFORCEMENT
OF CRIME FREE ADDENDUM**



1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____1027_____, 11215 Georgia Avenue
   _____ (street address) in
   _____Wheaton_____
   (city), Maryland, _____20902_____ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: <u>May 27, 2022</u>
   Owner's name: <u>FPA/WC Wheaton Station, LLC</u>
   _____
   _____
   _____
   _____

   Residents (list all residents):

   Steve Osagbue

   This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. Maryland law permits the limited use of medical marijuana in specific and limited circumstances. However, this is not the case under federal law. Under federal law, specifically the Controlled Substances Act (CSA), marijuana is still categorized as a Schedule I substance. This means that under federal law, the manufacture, distribution, or possession of marijuana is strictly prohibited. Because the U.S. Department of Housing and Urban Development is controlled by the federal government, it agrees that the use of marijuana, whether prescribed for medical reasons or not, is a criminal offense and will not be protected under the fair housing laws. Therefore, apartment complexes are not required to accommodate the use of marijuana by a tenant who is a current medical marijuana user.

4. The Premises listed above follows and complies with federal law regarding marijuana use and is, and will continue to be, a drug free community. Possession, use, manufacture or sale of any illegal substance, including marijuana, or any use of marijuana by the tenant and/or guests will result in immediate termination. If you have any questions or concerns about this policy, please speak to management.

5. By signing below, the resident acknowledges his or her understanding of the terms and conditions as stated above, and his or her agreement to comply with those terms and conditions.

6. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

**Resident or Residents** (sign here)                    **Date of Signing Addendum**

_____                    _____

_____                    _____

_____                    _____

**Owner or Owner's Representative** (signs here)          **Date of Signing Addendum**

_____                    _____

© 2021, National Apartment Association, Inc. - 9/2021, Maryland

*Steve J Osagbue*     *Kristin Shafer*

# CRIME/DRUG FREE HOUSING ADDENDUM

**NAA**
NATIONAL APARTMENT ASSOCIATION
*We Lead the Way Home*

**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____1027_____, 11215 Georgia
Avenue
_____ (street address) in
Wheaton
(city), Maryland, _____20902_____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: May 27, 2022
Owner's name: FPA/WC Wheaton Station, LLC
_____
_____
_____

Residents *(list all residents)*:
Steve Osagbue
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ADDENDUM APPLICABILITY.** In the event any provision in this Addendum is inconsistent with any provision(s) contained in other portions of, or attachments to, the above-mentioned Lease Contract, then the provisions of this Addendum shall control. For purposes of this Addendum, the term "Premises" shall include the dwelling unit, all common areas, all other dwelling units on the property or any common areas or other dwelling units on or about other property owned by or managed by the Owner. The parties hereby amend and supplement the Lease Contract as follows:

**4. CRIME/DRUG FREE HOUSING.** Resident, members of the Resident's household, Resident's guests, and all other persons affiliated with the Resident:

A. Shall not engage in any illegal or criminal activity on or about the Premises. The phrase, "illegal or criminal activity" shall include, but is not limited to, the following:

1. Engaging in any act intended to facilitate any type of criminal activity.

2. Permitting the Premises to be used for, or facilitating any type of criminal activity or drug related activity, regardless of whether the individual engaging in such activity is a member of the household, or a guest.

3. The unlawful manufacturing, selling, using, storing, keeping, purchasing or giving of an illegal or controlled substance or paraphernalia as defined in city, county, state or federal laws, including but not limited to the State of Maryland and/or the Federal Controlled Substances Act.

4. Violation of any federal drug laws governing the use, possession, sale, manufacturing and distribution of marijuana, regardless of state or local laws. (So long as the use, possession, sale, manufacturing and distribution of marijuana remains a violation of federal law, violation of any such federal law shall constitute a material violation of this rental agreement.)

5. Engaging in, or allowing, any behavior that is associated with drug activity, including but not limited to having excessive vehicle or foot traffic associated with his or her unit.

6. Any breach of the Lease Contract that otherwise jeopardizes the health, safety, and welfare of the Owner, Owner's agents, or other Residents, or involving imminent, actual or substantial property damage.

7. Engaging in or committing any act that would be a violation of the Owner's screening criteria for criminal conduct or which would have provided Owner with a basis for denying Resident's application due to criminal conduct.

8. Engaging in any activity that constitutes waste, nuisance, or unlawful use.

B. AGREE THAT ANY VIOLATION OF THE ABOVE PROVISIONS CONSTITUTES A MATERIAL VIOLATION OF THE PARTIES' LEASE CONTRACT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this Addendum shall be deemed a serious violation, and a material default, of the parties' Lease Contract. It is understood that a single violation shall be good cause for termination of the Lease Contract. Notwithstanding the foregoing comments, Owner may terminate Resident's tenancy for any lawful reason, and by any lawful method, with or without good cause.

**5. CRIMINAL CONVICTION NOT REQUIRED.** Proof of violation of any criminal law shall not require a criminal conviction.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents** *(sign here)*

_____
_____
_____
_____

**Owner or Owner's Representative** *(signs here)*

_____

**Date of Signing Addendum**

_____
_____
_____
_____

**Date of Signing Addendum**

_____

© 2021, National Apartment Association, Inc. - 9/2021, Maryland

*22* *Steve I Osagbue*    *70* *Kristin Shafer*

## ADDENDUM REGARDING
## SHORT-TERM SUBLETTING OR RENTAL



1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____1027_____, _11215 Georgia_
   _Avenue_
   _____ (street address) in
   _____Wheaton_____
   (city), Maryland, _____20902_____ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: May 27, 2022
   Owner's name: FPA/WC Wheaton Station, LLC
   _____
   _____
   _____

   Residents (list all residents):

   Steve Osagbue
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **SHORT TERM SUBLEASE OR RENTING.** You hereby agree not to sublet or rent to any third party, or allowing occupancy by any third party, of all or any portion of the dwelling, whether for an overnight use or duration of any length, without our prior written consent in each instance which we shall not unreasonably withhold. This prohibition applies to overnight stays or any other stays arranged on Airbnb.com or other similar internet sites.

4. **PROHIBITION ON LISTING OR ADVERTISING DWELLING ON OVERNIGHT SUBLETTING OR RENTING WEBSITES.** You agree not to list or advertise the dwelling as being available for short term subletting or rental or occupancy by others on Airbnb.com or similar internet websites. You agree that listing or advertising the dwelling on Airbnb.com or similar internet websites shall be a violation of this Addendum and a breach of your Lease Contract.

5. **VIOLATION OF LEASE AGREEMENT.** Your Lease Contract allows for use of your dwelling as a private residence only and strictly prohibits conducting any kind of business in, from, or involving your dwelling unless expressly permitted by law. Separately, your Lease Contract prohibits subletting or occupancy by others of the dwelling for any period of time without our prior written consent. Permitting your dwelling to be used for any subletting or rental or occupancy by others

(including, without limitation, for a short term), regardless of the value of consideration received or if no consideration is received, is a violation and breach of this Addendum and your Lease Contract.

6. **REMEDY FOR VIOLATION.** Any violation of this Addendum constitutes a material violation of the Lease Contract, and as such we may exercise any default remedies permitted in the Lease Contract, including termination of your tenancy, in accordance with local law. This clause shall not be interpreted to restrict our rights to terminate your tenancy for any lawful reason, or by any lawful method.

7. **RESIDENT LIABILITY.** You are responsible for and shall be held liable for any and all losses, damages, and/or fines that we incur as a result of your violations of the terms of this Addendum or the Lease Contract. Further, you agree you are responsible for and shall be held liable for any and all actions of any person(s) who occupy your dwelling in violation of the terms of this Addendum or the Lease Contract, including, but not limited to, property damage, disturbance of other residents, and violence or attempted violence to another person. In accordance with applicable law, without limiting your liability you agree we shall have the right to collect against any renter's or liability insurance policy maintained by you for any losses or damages that we incur as the result of any violation of the terms of this Addendum.

8. **SEVERABILITY.** If any provision of this Addendum or the Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum while preserving the intent of the parties.

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

**Resident or Residents**
(All residents must sign)

**Owner or Owner's Representative**
(Signs below)

_____
_____
_____        **Date of Signing Addendum**
_____
_____        _____

© 2019, National Apartment Association, Inc. - 2/2019, Maryland

*Steve I Osagbue*        *Kristin Shafer*

PACKAGE ACCEPTANCE ADDENDUM

NAA
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

1. **DWELLING UNIT DESCRIPTION.**
Unit No. _____1027_____, _11215 Georgia_
_Avenue_____
_____ (street address) in
_____Wheaton_____
(city), Maryland, _____20902_____ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: May 27, 2022
Owner's name: FPA/WC Wheaton Station, LLC
_____
_____
_____
_____

Residents (list all residents):
Steve Osagbue
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **PURPOSE OF ADDENDUM.** By signing this Addendum, you wish for us to sign for, and to accept, U.S. mail and privately-delivered packages or other items on your behalf, subject to the terms and conditions set forth herein.

4. **PACKAGE ACCEPTANCE.**

A. **Generally.** You hereby authorize us and our agent to accept, on your behalf, any package or item delivered to our on-site management office during disclosed business hours, including but not limited to any package delivered by the U.S. Postal Service or by any private courier service or individual. You also specifically authorize us to sign on your behalf if the person or entity delivering said package or item requires an adult signature prior to delivery, including but not limited to the delivery of certified or registered mail. A photo I.D. is required before any packages will be released. Packages will only be released to verified Residents or approved representatives.

B. **Limitations.** You understand and agree that we may refuse to accept any package for any reason or no reason at all.

5. **TIME LIMITATION.** Due to limited storage space, we must ask that you pick up your package as soon as possible. You also agree that we shall have no duty whatsoever to hold or store any package for more than ____5____ days after receipt (accordingly, you should notify the management office if you are going to be away from the apartment home and expect to be receiving a package(s)). After said time, you agree that any such package is deemed abandoned and you authorize us to return the package to its original sender.

6. **DUTY OF CARE, INDEMNIFICATION, ASSUMPTION OF RISKS AND WAIVER.** As to any package for which we sign and/or receive on your behalf, you understand and agree that we have no duty to notify you of our receipt of such package, nor do we have any duty to maintain, protect, or deliver said package to you, nor do we have any duty to make said package available to you outside disclosed business hours. Any packages or personal property delivered to us or stored by us shall be at your sole risk, and you assume all risks whatsoever associated with any loss or damage to your packages and personal property. You, your guests, family, invitees, and agents hereby waive any and all claims against us or our agents of any nature regarding or relating to any package or item received by us, including but not limited to, claims for theft, misplacing or damaging any such package, except in the event of our or our agent's negligence or willful misconduct. You also agree to defend and indemnify us and our agents and hold us both harmless from any and all claims that may be brought by any third party relating to any injury sustained relating to or arising from any package that we received on your behalf. You also agree to indemnify us and our agents and hold us harmless from any damage caused to us or our agents by any package received by us for you. You also authorize us to throw away or otherwise dispose of any package that we, in our sole discretion, deem to be dangerous, noxious, or in the case of packaged food, spoiled, and waive any claim whatsoever resulting from such disposal.

7. **SEVERABILITY.** If any provision of this Addendum or the Lease Contract is illegal, invalid or unenforceable under any applicable law, then it is the intention of the parties that (a) such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease, (b) the remainder of this Addendum shall not be affected thereby, and (c) it is also the intention of the parties to this Addendum that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Addendum a clause or provision similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

8. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
(All residents must sign)

_____
_____
_____
_____

**Owner or Owner's Representative**
(Signs below)

**Date of Signing Addendum**

_____

© 2019, National Apartment Association, Inc. - 2/2019, Maryland

.24 *Steve J Osagbue*    7.2 *Kristin Shafer*

### REASONABLE MODIFICATIONS AND ACCOMMODATIONS POLICY



**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____ 1027 _____, 11215 Georgia Avenue
_____ (street address) in
_____ Wheaton _____
(city), Maryland, _____ 20902 _____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: May 27, 2022
Owner's name: FPA/WC Wheaton Station, LLC
_____
_____
_____

Residents (list all residents):

Steve Osagbue
_____
_____
_____
_____
_____
_____
_____
_____
_____

**3. EQUAL HOUSING OPPORTUNITY POLICY.** We provide rental housing on an equal opportunity basis. Consistent with this policy, we welcome persons with disabilities to our community and will not discriminate against any person because of his or her disability, or his or her association with anyone with a disability. In addition, we know that it may sometimes be necessary for persons with disabilities to be able to make modifications to their surroundings or to have accommodations made in our practices or procedures to enable them to fully enjoy and use their housing, and we have created the policy described herein to meet that need.

**4. PURPOSE OF POLICY.** A resident or applicant may be entitled under state and federal fair housing laws to a reasonable accommodation and/or reasonable modification when needed because of a disability of the resident, the applicant, and/or a person associated with a resident or applicant, such as a member of the household or frequent guest. The reasonable accommodation and/or reasonable modification must be necessary for the individual with the disability to have an equal opportunity to fully use and/or enjoy housing services offered to other residents and/or the individual dwelling unit. We will grant requests for accommodations or modifications that are reasonable and necessary because of a disability, would not impose an undue financial or administrative burden on our operations, and do not fundamentally alter the nature of services or resources we provide as part of our housing program.

**5. DEFINITIONS.**
A. **Disability.** The Federal Fair Housing Act defines a person with a disability to include: (1) individuals with a physical or mental impairment that substantially limits one or more major life activities; (2) individuals who are regarded as having such an impairment; or (3) individuals with a record of such an impairment.

B. **Reasonable Modifications.** A reasonable modification is a structural change made to existing premises, occupied or to be occupied, by a person with a disability, in order to afford such person full enjoyment of the premises. These are typically structural changes to interiors and exteriors of dwellings and to common and public use areas, which are necessary to accommodate a person with a disability. Depending on the nature of the request, reasonable modifications are typically granted at the expense of the person requesting them.

C. **Reasonable Accommodation.** A reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common areas.

**6. REQUESTS FOR REASONABLE MODIFICATIONS.**
A. **Generally.** If you are a resident or an applicant (i) with a disability, or (ii) with someone associated with you who has a disability, you have the right to request a reasonable modification to your dwelling or the common areas, in accordance with fair housing laws, if such modifications may be necessary to allow you to have an equal opportunity to fully use and/or enjoy your dwelling.

B. **Reasonable Modification Expenses.** Expenses for reasonable modifications, and restoration expenses, if applicable, of such modifications, shall be allocated in accordance with state and federal fair housing laws.

C. **Permission Required, Evaluation of Disability.** If you would like to request a reasonable modification to your dwelling or the common areas of the community that is necessary because of a disability, you must first obtain permission from us. We prefer that you use the attached "Reasonable Accommodation and/or Modification to Rental Unit" form, but you are not required to use this form. If you would like or need assistance in completing this form, please let us know, and we will be glad to provide assistance. Whether you use our form or your own form of request, we will need to know what specific modification is being sought. In addition, if the disability or the disability-related need for the modification is not obvious, we may ask for information that is reasonably necessary to evaluate the disability-related need for the modification; however, we will only request information necessary to evaluate your request, and all information will be kept confidential.

D. **Reasonable Assurances.** Depending on the modification requested, we may require you to provide reasonable assurances that the modification will be done in a workmanlike manner and that any required building permits will be obtained. In some cases, any third-party retained to perform the modification may also have to be approved in writing by us, and be properly licensed and insured. During and upon completion of the modification, we may inspect the work in connection with our overall property management responsibilities. We will not increase your security deposit as a result of a modification request. However, when applicable, if you fail to restore the interior of the dwelling to its original condition, excluding normal wear and tear, at the end of the tenancy, we may assess the cost of restoration against your security deposit and/or final account upon move-out.

E. **Restoration Reimbursement.** At the end of your tenancy, you may be responsible to restore the interior of your dwelling to its pre-modification condition at your expense, depending on the nature of the modification. Again, depending on the modification, we may request that you deposit sufficient funds for that restoration in an interest bearing escrow account to ensure any required restoration can be completed. Regardless of modification, you will remain responsible to pay for damage to your dwelling in excess of ordinary wear and tear.

F. **Alternative Modification.** Depending on the circumstances, we may not be able to grant the exact modification you have requested and we may ask to discuss other alternatives with you.

©2020 National Apartment Association, Inc. - 4/2020, Maryland

Page 1 of 2

.25 *Steve J Osagbue*    7.3 *Kristin Shafer*

**7. REQUESTS FOR REASONABLE ACCOMMODATIONS.**

A. **Generally.** We will make reasonable accommodations in our rules, policies, practices, and/or services, to the extent that such accommodations may be reasonably necessary to give you, as a disabled person, an equal opportunity to fully use and enjoy your dwelling, and the public and common areas of the premises, and as otherwise required by law.

B. **Request for Accommodation, Evaluation of Disability.** If you would like a reasonable accommodation that is necessary because of a disability, please submit a request to us, preferably using the attached "Reasonable Accommodation and/or Modification to Rental Unit" form, but you are not required to use this form. If you would like or need assistance completing this form please let us know and we will be glad to provide assistance. Whether you use our form or your own form of request, we will need to know what accommodation is being sought. In addition, if the disability is not obvious, we may ask for information that is reasonably necessary to evaluate the disability-related need for the accommodation. We will only request information that is reasonably necessary for us to evaluate your request, and we will keep all information you provide confidential.

C. **Alternative Accommodation.** Depending on the circumstances, we may not be able to grant the exact accommodation you have requested and we may ask to discuss other alternatives with you.

**8. OWNER RESPONSIBILITY.** We will respond to all requests for a reasonable accommodation and/or modification in a timely manner. If we deny your request for a reasonable modification and/or accommodation, we will explain the reason for our denial and we will discuss with you whether there are alternative accommodations and/or modifications that we could provide that would meet your needs. We also are committed to entering into an interactive dialogue with you in relation to any request, and therefore agree to speak with you in relation to any request so that you have sufficient opportunity to provide us with any information you believe is relevant to our evaluation of your request for the modification(s) and/or accommodation(s).

**9. AMENDMENT TO POLICY.** This policy may be amended and updated at any time upon written notice to you. In addition, in the event of any conflict between this policy and/or state, local or federal law, the provisions of such law shall control.

If you have any questions about this policy, you should contact:

<u>Rental Office</u>
by writing or calling:
<u>Rental Office</u>

_____

_____

_____

| Resident or Residents | Owner or Owner's Representative |
|:---:|:---:|
| *(All residents must sign)* | *(Signs below)* |

_____          **Date of Signing**

_____

_____          _____

_____

_____

© 2020, National Apartment Association, Inc. - 4/2020, Maryland

*Steve J Osagbue*          *Kristin Shafer*

VIOLENCE, DATING VIOLENCE, OR STALKING

U.S. Department of Housing and Urban Development

OMB Approval No. 2502-0204
Exp. 06/30/2017

## LEASE ADDENDUM
### VIOLENCE AGAINST WOMEN AND JUSTICE DEPARTMENT REAUTHORIZATION ACT OF 2005

| TENANT | LANDLORD | UNIT NO. & ADDRESS |
|---|---|---|
| Steve Osagbue | FPA/WC Wheaton Station, LLC | 11215 Georgia Avenue #1027, Wheaton, MD 20902 |

This Lease Addendum adds the following paragraphs to the Lease between the above referenced Tenant and Landlord.

**Purpose of the Addendum**

The Lease for the above referenced unit is being amended to include the provisions of the Violence Against Women and Justice Department Reauthorization Act of 2005 (VAWA).

**Conflicts with Other Provisions of the Lease**

In case of any conflict between the provisions of this Addendum and other sections of the Lease, the provisions of this Addendum shall prevail.

**Term of the Lease Addendum**

The effective date of this Lease Addendum is _____ 05/31/2022 _____. This Lease Addendum shall continue to be in effect until the Lease is terminated.

**VAWA Protections**

1. The Landlord may not consider incidents of domestic violence, dating violence or stalking as serious or repeated violations of the Lease or other "good cause" for termination of assistance, tenancy or occupancy rights of the victim of abuse.

2. The Landlord may not consider criminal activity directly relating to abuse, engaged in by a member of a tenant's household or any guest or other person under the tenant's control, cause for termination of assistance, tenancy, or occupancy rights if the tenant or an immediate member of the tenant's family is the victim or threatened victim of that abuse.

3. The Landlord may request in writing that the victim, or a family member on the victim's behalf, certify that the individual is a victim of abuse and that the Certification of Domestic Violence, Dating Violence or Stalking, Form HUD-5382, or other documentation as noted on the certification form, be completed and submitted within 14 business days, or an agreed upon extension date, to receive protection under the VAWA. Failure to provide the certification or other supporting documentation within the specified time frame may result in eviction.

_____    _____
Tenant                              Date

_____    _____
Tenant                              Date

_____    _____
Tenant                              Date

_____    _____
Tenant                              Date

_____    _____
Tenant                              Date

_____    _____
Tenant                              Date

_____    _____
Landlord                            Date

Form HUD-91067
(9/2008)

*Steve J Osagbue*    *Kristin Shafer*

## MONTGOMERY COUNTY APARTMENT LEASE CONTRACT

**NAA**
NATIONAL APARTMENT ASSOCIATION

Date of Lease Contract: _____**May 27, 2022**_____
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

### Moving In – General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*:

**Steve Osagbue**

and *us*, the owner:

**FPA/WC Wheaton Station, LLC**

*(name of apartment community or title holder).* You've agreed to rent Apartment No. _____**1027**_____, at **11215 Georgia Avenue**
_____ *(street address)* in
_____**Wheaton**_____
*(city)*, Maryland, _____**20902**_____
*(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

No one else may occupy the apartment. The maximum number of occupants permitted in your unit is ___**5**___ . The preceding sentence will be filled out only where required by law. Persons not listed above must not stay in the apartment for more than ___**7**___ consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM.**
A. The initial term of the Lease Contract begins on the **31st** day of _____**May**_____, **2022** , and ends at 11:59 pm the **30th** day of _____**May**_____, **2023** .

Your Initials (Resident's) _____
(Residents must initial this paragraph)

<mark>Renewal. This Lease Contract will automatically renew month-</mark>to-month unless before the Lease Term ends, either party gives at least ___**90**___ days written notice of termination or intent to move-out as required by paragraph 58 (Move-Out Notice). If neither party gives ___**90**___ days written notice of termination or intent to move-out prior to the day that the Lease Term ends, then this Lease will automatically renew month-to-month. In the case of a month-to-month tenancy, either party must give at least ___**90**___ days written notice of termination or intent to move-out as required by paragraph 58 (Move-Out Notice). This paragraph must be initialed by you because it contains an automatic month-to-month renewal

provision. Please see paragraph 15 (Rent Increases and Lease Contract Changes) pertaining to Rent Increases and Lease Contract Changes which can go into effect for month-to-month renewals at the end of the lease term or renewal periods.

B. You acknowledge that any oral representation or oral agreements made by us or our employees or agents to or with you about the dates of termination of the Lease or any bi-month to bi-month terms shall be of no effect and shall not be a basis for the termination of this Apartment Lease Contract.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $___**750.00**___ , due on or before the date this Lease Contract is signed. An animal deposit will be stated in any animal addendum. The total deposits will not exceed the equivalent of two (2) month's rent. This lease and any Animal Addendum will constitute your receipt for the security deposit(s). Your security deposit(s) will be deposited and held in an interest bearing account in a federally insured banking institution located in Maryland. That account will be dedicated solely to security deposits. At the time your deposit is due to be returned, we will pay you simple interest, not compounded, at the rate required by law, to the extent funds are to be returned to you. See paragraphs 62 and 63 (Security Deposit Deductions and Other Charges, and Deposit Return, Surrender, and Abandonment) for security deposit return information.

**(A) NOTIFICATION OF YOUR RIGHTS REGARDING SECURITY DEPOSITS.** Under Md. Code Ann., Real Prop. § 8-203 you have the following rights:

1. The security deposit or any portion of it may be withheld for unpaid rent, damage due to breach of lease or for damage by you or your family, agents, employees, guests or invitees in excess of ordinary wear and tear to the leased premises, common areas, major appliances, and furnishings owned by us.
2. You have the right to be present when we or our agent inspects the premises in order to determine if any damage was done to the premises, if you notify us by certified mail of your intention to move, the date of moving, and your new address.
3. Your notice that you will be present at the move-out inspection must be furnished to us by mail at least fifteen (15) days prior to the date you move.
4. Upon receipt of your notice to move, we will notify you by certified mail of the time and date the premises are to be inspected.
5. The date of inspection will take place within five (5) days before or five (5) days after the date of moving that is designated in your notice.
6. Failure by us to comply with this requirement forfeits our right to withhold any part of the security deposit for damages.
7. The security deposit is not liquidated damages and may not be forfeited to us for breach of the rental agreement, except in the amount that we are actually damaged by your breach.
8. In calculating the damages for lost future rents, any amount of rents received by us for the premises during the remainder, if any, of your lease term, will reduce the damages you owe us by a like amount.

**(B)** Under Md. Code Ann., Real Prop. § 8-203.1 this Lease also constitutes your receipt for payment of a security deposit. We acknowledge receipt of security deposit(s) from you in the amount of $___**750.00**___ . You have the following rights with regard to this security deposit(s):

(1) You have the right to have your dwelling unit (apartment) inspected by us in your presence for the purpose of making a written list of damages that exist at the commencement of the tenancy if you request an inspection by certified mail within fifteen (15) days of your occupancy (the date you move in);
(2) You have the right to be present when we inspect the premises at the end of your tenancy in order to determine if any damage was done to the premises if you notify us by certified mail at least fifteen (15) days prior to the date of your intended move, of your intention to move, the date of moving, and your new address;
(3) We are obligated to conduct the move-out inspection within five (5) days before or after your stated date of intended moving;

© 2021, National Apartment Association, Inc. · 9/2021, Maryland (Montgomery County)

Page 1 of 14

*Steve I Osagbue*        *Kristin Shafer*

(4) We are obligated to notify you in writing of the time and date of the inspection;

(5) You have the right to receive, by first class mail, delivered to your last known address, a written list of the charges against your security deposit claimed by us and the actual costs, within forty five (45) days after the termination of the tenancy;

(6) We are obligated to return any unused portion of your security deposit, by first class mail, addressed to your last known address within forty five (45) days after the termination of your tenancy; and

(7) Our failure to comply with the security deposit law may result in us being liable to you for a penalty of up to three (3) times the security deposit withheld, plus reasonable attorney's fees.

(8) We will retain a copy of this receipt for a period of two (2) years after the termination of your tenancy, abandonment of the premises, or your eviction, as the case may be.

(9) We will be liable to you in the sum of $25 if we fail to provide you a written receipt for the security deposit.

**5. KEYS.** You will be provided ___1___ apartment key(s), ___1___ mailbox key(s), ___1___ FOB(s), and/or ___1___ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ __2743.00__ per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at __Money Gram__

Prorated rent of $____88.48____ is due for the remainder of the [check one]: ☒ 1st month or ☐ 2nd month, on ____May 31____, __2022__.

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. Upon your request or in the event we elect to accept cash, we will provide you with a receipt for payment of rent, security deposit, or other fee or charge paid which states the amount received and the amount of time or obligation it covers. If you don't pay all rent on or before the tenth day of the month, you'll pay a late charge of 5 % of your monthly rent payment as a late fee (the charge for a late payment shall be limited to a maximum of 5% of the amount of the rent due for the rental period for which payment is delinquent). You'll also pay a charge of $____35.00____ for each returned check or rejected electronic payment, plus a late charge. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. All sums of money or other charges, including payments for damages and/or repairs and late fees, required to be paid by you to us or to any other persons under the terms of this Lease, whether or not the same is designated as "rent" or as "additional rent," will be deemed to be rent and will be collectible as such.

**7. UTILITIES.** Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.

a) **Water** service to your dwelling will be paid by you either:
☐ directly to the utility service provider; or
☒ water bills will be billed by the service provider to us and then allocated to you based on the following formula: __8__.
☐ If flat rate is selected, the current flat rate is $_____ per month.
☒ 3rd party billing company (if applicable): __Conservice__

b) **Sewer** service to your dwelling will be paid by you either:
☐ directly to the utility service provider; or
☒ sewer bills will be billed by the service provider to us and then allocated to you based on the following formula: __8__.

☐ If flat rate is selected, the current flat rate is $_____ per month.
☒ 3rd party billing company (if applicable): __Conservice__

c) **Gas** service to your dwelling will be paid by you either:
☐ directly to the utility service provider; or
☐ gas bills will be billed by the service provider to us and then allocated to you based on the following formula: __n/a__.
☐ If flat rate is selected, the current flat rate is $_____ per month.
☐ 3rd party billing company (if applicable): _____

d) **Electric** service to your dwelling will be paid by you either:
☒ directly to the utility service provider; or
☐ electric bills will be billed by the service provider to us and then allocated to you based on the following formula: _____.
☐ If flat rate is selected, the current flat rate is $_____ per month.
☐ 3rd party billing company (if applicable): _____

e) **Stormwater** service to your dwelling will be paid by you either:
☐ directly to the utility service provider; or
☒ stormwater bills will be billed by the service provider to us and then allocated to you based on the following formula: __8__.
☐ If flat rate is selected, the current flat rate is $_____ per month.
☒ 3rd party billing company (if applicable): __Conservice__

f) **Cable TV** service to your dwelling will be paid by you either:
☒ directly to the utility service provider; or
☐ cable TV bills will be billed by the service provider to us and then allocated to you based on the following formula: _____.
☐ If flat rate is selected, the current flat rate is $_____ per month.
☐ 3rd party billing company (if applicable): _____

g) **Master Antenna** service to your dwelling will be paid by you either:
☐ directly to the utility service provider; or
☐ master antenna bills will be billed by the service provider to us and then allocated to you based on the following formula: __n/a__.
☐ If flat rate is selected, the current flat rate is $_____ per month.
☐ 3rd party billing company (if applicable): _____

h) **Internet** service to your dwelling will be paid by you either:
☒ directly to the utility service provider; or
☐ internet bills will be billed by the service provider to us and then allocated to you based on the following formula: _____.
☐ If flat rate is selected, the current flat rate is $_____ per month.
☐ 3rd party billing company (if applicable): _____

i) **(Other)** __Pest Control__
service to your dwelling will be paid by you either:
☐ directly to the utility service provider; or
☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: __4__.
☒ If flat rate is selected, the current flat rate is $__7.00__ per month.
☒ 3rd party billing company (if applicable): __Conservice__

j) **(Other)** _____
service to your dwelling will be paid by you either:
☐ directly to the utility service provider; or
☐ bills will be billed by the service provider to us and then allocated to you based on the following formula: _____.
☐ If flat rate is selected, the current flat rate is $_____ per month.
☐ 3rd party billing company (if applicable): _____

**METERING/ALLOCATION METHOD KEY**
"1" - Sub-metering of all of your water/gas/electric use
"2" - Calculation of your total water use based on sub-metering of hot water
"3" - Calculation of your total water use based on sub-metering of cold water
"4" - Flat rate per month
"5" - Allocation based on the number of persons residing in your dwelling unit
"6" - Allocation based on the number of persons residing in your dwelling unit using a ratio occupancy formula

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)

*Steve J Osagbue*    *Kristin Shafer*

"7" - Allocation based on square footage of your dwelling unit

"8" - Allocation based on a combination of square footage of your dwelling unit and the number of persons residing in your dwelling unit

"9" - Allocation based on the number of bedrooms in your dwelling unit

"10"- Allocation based on a lawful formula not listed here (Note: if method "10" is selected, a separate sheet will be attached describing the formula used)

If an allocation method is used, we or our billing company will calculate your allocated share of the utilities and services provided and all costs in accordance with state and local statutes. Under any allocation method, Resident may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Resident and Owner agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Resident. Where lawful, we may change the above methods of determining your allocated share of utilities and services and all other billing methods, in our sole discretion, and after providing written notice to you. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request. If a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

When billed by us directly or through our billing company, you must pay utility bills within __10__ days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there are any new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.

| | |
|---|---|
| New Account Fee: (not to exceed $__15.00__) | $ __15.00__ |
| Monthly Administrative Billing Fee: (not to exceed $__5.00__) | $ __5.00__ |
| Late Fee: (not to exceed $__200.00__) | $ __10.00__ |
| Final Bill Fee: (not to exceed $__20.00__) | $ __10.00__ |

If allowed by state law, we at our sole discretion may amend these fees, with written notice to you.

You will be charged for the full period of time that you were living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your dwelling and may charge a reasonable administration fee for billing for the utility service in the amount of $__50.00__.

When you move out, you will receive a final bill which may be estimated based on your prior utility usage. This bill must be paid at the time you move out or it will be deducted from the security deposit.

We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations.

You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease and at law.

Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to non-rent charges and to rent last.

In the event we elect to use a ratio utility billing system for water and/or sewer utility service, you will be billed by us for allocated water and sewer services and any dispute relating to the computation of your bill is between you and us and not a third party billing agent.

The precise formula we use to allocate the cost of water and sewer utility services to you is as follows:

_____

_____

_____

_____

The average monthly bill for all dwelling units in the apartment complex in the previous calendar year was (only for the utilities that are being billed using a ratio utility billing system):

Water: $__50.00__    Sewer: $__70.00__

The highest and the lowest month's bills for that period were:

_____

The meter reading date shall be on _____.

The billing date shall be on _____.

The due date for payment shall be on _____.

The time period allocated for us to repair leaks in your dwelling unit and in common areas, if common areas are not submetered, is _____ days. In the event we are using a ratio utility billing system, you have the right to receive information from us to verify the water and sewer utility bill.

In the event we are using a ratio utility billing system, the maximum service charge that we may levy is $__100.00__.

A copy of Code of Montgomery County Regulations Section 29.00.01 will be provided to you upon request.

You represent that all occupants that will be residing in the Unit are accurately identified in the Lease. You agree to promptly notify Owner of any change in such number of occupants.

You agree that you may, upon two (2) months prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities.

We hereby disclose to you that as of the original date of this Lease, we do not have the intent to transfer or convert responsibility for utility payments to you during the term of the Lease except as responsibility for such utility payments by you as set forth in the Lease. However, we reserve the right to adopt in the future the intent to transfer and convert responsibility for utility payments to you, in the manner provided by law. For the purpose of this section, the term "intent" means that we have entered into a contract to install submeters or individual meters or applied for electrical permits for their installation.

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected— including disconnection for not paying your bills— until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

You are required to buy and maintain renters insurance naming the owner as an insured in the minimum amount of $__100000.00__ for property and $__100000.00__ for personal liability. If a minimum coverage amount is left blank, you are not required to have that type of insurance policy.

Failure to maintain required insurance throughout your tenancy, including any renewal periods and/or lease extensions, is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

(1) Owner ☐ has received ☒ has not received notice from applicable government authorities that the Community is located in the one hundred year flood plain. If Owner has received notice (as indicated above) from applicable government authorities that the Community is located within the one hundred year flood plain, Owner hereby includes the following in every lease for every tenant who would occupy any building situated within

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)

Page 3 of 14

30 *Steve J Osagbue*    78 *Kristin Shafer*

the Flood Hazard Boundary, or who would normally utilize a parking or storage facility area any portion of which is situated within the Flood Hazard Boundary, such parking areas to be clearly posted to alert those using it that the parking area is subject to flooding.

(2) The unit you are to occupy and/or the motor vehicle parking area and/or the separate storage facility (as the case may be) are situated within a Flood Hazard Area boundary and, in the event of heavy rainfall, may be subject to flooding which could damage personal belongings and motor vehicles. Because of potential loss, you may be eligible for U.S. Government subsidized flood insurance on the personal belongings in your apartment building. Because of this danger of loss of your personal belongings due to flooding, you should consider acquiring flood insurance which may be purchased from most insurance agents.

Damage to motor vehicles is not covered by such insurance; therefore, you should also determine whether you have proper motor vehicle insurance to cover loss due to damage of your motor vehicle resulting from flooding in the area. Resident acknowledges reading and understanding the foregoing warning concerning flooding and the availability of flood insurance and hereby takes the risk of loss which may result from such flooding.
Signature:

9. **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment. You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and "What If" Clauses

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

**See Additional Special Provisions**

See any additional special provisions.

11. **EARLY MOVE-OUT.** If you:
    (1) move out without paying rent in full for the entire lease term or renewal period; or
    (2) move out at our demand because of your default; or
    (3) are judicially evicted.

You will be liable for all rent owed at the time and as it becomes due under the terms of your lease agreement until the apartment is re-rented.

12. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, omission, fault, or other misconduct, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from you or your invitees, guests or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** The landlord has liens to the extent permitted by the Real Property Article of the Code of Maryland. Once this lease is terminated by action of the parties or operation of law, and all property therein is abandoned, all property in the apartment is (unless not permitted or exempt under state law) subject to a contractual lien to secure payment of delinquent rent, and landlord may seek a court order that the property be sold to offset any rent due.

**Removal After We Exercise Lien for Rent.** If the lease is terminated by reason of your rent being delinquent, to the extent permitted by law, our representative may seek to obtain a judicial order of court so that a court officer may peacefully enter the apartment and remove and/or store all property subject to lien for public sale.

**Removal After Surrender, Abandonment, or Eviction.** To the extent permitted by law, we or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment.

**Storage.** Pending public sale, we will store property removed. We may store, but have no duty to store, property removed after judicial

eviction, surrender, or abandonment of the apartment. We are not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing, and selling any property. To the greatest extent permitted by Maryland law, we have a lien, or shall seek to obtain a lien, on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe.

**Redemption.** If we've seized and stored property under a contractual lien for rent as authorized by the state statute, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (set forth as follows) is given before you seek redemption, you may redeem only by paying the delinquent rent and reasonable charges for packing, removing, and storing. If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, storage, damages, etc. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, we may, to the extent permitted by law, throw away or give to a charitable organization all items of personal property that are left in the apartment after surrender or abandonment. Animals properly removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, in compliance with Maryland law.

14. **FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when the Lease Contract begins, we may seek to end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** We shall not increase the rent until 90 days after we give you written notice of the increase. We shall not impose more than one rent increase on you in any 12-month period. Each written rent increase notice must contain the information and be served as required by Chapter 29 of the Montgomery County Code.

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay only to the extent provided by law. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment, such cleaning or repairs do not materially affect the life, health, or safety of ordinary persons, and habitation is possible with reasonable safety. If the delay in providing possession is due to another resident's holding over, we are entitled to bring an action of eviction and damages against the resident holding over and join you as a party to that action.

If there is a delay in providing you with possession of the apartment, you may terminate, cancel, or rescind your lease up to the date when the apartment is ready for occupancy (the time at which we are ready to deliver possession to you), but not later.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)

Page 4 of 14

*Steve J Osagbue*      *Kristin Shafer*

**17. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

## While You're Living in the Apartment

**19. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**20. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. If the Community has any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and/or similar areas, they must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in and all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**21. PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

**22. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or is parked in a marked handicap space without the legally required handicap insignia; or
(6) is parked in a space marked for manager, staff, or guest at the office; or
(7) blocks another vehicle from exiting; or
(8) is parked in a fire lane or designated "no parking" area; or
(9) is parked in a space marked for other resident(s) or unit(s); or
(10) is parked on the grass, sidewalk, or patio; or
(11) blocks garbage trucks from access to a dumpster; or
(12) belongs to a resident and is parked in a visitor or retail parking space.

**23. RELEASE OF RESIDENT.** This Apartment Lease Contract may be terminated by you upon thirty (30) days' written notice to us due to an involuntary change of employment from the Washington metropolitan area; death of a major wage earner; unemployment; you or your child being a victim of domestic violence; us harassing you or violating your privacy rights; you or your spouse being: (A) 62 years of age or older (B) being unable to live independently and (C) needing to move to a nursing home or other senior citizen housing; you being incarcerated or declared mentally incompetent; our failure to correct a violation of applicable law that adversely affects your immediate health and safety, as described in Montgomery County Code Section 29-22(b)(1), in your unit or a common area available for use by you, within 30 days after being ordered to do so by the Department of Housing and Community Affairs if: (A) you have allowed the landlord access to make the required repairs; and (B) after reinspection within the prescribed time period, the Department determines that the violation has not been corrected; or for other reasonable cause beyond your control. In the event of termination under this provision, you shall be liable for a reasonable termination charge not to exceed the lower of one (1) month's rent or actual damages sustained by us, except if termination occurs because of our failure to correct a violation as stated in this paragraph.

**24. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**25. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Smoke and Carbon Monoxide Detectors.** We'll furnish smoke and carbon monoxide detectors only if required by statute and we'll test them.

☒ THIS RESIDENTIAL DWELLING UNIT (APARTMENT) CONTAINS ALTERNATING CURRENT (AC) ELECTRIC SERVICE. IN THE EVENT OF A POWER OUTAGE, AN ALTERNATING CURRENT (AC) POWERED SMOKE DETECTOR AND/OR CARBON MONOXIDE DETECTOR WILL NOT PROVIDE AN ALARM. THEREFORE THE OCCUPANT SHOULD OBTAIN A DUAL POWERED SMOKE DETECTOR AND/OR CARBON MONOXIDE DETECTOR OR A BATTERY POWERED SMOKE DETECTOR AND/OR CARBON MONOXIDE DETECTOR.

☐ This residential dwelling unit (apartment) contains battery powered smoke detector(s). ☒ This residential dwelling unit (apartment) contains battery powered carbon monoxide detector(s). We will provide working batteries when you first

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)                    Page 5 of 14

*Steve I Osagbue*    *Kristin Shafer*

take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, and pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable the smoke detectors or the carbon monoxide detectors. If you damage or disable the smoke detector or carbon monoxide detector, or remove a battery without replacing it with a working battery, you may be subject to a penalty by the State of a fine of up to $1,000 or 10 days in jail or both, plus our actual damages. If you disable or damage the smoke detector, or carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.**  We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.**  Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by law. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control devices or security measures can eliminate all crime and that you will not rely upon any provided access control devices or security measures as a warranty or guarantee of any kind. We disclaim any express or implied warranties of security. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**26.CONDITION OF THE PREMISES AND ALTERATIONS.**  You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

We shall deliver the leased premises and all common areas in a clean, safe, habitable and sanitary condition, free of rodents and vermin, and in complete compliance with all applicable laws. You acknowledge that you have been given an opportunity to examine the premises, that you have examined the premises and found the dwelling unit in satisfactory condition. We acknowledge our responsibility for maintaining the premises in accordance with all applicable laws. The parties hereto do incorporate by reference Chapter 8, Title "Buildings", Chapter 22, Title "Fire Safety Code", Chapter 26, Title "Housing and Building Maintenance Standards", and Chapter 59, Title "Zoning", Montgomery County Code 1984 edition, as amended, as an express warranty of habitability and covenant to repair. All smoke and/or carbon monoxide detectors required by Code, are installed and are in proper working condition. If an inspection by the Department of Housing and Community Affairs (the "Department") indicates that the premises does not comply with all applicable laws, the Director of the Department must notify us in writing and order correction of each violation within a specified period of time. If we do not correct the violation in the specified period of time, the Director may:

(1)  Authorize you to:
  (A)  have the violation corrected by a licensed contractor selected from a list maintained by the Director; and
  (B)  deduct the reasonable cost of the repair, up to the amount of one month's rent, from your rent; or

(2)  Revoke our license or take other remedial action under Section 29-25 of the Montgomery County Code.

**27.ANIMALS.**  Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment Community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person where there is a disability-related need for the assistance animal. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

**28.WHEN WE MAY ENTER.**  We may only enter the premises if we have given due notice to you, and you have not reasonably objected, to: (1) make necessary repairs, decorations, alterations or improvements; (2) supply services only by mutual agreement during normal business hours except in an emergency; or (3) exhibit the premises to prospective buyers, mortgagees or tenants during normal business hours only, including weekends, except as we and you otherwise agree; but nothing in this subsection prevents us from entering the premises in an emergency situation or, after 72 hours' notice when we are required to allow the Department of Housing and Community Affairs access for an inspection under Chapter 29 or Chapter 26 of the Montgomery County Code, or when we have good cause to believe you may have damaged the premises or may be in violation of Chapter 29 of the Montgomery County Code. During the last sixty (60) days of the term of this Apartment Lease Contract or any extension thereof, we/Agent may enter the premises to exhibit the same to other persons. You agree to cooperate with us or our Agent in showing the property. You are advised that on occasion he/she may be asked to exhibit the premises on less than twenty-four (24) hours' notice.

**29.JOINT AND SEVERAL RESPONSIBILITY.**  Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of tenancy termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 63 (Deposit Return, Surrender, and Abandonment).

*Steve I Osagbue*     *Kristin Shafer*

## Replacements

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

a. a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and

b. the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: the replacement resident must sign this Lease Contract with or without an increase in the total security deposit or replacement residents must sign this Lease Contract with or without an increase in the total security deposit or replacement residents must sign an entirely new Lease Contract. If an entirely new Lease Contract is not signed, unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original lease term unless we agree otherwise in writing—even if a new Lease Contract is signed.

We shall not unreasonably withhold our consent to a subletting of the premises which you occupy or to your assignment of the Apartment Lease Contract, except in the case of condominium and cooperative housing structure where applicable legal documents and rules and regulations prohibit subleasing.

## Responsibilities of Owner and Resident

**31. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

a. keep common areas reasonably clean, subject to paragraph 26 (Condition of the Premises and Alterations);

b. maintain fixtures, furniture, hot water, heating and A/C equipment;

c. comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

d. make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, you may exercise all remedies provided by law.

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrested or convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested; (6) any illegal drugs or paraphernalia are found in your apartment; or (7) you or any guest or occupant engages in any of the prohibited conduct described in paragraph 21 (Prohibited Conduct).

**Lease Renewal When A Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, we may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Eviction.** If you default, we may seek to end your right of occupancy by giving you a written notice to vacate in accordance with Maryland law and local county and city ordinances. Notice may be by: (1) regular mail; (2) certified mail, return receipt requested; (3) personal delivery to any resident; (4) personal delivery at the apartment to any occupant over 16 years old; or (5) affixing the notice to the outside of the apartment's main entry door. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations, subject to your and our duties to mitigate damages as provided by this lease or by applicable Maryland law. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due if allowed under applicable state or local law; the filing or acceptance doesn't waive or diminish any of our other contractual or statutory rights. Accepting money at any time doesn't waive our rights to damages; or past or future rent or other sums.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) your holdover rent will be your current rent plus an additional [X] __35__ % or [ ] $ _____ per month. If no amount is indicated, your holdover rent will be the lesser of double (200%) your current rent or the maximum allowed by law; (3) you'll be liable to us for losses resulting from your holdover; (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over; and (5) we may bring an action of eviction and for damages in conformance with the Maryland Real Property Code or applicable county and city ordinances.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions) or elsewhere in this Lease Contract or related addenda, in addition to other sums due. Such rental discounts, if any, were conditional upon your compliance with all rental obligations under this lease or as otherwise provided by law. Upon your default, we have all other legal remedies, including termination of your tenancy under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs that a court awards for breach of the Lease Contract by the Resident. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). With the exception of unpaid rent and late fees due on unpaid rent, all other unpaid amounts bear the maximum legal interest rate allowed under state and local law.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**33. MITIGATION OF DAMAGES.** If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. We'll exercise customary diligence to relet and mitigate damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

**34. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**35. NO AUTHORITY TO WAIVE UNLESS IN WRITING.**
Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**36. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**37. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)

_³⁴ Steve I Osagbue    ⁸² Kristin Shafer_

**38. MISCELLANEOUS.**

  A. Exercising one remedy won't constitute an election or waiver of other remedies.

  B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.

  C. All remedies are cumulative.

  D. This Lease Contract binds subsequent owners.

  E. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.

  F. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.

  G. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.

  H. All lease obligations must be performed in the county where the apartment is located.

  I. This Lease Contract is subject to the three (3) year statute of limitations unless modified by applicable law.

  J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**39. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**40. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Lease Term), and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**41. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemic, pandemic or health emergency, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**42. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 (Contractual Lien and Property Left in Apartment) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**43. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

**44.** Before giving a notice of past-due rent, issuing a written quit and vacate notice, or beginning any judicial proceeding to regain the leased premises, we will notify you that general information and assistance regarding evictions are available from the Department of Landlord Tenant Affairs.

**45.** Montgomery County law requires us to offer each prospective Tenant a lease for an initial term of two (2) years, and a two (2) year term at each renewal, unless we have reasonable cause to offer a different term. Reasonable cause is defined as a situation whereby a two (2) year lease would create undue hardship or expense for us. The

Tenant may accept or reject this offer. Before signing this Apartment Lease Contract, you confirm that (initial and date one option):

i. _____

  We offered you a 2-year lease and you accepted it.

ii. _____

  We offered you a 2-year lease but you rejected it.

iii. _____

  We gave you a statement attached to this Lease (a) explaining why we had reasonable cause not to offer you a 2-year lease term or a 2-year renewal; and (b) telling you that you can challenge our action by filing a complaint with the Montgomery County Department of Housing and Community Affairs no later than 180 days after the first day of the tenancy that is the subject of the complaint.

If i. or ii. above applies, you may convert a one-year Lease to a two-year Lease within 30 days after signing the Apartment Lease Contract, but not if the one-year Lease was offered by us consistent with clause iii above.

**46.** Attorney's fees are not part of your rent and need not be paid to redeem the premises in a nonpayment of rent action. However, you agree to pay court costs, legal costs or attorney's fees awarded by a court after the court finds that the fees and costs are reasonable. We shall be obligated to pay your attorney's fees if you are the prevailing party in the legal action and fees are awarded by the court.

**47.** Any provision of the Apartment Lease containing a waiver of Landlord's liability for damage caused by the Landlord's negligence or violation of any applicable laws is hereby deleted. This Apartment Lease provides for reimbursement to you for any damage you sustain due to the negligence of the Landlord.

**48.** This Apartment Lease does not contain any waiver of any right or protection afforded under Chapter 29 of the Montgomery County Code.

**49.** This Apartment Lease does not authorize any confession of judgment for rent due.

**50.** This Apartment Lease does not contain any provisions authorizing us to take possession of the dwelling or your personal property in the dwelling without formal legal process.

**51.** If this lease is for an initial term of 125 days or more, we have provided to you a copy of any rule, declaration, or covenant that binds the owner and affects the use and occupancy of the unit or common area associated with the unit are enforceable against you.

**52.** This Apartment Lease Contract does not incorporate any collateral agreement or provision by reference unless a copy of the collateral agreement or provision is attached to all copies of this Apartment Lease Contract.

**53.** This Apartment Lease Contract requires itemization of all charges for repair of damages to the premises, claimed by us or by you, and requires that such charges shall be substantiated upon written request.

**54.** We shall not have any lien on behalf of us on your chattels, except as provided by Maryland law.

**55.** We shall (1) post a durable notice in an accessible, conspicuous and convenient place in each building to which the notice applies, or (2) distribute the notice directly to all tenants. The notice shall contain the name(s) or title(s) and telephone number(s) of one or more responsible representative(s) of the building management who may be reached at all times in the event of an emergency.

**56.** We hereby disclose to you that as of the original date of this Apartment Lease Contract, we do not have the intent to transfer or convert responsibility for utility payments to you during the term of the Apartment Lease Contract except as responsibility for such utility payments by you is set forth in the Apartment Lease Contract. However, we reserve the right to adopt in the future the intent to transfer and convert responsibility for utility payments to you, in the manner provided by law. For the purposes of this section, the term "intent" means that we have entered into a contact to install submeters or individual meters or applied for electrical permits for their installation.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)

*Steve J Osaghue*    *Kristin Shafer*

57. You are hereby notified that (1) general information and assistance is available from the Department of Housing and Community Affairs regarding: (a) questions about any addenda to the Apartment Lease Contract; (b) evictions; and (2) you are entitled to a hard copy of the Landlord-Tenant Handbook by the Department of Housing and Community Affairs as required under subsection 29-28(f) of the Montgomery County Code and that the Landlord-Tenant Handbook is available on the County website.

A. _____
I was notified that I was entitled to a hard copy of the Landlord-Tenant handbook.

B. _____
I acknowledge that I refused a hard copy of the handbook and was referred to the Landlord-Tenant Handbook maintained on the County's website.

## When Moving Out

**58. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early under paragraph 23 (Release of Resident) except if you are able to terminate your tenancy under the statutory rights explained under paragraphs 11 (Early Move-Out), 23 (Release of Resident), or any other applicable law. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of paragraph 3 (Lease Term), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

**59. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 45-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**60. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**61. MOVE-OUT INSPECTION.** If you notify us by certified mail within fifteen (15) days prior to your specified move-out date of: your intention to move, the date of the move, and your new address, you have the right to be present during our inspection of the premises (unless you have been evicted, ejected, or abandoned the premises). After receiving your move-out notice, we will inform you by certified mail of the time and date on which the inspection will occur. The date of the inspection will be within five (5) days before or after the moving date specified in your notice. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**62. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, including, but not limited to, and if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke detector batteries; carbon monoxide detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; packing, removing, or storing property removed or stored under paragraph 13 (Contractual Lien and Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraphs 6 (Rent and Charges) and 27 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; and other sums due under this Lease Contract.

You'll be liable to us for charges for replacing all keys and access devices referenced in paragraph 5 (Keys) if you fail to return them on or before your actual move-out date.

**63. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions by first class mail to your last known address (if no forwarding address is provided) no later than 45 days after termination of your tenancy unless statutes provide otherwise.

Eviction, Ejection, or Abandonment: You may within 45 days of being evicted, ejected, or abandoning the premises, make a written demand, by first class mail, that we return the security deposit, less proper deductions. Within 45 days of receiving such a notice, we will present you a written list of damages together with a statement of costs actually incurred and will return to you the security deposit together with simple interest at the rate required by law, less any damages rightfully withheld.

You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid — whichever date occurs first.

You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13 (Contractual Lien and Property Left in Apartment)), but do not affect our mitigation obligations (paragraph 32 (Default by Resident)).

## Severability, Originals and Attachments, and Signatures

**64. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**65. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

*Steve J Osagbue*     *Kristin Shafer*

**66. LOCAL LAWS AND ORDINANCES.** It is the intent of the parties to comply with the laws of Maryland, including local county and municipal ordinances. The terms of this Apartment Lease Contract may be modified by another addendum which conforms to the laws of the jurisdiction in which this apartment community is located. If there is any conflict in the terms of that addendum and this Apartment Lease Contract the conflicting terms of that other addendum shall control. In the event no other addendum is attached to this Apartment Lease Contract and the local laws or ordinances provide additional rights or remedies not included herein, this Apartment Lease Contract is amended by reference to such local laws and ordinances to incorporate the terms, rights, or remedies thereof herein. It is the intent of the parties to have this lease construed to include any such rights or remedies herein, and the provisions of such laws or ordinances shall supercede and control over the language of this Apartment Lease Contract to the extent they are in conflict. If any of the provisions of this Apartment Lease Contract are found to be unenforceable or void, then you and we agree that such unenforceable lease provisions shall be disregarded by the court, and the remaining enforceable provisions of this Apartment Lease Contract will remain enforceable and binding on both you and us and will be construed to reflect the intent of the parties.

> You are legally bound by this document.
> Read it carefully before signing.

Date form is filled out *(same as on top of page 1)*

05/27/2022

Additional provisions or changes my be made in the Lease Contract if agreed to in writing by all parties.

Resident or Residents [SEAL] *(all sign below)*

_____

_____

_____

_____

_____

_____

_____

Owner or Owner's Representative [SEAL] *(signing on behalf of owner)*

_____

Below is the name, address, and phone number of owner's representative or managing agent who is authorized to receive notices and services of process on our behalf.

CT Corporation

351 W. Camden St.

Baltimore, MD 21201

(410) 539-2837

Name, address, and telephone number of the Owner is:

FPA/WC Wheaton Station, LLC

11215 Georgia Avenue

Wheaton, MD 20902

(301) 637-0337

Resident may inspect a copy of the Owners rental housing license at the following address:

11215 Georgia Avenue Wheaton, MD 20902

_____

**SPECIAL PROVISIONS (CONTINUED FROM PAGE 4):**

You are advised of the following laws and regulations regarding utility metering, submetering and energy allocation equipment. To the extent that any numbered or lettered items are deleted, such deletions are as to matters unrelated to metering, submetering or energy allocation equipment.

**METERS – AUTHORIZATION BY COMMISSION**

<u>In general</u>

A person may not furnish or put in use for revenue billing purposes a gas meter or electric meter unless the Public Service Commission has authorized the meter's use.

<u>Testing of meters</u>

(1)  Each gas company and electric company shall maintain suitable equipments, approved by the Public Service Commission, for testing the accuracy of a gas meter or electric meter furnished by the company for use by its customers.

(2)  The gas company or electric company shall test a customer's meter with the equipment in accordance with §7-302 of the Public Utilities Article.

Except as otherwise provided, the Public Service Commission may not authorize a gas company or electric company to service an occupancy unit or shopping center unit unless the building or shopping center has individual metered service or submetering as provided under §7-303 or §7-304 of the Consumer Relations subtitle for each individually leased or owner occupancy unit or shopping center unit.

In accordance with its regulations, the Public Service Commission may authorize a gas company or electric company to provide service for central heating or cooling systems, or a combination of those systems, to an occupancy unit if the Public Service Commission is satisfied that the service will result in a substantial net saving of energy over the energy saving that would result from individual metering or submetering as provided under §7-303 or §7-304 of the Public Utilities subtitle.

Imposition of unauthorized utility charges prohibited – The owner, operator, or manger of a residential multiple occupancy building or shopping center may not impose a utility cost on an occupancy unit or shopping center unit, except from charges that:

(1)  the Public Service Commission authorizes the gas company or electric company to impose; and

(2)  The gas company or electric company actually imposes on the owner, operator, or manager.

**MASTER METER**

"Master meter" defined – "master meter" means a meter used to measure, for billing purposes, the total amount of electricity or natural gas used in a building by a heating, ventilation, and air conditioning system, including the combined use from all individually leased or owned units and all common areas.

The Public Service Commission may authorize the use of a master meter in a residential multiple occupancy building for heating, ventilation, and air conditioning services without requiring individual metering or submetering for heating, ventilation, and air conditioning services without requiring individual metering or submetering for heating, ventilation, and air conditioning services as provided under §7-303 or §7-304 of the Consumer Relations subtitle if:

(1)  the utility bill for heating, ventilation, and air conditioning services for each individually leased or owner occupancy unit is included in the rent for that unit;

(2)  the Public Service Commission is satisfied that the use of the master meter for heating, ventilation, and air conditioning services will result in a net savings that would result from individual metering or submetering for heating, ventilation, and air conditioning services; and

(3)  each individually leased or owned occupancy unit;
   (i)  has individual metered service for other energy services; and
   (ii) directly receives the utility bill for the other energy services.

Review of proposed allocation of expenses – Before authorizing the use of a master meter for heating, ventilation, and air conditioning services, the Public Service Commission may review the proposed allocation of heating, ventilation, and air conditioning system expenses among individual units and common areas served by the mater meter.

Inspection and testing – In accordance with §7-301 of the Consumer Relations subtitle, an electric company or a gas company may inspect and test a master meter authorized for use by the Public Service Commission under this section.

**METERS – INSPECTION**

<u>Request for inspection by consumer</u>

(1)  By written request, a consumer may compel the Public Service Commission to inspect and test the consumer's electric meter or gas meter.

(2)  The consumer is entitled to be present for the test.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)                    Page 10 of 14

*Steve I Osaghue*    *Kristin Shafer*

Replacement of incorrect meter

(1)    The Public Service Commission shall set a percentage tolerance limit for the accuracy of an electric meter or gas meter.
(2)    The Public Service Commission shall order a gas company or electric company to replace a meter at the company's expense if the meter is incorrect to the prejudice of the consumer by more than the percentage tolerance limit set by the Public Service Commission.

Fees

(1)    The Public Service Commission shall set a uniform reasonable fee for meter test services under this section.
(i)    If the test indicates that the meter is within the percentage tolerance limit set by the Public Service Commission, the consumer shall pay the test fee.
(ii)   If the test indicates that the meter is not within the percentage tolerance limit set by the Public Service Commission, the Public Service Commission shall refund the fee.

## SUBMETERING

Combined submetering

Subject to the provisions of the Public Utilities Article, and with the approval of the Public Service Commission, a local housing authority established under Division II of the Housing and Community Development Article may submeter any combination of apartment houses, commercial rental units, dwelling units, office buildings, and shopping centers.

Submetering equipment – Adoption of regulations

(1)    Notwithstanding any other law, the Public Service Commission shall adopt regulations to establish standards:
(i)    by which an owner, operator, or manager of an apartment house, office building, or shopping center may install submetering equipment for each dwelling unit or commercial rental unit that is not individually metered for gas or electricity; and
(ii)   to allocate fairly the cost of each unit's gas or electrical consumption.

(2)    (i)    An owner, operator, or manager of an apartment house, office building, or shopping center who installs submetering equipment under this section to provide bulk metered service may not impose on a unit in the facility any utility cost except the charges that the Public Service Commission authorizes and that the gas company or electric company actually imposes on the owner, operator, or manager.
(ii)   The charges imposed under subparagraph (1) of this paragraph shall be allocated among the units in proportion to the actual usage of cubic feet or kilowatt hours by the unit.
(iii)  The owner, operator, or manager of an apartment house, office building, or shopping center may collect an additional service charge not exceeding $1 per unit per month to cover administrative costs and billing.

(3)    (i)    The requirements of this paragraph do not apply to units constructed, managed, operated, developed, or subsidized by a local housing authority established under Division II of the Housing and Community Development Article.
(ii)   If the owner, operator, or manger of an apartment house, office building, or shopping center installs submeters during the term of a lease or agreement that includes the cost of gas or electricity consumed for the unit, the owner, operator, or manager shall:
1.  determine the amount of gas or electric costs saved by that unit; and
2.  pass that amount to the unit's occupant as a payment or reduction in rent.

(4)    All submetering equipment under this section is subject to:
(i)    the regulations and standards that the Public Service Commission adopts for the accuracy, testing, and record keeping of meters that gas companies or electric companies install; and
(ii)   the meter requirements of §§7-301 and 7-302 of the Consumer Relations subtitle.

Submetering equipment – Required terms

The regulations that the Public Service Commission adopts under this section shall:

(1)    include appropriate safeguards for the occupant of the dwelling unit or commercial rental unit;
(2)    require that the utility costs and charges on each unit be imposed in accordance with subsection (d) (2) of this section; and
(3)    require that the owner, operator, or manager of the apartment house, office building, or shopping center;
(i)    maintain adequate records regarding submetering; and
(ii)   allow the occupant of the unit to inspect the records during reasonable business hours.

(f)    Enforcement of regulations – A regulation or standard that the Public Service Commission adopts under this section may be enforced under §§3-104 and 13-101 of this article.

(g)    Apartment house or commercial building not a public service company – The owner, operator, or manager of any apartment house, office building, or shopping center:
(1)    may not be considered a public service company; and
(2)    may use metering equipment only to allocate fairly the costs of gas or electric service among the occupants of the apartment house, office building, or shopping center in accordance with subsection (e) of this section.

(h)    Occupant complaints

(1)    A complaint by an occupant of a dwelling unit or commercial rental unit against an owner, operator, or manger of an apartment house, office building, or shopping center under this section may be filed in the county or municipal corporation where the apartment house, office building, or shopping center is located.

(2)    A complaint filed under paragraph (1) of this subsection may be handled by:
(i)    the landlord-tenant commission, if one exists, of the county or municipal corporation;
(ii)   the consumer protection agency; if one exists, of the county or municipal corporation if there is not a landlord-tenant commission in the county or municipal corporation;
(iii)  the Consumer Protection Division of the Office of the Attorney General, if there is not a consumer protection agency in the county or municipal corporation; or
(iv)   any other State or local government unit or office designated to handle tenant's complaints.

(i)    Redistribution of gas or electricity – This section does not affect the right of any owner, operator, or manager of an apartment house, office building, or shopping center to redistribute gas or electricity to tenants or occupants.

## ENERGY ALLOCATION EQUIPMENT

Approval required

(1)    Approval from the Public Service Commission is required before energy allocation equipment and procedures may be used by the owner, operator, or manager of an apartment house to determine the amount of gas or electricity used by an individual dwelling unit, if the amount of gas or electricity is determined by means other than by actual measurement of fuel or electric power consumed by the unit.

(2)    An energy allocation system may not be used for direct billing of energy costs to the tenant of an individual dwelling unit unless the Public Service Commission approves the system in accordance with this subsection.

## REGULATIONS

General.

A.    Purpose of Submetering. The purpose of submetering is to encourage effective conservation and efficient use of electricity or gas by fairly allocating its cost among the ultimate users within a master metered apartment house, office building, or shopping center.

B.    Availability of Submetering. An owner, operator, or manager of an apartment house, office building, or shopping center who has a master meter may install submeters in accordance with legislation enacted by the General Assembly of Maryland and with regulations adopted by the Public Service Commission of Maryland.

C.    Authorization of Regulations, Public Utilities Article, §7-303, Annotated Code of Maryland, requires the Public Service Commission to make such reasonable regulations and standards as it deems necessary to carry out the provisions of this law.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)    Page 11 of 14

*Steve J Osagbue*    *Kristin Shafer*

D.   Application of Regulations.

(1)   These regulations apply to an owner, operator, or manger of an apartment house which is not individually metered by a utility for electric or gas for each dwelling unit, commercial rental unit, or store, and to the occupant or occupants of the units or stores.

(2)   These regulations are intended to provide uniform and reasonable standards for the accuracy, billing, and regulation of submeters, and to define the respective responsibilities of the utility, the owner, and the occupant.

(3)   If unreasonable hardship to a utility or owner results from the application of any regulation, application may be made to the Public Service Commission for temporary or permanent relief.

(4)   The adoption of these regulations in no way precludes the Public Service Commission from altering or amending them by subsequent proceedings.

(5)   In implementing these regulations, an apartment house, office building, or shopping center is not a public service company as defined in Public Utility Companies Article, §1-101, Annotated Code of Maryland.

E.   Rent Reduction. Except in units constructed, managed, operated, developed, or subsidized by a local housing authority as established under Article 44 A, if the owner, operator, or manager elects to install submeters, during the term of any lease or agreement which includes the cost of electricity or gas consumed for the unit, the owner, operator, or manager shall determine the amount of electric or gas costs saved and pass this amount on to the occupant of the unit as a reduction in rent or payment.

## Generals Requirements.

A.   All Units Submetered. A unit in an apartment house may not be submetered unless all units in that building are submetered.

B.   Information in Leases. All rental contracts or leases between the owner and an occupant shall clearly state that:

(1)   The apartment house is submetered;
(2)   Bills for electric or gas consumption shall be rendered based on the submeter readings;
(3)   Electricity or gas for all common areas and common facilities shall be the responsibility of the owner and not of the occupant; and
(4)   A copy of the regulations governing submetering in apartment houses, office buildings, and shopping centers shall be provided to every occupant by the owner at no charge to the occupant.

C.   Execution of Application. The owner may reserve the right to require the occupant, before any electricity or gas is delivered, to execute an application or agreement for the purchase of electricity or gas. The occupant, by accepting the electricity, agrees to be bound by the applicable terms and conditions.

## Owners' Requirements.

A.   Right to Install Equipment. The owner has the right to install all necessary submetering equipment and wiring on the property occupied by the occupant in accordance with these regulations and with any other applicable national, State, or local codes or requirements.

B.   Equipment Accessibility. The occupant shall provide suitable space for the installation of submetereing equipment. All submeters shall be installed where they will be readily accessible for reading, testing, and inspection, and where these activities will cause minimum interference and inconvenience to the occupant.

C.   Accessible to Owner. Access to submetering equipment shall be granted to the owner by the occupant.

D.   Installation and Ownership. All submetereing equipment shall be furnished and installed by the owner and shall be owned and maintained by the owner.

E.   Responsibility for Maintenance. Maintenance, inspection, sealing, and testing of all submetering equipment shall be the responsibility of the owner.

## Electric Submetering.

A.   Type of Submeter

(1)   All submeters shall be of a type and class to properly and accurately register electrical consumption
(2)   The meter type and design shall meet the applicable provisions of the latest edition of the American National Standard for Electric Meters – Code for Electricity Metering, incorporated in COMAR 20.50.02.02 C.
(3)   A submeter installed for billing purposes shall have been approved by the Public Service Commission.

B.   Charges for Electricity. All charges for electricity used by an occupant shall be calculated from the readings of his or her submeter.

C.   Meter Accuracy. All submeters in service shall be tested by the owner as provided by this chapter.

D.   Fast Submetering. If an occupant's submeter is found to be more than 2 percent fast as a result of a test, the owner shall:

(1)   Recalculate the occupant's bills for the lesser of the period of the occupant's service or the period since the submeter was last tested.
(2)   Make a refund or a credit to the occupant, if the adjustment so calculated exceeds $1.

E.   Slow Submeter. If a submeter is found to be more than 2 percent slow as a result of a test and the unbilled amount exceeds $5, the owner may bill the occupant ½ of the unbilled error for the period of the occupant's service, or since the submeter was last tested, whichever is less, but not for a period longer than 12 months.

F.   Accuracy Calculation. The average accuracy shall be the weighted average of the percentage registration at light load and at heavy load, giving the light load registration a weight of 1 and the heavy load registration a weight of 4.

G.   Overcharge Adjustment. If an occupant has been overcharged as a result of an incorrect submeter reading, incorrect calculation of the bill, or incorrect submeter connection, the owner shall credit or refund the amount of overcharge to the occupant.

H.   Undercharge Adjustment. If an occupant has been undercharged as a result of incorrect submeter reading, incorrect calculation of the bill, incorrect submeter connection, stopped submeter or similar reasons, the amount of undercharge may be billed to the occupant.

I.   Meter Test by Owner. Upon application by occupant, the owner shall test the submeter for accuracy, at a laboratory approved by the Public Service Commission or on-site with instruments approved by the Public Service Commission, with no charge to the occupant, provided that no test was made within the past 18 months.

J.   Testing upon Installation and Removal of Meters.
(1)   A submeter may not be placed in service until it has been tested and adjusted by the owner at a laboratory approved by the Public Service Commission or on-site with instruments approved by the Public Service Commission to within plus or minus 1 percent of 100 percent accuracy.
(2)   If any submeter is removed from service or replaced by another submeter, it shall be properly tested and adjusted by the owner at a laboratory approved by the Public Service Commission before being placed in service again.

## Gas Submetering

A.   Type of Submeter.

(1)   All submeters installed in compliance with these regulations shall be of a type and class to properly and accurately register gas consumption.
(2)   A submeter installed for billing purposes shall have been approved by the Public Service Commission.

B.   Charges for Gas. All charges for gas used by an occupant shall be calculated from the readings of the occupant's submeter.

C.   Meter Accuracy. All submeters in service shall be tested by the owner as provided by the Code of Maryland Regulations.

D.   Fast Submetering. If an occupant's submeter is found to be more than 2 percent fast at check flow, the owner shall:

(1)   Recalculate the occupants' bills for the lesser of the period of the occupant's service or the period since the submeter was last tested:
(2)   Make a refund or a credit to the occupant, if the adjustment so calculated exceeds $1.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)          Page 12 of 14

*Steve J Osagbue*          *Kristin Shafer*

E.  **Slow Submeter.** If a submeter is found to be more than 2 percent slow at check flow and the unbilled amount exceeds $5, the owner may bill the occupant ½ of the unbilled error for the period of the occupant's service, or since the submeter was last tested, whichever is less, not for a period longer than 12 months.

F.  **Overcharge Adjustment.** If an occupant has been overcharged as a result of any incorrect submeter reading, incorrect calculation of the bill, or incorrect submeter connection, the owner shall credit or refund the amount of overcharge to the occupant.

G.  **Undercharge Adjustment.** If an occupant has been undercharged as a result of an incorrect calculation of the bill, incorrect submeter connection, stopped submeter or similar reasons, the amount of undercharge may be billed to the occupant.

H.  **Meter Test by Owner.** Upon application by the occupant, the owner shall test the submeter for accuracy, at a laboratory approved by the Public Service Commission, with no charge to the occupant, provided that a test was not made in the past 18 months.

I.  Testing upon Installation and Removal of Meters.

   (1)  A submeter may not be placed in service until it has been tested and approved by the owner at a laboratory approved by the Public Service commission, to an accuracy of 98.5 – 100.5 percent.

   (2)  If a submeter is removed from service or replaced by another submeter, it shall be properly tested and adjusted by the owner at a laboratory approved by the Public Service Commission before being placed in service again.

**Bills, Bill Forms, and Payments**

A.  **Amount Billed to Occupant.** The amount billed to any occupant shall be for only the quantity consumed by the unit, as recorded on the unit's submeter. Energy used in common areas and common facilities may not be billed to any occupant.

B.  Calculation of Bills

   (1)  The occupant's bills shall be calculated as follows: After receipt of the bill from the utility, electric supplier, or gas supplier, the owner shall divide the total net bill by the total number of kilowatt-hours or cubic feet as shown on the bill, to determine an average unit cost. This average unit cost shall be multiplied by each occupant's kilowatt-hour or cubic feet consumption to obtain the occupant's monthly bill.

   (2)  The totals master meter net bill on which the owner shall calculate the average unit cost shall include:
      (a)  Customer, energy, commodity, and demand charges by the utility, electric supplier, or gas supplier;
      (b)  State and local taxes and surcharges by the utility, electric supplier, or gas supplier; and
      (c)  Environmental surcharge by the utility, electric supplier, or gas supplier.

   (3)  The total master meter net bill on which the owner shall calculate the average unit cost shall exclude:
      (a)  Late payment charge, if any;
      (b)  Any connection charge;
      (c)  Any charge for a bad check; and
      (d)  Service charges

C.  **Unit of Measurement.** The unit of measurement of the occupant's consumption shall be the kilowatt hour (kWh) for electricity and cubic feet for gas.

D.  **Bill Information.** The occupant's bill shall show:

   (1)  The bill date (the date the bill was prepared);
   (2)  The name of the occupant and the number, or other identification, of the unit;
   (3)  The dates and readings of the submeter at the beginning and at the end of the billing period;
   (4)  The amount of kilowatt-hours for electricity or cubic feet of gas billed in the billing period;
   (5)  The average unit cost used to compute the bill;
   (6)  The amount due for electricity or gas, the service charge by the owner, if any, the balance forward, and the total amount due;
   (7)  The name and address of the firm rendering the occupant's bill and the name and address where payment can be made;
   (8)  The name, address and telephone number of the party which may be contacted in case of a dispute; and
   (9)  A statement to the effect that the bill is from the owner.

E.  Estimated Bills.

   (1)  Estimated bills may not be rendered unless the submeter has been tampered with, is out of order, or access to it cannot be obtained, and in this case the bill shall be distinctly marked "estimated".
   (2)  The estimate shall be based on consumption for a similar billing period when available, and if not available, on the preceding billing period.
   (3)  The subsequent bill based on actual submeter reading shall show the total period between actual readings and shall indicate credit for the preceding estimate.

F.  Mailing or Rendering of Bills

   (1)  The owner shall render electric or gas bills to the occupants not later than 14 days after the owner receives the master meter bill from the utility.
   (2)  The submeters shall be read by the owner within 5 working days of the date the utility reads the master meter.
   (3)  Bills are due and payable upon receipt by the occupant and become past due if not paid within 20 days from the date of mailing or rendering.

G.  **Relationships Between Meter Reading and Billing Dates.** The following chart illustrates the relations between the meter reading and billing dates:



Chart Showing Relations Between Meter Reading and Billing Dates

H.  **Service Charge.** The owner may impose a service charge not to exceed $1 per unit per month to offset the administrative costs of billing.

**Records.**

A.  **Billing Records.**

   (4)  All records associated with the computation of charges rendered to occupants for electric or gas service shall be retained for a minimum period of 2 years.
   (5)  The owner shall maintain and make available for inspection by the occupant, upon request, the following records:
      (a)  The bills from the utility to the owner for the current month and the 24 preceding months;
      (b)  The calculation of the average cost of electricity or gas for the current month and the 24 preceding months; and
      (c)  The occupant's submeter readings and billings for the current month and the 24 preceding months.

© 2021, National Apartment Association, Inc. - 9/2021, Maryland (Montgomery County)

Page 13 of 14

40 *Steve I Osaghue*    88 *Kristin Shafer*

B.  Submeter Records
   (1)  The owner shall maintain records of all submeters, showing the submeter number and its location.
   (2)  All submeter accuracy tests shall be recorded. The record of each test shall have the identifying number of the submeter, the standard number, the date and kind of test made, by whom (including address), the accuracy at each electric load or gas flow rate tested, and sufficient data to permit verification of calculations. Records of test results of the submeter serving a unit shall be made available to the occupant of the unit upon request.

C.  Commission Inspection. The complaint agency and the Public Service Commission shall have the right to inspect the records of the owner during reasonable business hours.

Complaints

A.  Bill and Meter Accuracy Disputes. Any dispute relating to the occupant's bill and to the accuracy of his submeter is between the owner and the occupant, and excludes the utility.

B.  Complaint Procedures. Any complaint by an occupant against an owner shall be handled by the complaint agency. An occupant is not a customer of the utility. An occupant is not entitled to have complaint or other customer rights before the Public Service Commission.

SPECIAL PROVISIONS (CONTINUED) An Amenity fee can be charged at the commencement of any new lease and upon lease renewal at the managements discretion not to exceed $350.00. This fee is for the capital enhancements and usage of amenities at the community. To participate in MoneyGram Network, you must obtain Resident Account Information from the Online Resident Portal from the Leasing Office. ACH Bank Transfers and Credit Card Payments (Visa, Discover and Mastercard) are also accepted online. We encourage all Residents to pay online via the secure portal however, personal checks, money orders and cashiers checks will be accepted during posted office hours. We cannot accept third party checks, checks with names designated other than persons named on the lease or temporary checks. If rent is paid late or if your payment is returned you must provide payment in the form of certified funds. No exceptions. After 1 returned payment certified funds are required. This will reset at renewal.

<u>SUMMARY OF TENANTS RIGHTS AND RESPONSIBILITIES</u>

Attached to this Apartment Lease Contract is a plain language summary of resident rights and responsibilities, in a form established by the County Executive that includes, at a minimum:

1.  Your lease term is __12__ months.
2.  Your rent is $ 2743.00 per month.
3.  Your rent is due on the first of each month.
4.  You are responsible to pay utility costs with the following exceptions: **none**
5.  All other responsibilities are set forth in this Lease Contract.
6.  Information about services available to the Tenant(s) may be obtained from the Department of Housing and Community affairs and the Commission on Landlord Tenant Affairs.

Acknowledged and Received

_____
Resident

_____
Resident

_____
Resident

_____
Resident

_____
Resident

_____
Resident

*Steve J Osagbue*    *Kristin Shafer*

## SUSTAINABLE LIVING ADDENDUM



**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____ 1027 _____, 11215 Georgia
Avenue
_____ (street address) in
_____ Wheaton _____
(city), Maryland, _____ 20902 _____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: May 27, 2022
Owner's name: FPA/WC Wheaton Station, LLC
_____
_____
_____
_____

Residents *(list all residents - leaseholders and occupants)*:

Steve Osagbue
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Occupants:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above-described Lease Contract for the above-described premises and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE OF ADDENDUM.** This Addendum will provide requirements and guidelines that are beneficial to improve the quality of the Community's social, environmental, and economic impact for all. All Residents are required to sign this Addendum.

**4. ENERGY EFFICIENCY.** The following are guidelines recommended to reduce overall energy consumption and reduce electricity/gas expenses.

**Thermostat Settings.** During the winter months, Energy.gov (https://www.energy.gov/) recommends setting your thermostat to 68°F while you are awake and setting it lower while you are asleep or away from home. Considerations should be made for extremely cold temperatures as to avoid freezing pipes.

During the summer months, with central air conditioning, Energy.gov recommends setting the thermostat to 78°F while you are occupying the apartment and need cooling and setting the thermostat higher while you are away. Energy.gov recommends that you set your thermostat at as high a temperature as comfortably possible and ensure humidity control if needed.

Please note that the thermostat settings listed above are only recommended guidelines and that the appropriate thermostat setting will depend upon weather conditions and the size and layout of your unit.

**Lighting and Light Bulbs.** Use natural light when possible. Consider replacing standard incandescent light bulbs with energy-saving compact fluorescent light bulbs (CFLs) or light-emitting diodes (LEDs).

**Appliances.** We strongly encourage the use of appliances that have the ENERGY STAR label or other energy-efficient labeling.

**Conserve Electricity.** Consider unplugging chargers for power tools, mobile phones, laptops, televisions, and other electronic devices when not in use, or when you plan to be away from the apartment for an extended period of time.

**5. WATER EFFICIENCY – REQUIREMENTS AND SUGGESTIONS.** The following requirements and suggestions will help reduce overall water consumption at the Community.

**Requirements.**

- Residents are required to report leaks to owner immediately to prevent damage, conserve water, and manage water/sewer costs.

- The apartment may come equipped with water saving fixtures and appliances, including, but not limited to, showerheads, toilets, faucets, dishwashers, and washing machines. Residents are required to receive written approval from us prior to replacing or altering any of these fixtures/appliances.

**Suggestions.**

- Every drop counts! Turn off water when shaving, washing hands, and brushing your teeth.

- When doing laundry, also consider only washing full loads. When washing small loads, be sure to use the appropriate water level setting.

**6. WASTE AND RECYCLING – REQUIREMENTS AND SUGGESTIONS.** The following requirements and suggestions will help reduce overall waste consumption and reduce waste expenses.

**Requirements.**

- All Residents are required to dispose of waste and recyclables in the appropriate containers in accordance with the Owner's Rules and Regulations, in addition to any applicable local ordinances.

- Per common practice, the following materials are generally not recyclable: Styrofoam, window glass and mirrors, electronic waste (TVs and computers), motor oil containers, yard waste, chemicals, cleaning products or solutions, chemical containers, shredded paper, plastic bags, ceramics or dishes, food waste, scrap metal, monitors.

**Suggestions.**

- For materials that are not recyclable, we recommend finding ways to reduce and reuse those items. Visit https://www.plasticfilmrecycling.org for additional information.

- We encourage you to contact your local Waste Industries branch or recycling center to find a list of accepted materials for your recycling center.

© 2021, National Apartment Association, Inc. - 4/2021, Maryland

Page 1 of 2

*Steve I Osagbue*     *Kristin Shafer*

7. **INDOOR ENVIRONMENT AND WELLNESS.** The following are guidelines which promote the quality of the indoor environment and wellness:

- This Community ☒ is ☐ is not a smoke-free environment. If the Community is a smoke-free environment, then no smoking or vaping is allowed anywhere in the Community, at any time. Smoking refers to any use or possession of a cigar, cigarette, e-cigarette, hookah, vaporizer, or pipe containing tobacco or a tobacco product while that tobacco or tobacco product is burning, lighted, vaporized, or ignited, regardless of whether the person using or possessing the product is inhaling or exhaling the smoke from such product. The term tobacco includes, but is not limited to any form, compound, or synthesis of the plant of the genus Nicotiana or the species N. tabacum which is cultivated for its leaves to be used in cigarettes, cigars, e-cigarettes, hookahs, vaporizers, or pipes. Smoking also refers to use or possession of burning, lighted, vaporized, or ignited non-tobacco products if they are noxious, offensive, unsafe, unhealthy, or irritating to other persons. Please refer to the No-Smoking Addendum for further information.

- Owner provides common area cleaning using only products that have the Green Cleaning® seal or a similar green certification. Owner recommends that Residents also use like products in the cleaning of their units.

8. **SEVERABILITY.** If any provision of this Addendum to the Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum to the Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum to the Lease Contract while preserving the intent of the parties.

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(signs below)*

_____

**Date of Signing Addendum**

_____

© 2021, National Apartment Association, Inc. - 4/2021, Maryland

43 *Steve J Osagbue*     91 *Kristin Shafer*

## LEASE SUMMARY

This summary is required by Chapter 29-27(w) of the Montgomery County Code. It presents key terms of the attached lease and summarizes tenant rights and responsibilities under applicable laws and as described in the lease. It also provides information about services available to tenants from the Montgomery County Department of Housing and Community Affairs and the Commission on Landlord-Tenant Affairs.

*Approved by Montgomery County Office of Landlord-Tenant Affairs, 240-777-0311*
*www.montgomerycountymd.gov/dhca*

**Tenant's Name:** Steve Osagbue

**Landlord's Name:** FPA/WC Wheaton Station, LLC

**Authorized Occupants are:**

**Property Address:** 11215 Georgia Avenue #1027, Wheaton, MD 20902

**Agent's Name:** CT Corporation

**Landlord's Address:** 351 W. Camden St.
Baltimore, MD 21201

**Primary Contact's phone number:** ▓▓▓▓2551
**In case of emergency contact:** ▓▓▓▓2551

**Lease Date:** May 27, 2022    Term [ ☐ 1yr, ☐ 2yr, ☐ month-to-month, ☐ other ]

**Rent:** $ 2743.00 /mo 1st year; $_____ /mo 2nd year; **Total Amount for Lease Term:** $_____

**Term** 05/31/2022 to 05/30/2023 **Pro-Rata** $ 88.48 **Dates** 5/31/2022-5/30/2023

**2-Year Lease Offer and at Renewal.** I was offered and ☐ accepted; ☒ rejected a 2-year lease. ☐ If a 2-year lease was not offered, a written explanation as to why is attached to the lease.

**Resident(s) Initials Here:** _____  _____  _____  _____  _____  _____  _____

**Amenity Fee***: (1x only), Amenities Sky Lounge, Gameroom, Lounge, Gym, Pool, Grills, Dog Park

**Rent Due Date +:** 1st of month  **Late Fee:** (after 10 days -5% of rent due) $ 136.95 ; **THIS IS NOT A GRACE PERIOD**

**Returned Check Fee:** $ 35.00 (or maximum amount allowed by law)

**Utilities.** Owner is responsible for the following utilities: ☐ gas; ☐ electricity; ☐ water; ☐ sewer; ☐ cable TV; ☐ stormwater; ☐ master antenna; ☐ internet; ☒ Other Trash _____ ; ☐ Other _____

**Security Deposit:** $ 750.00  **Pet Deposit:** $ 0.00
**Total Security Deposit Including Pet Deposit:** $ 750.00 .

**Pets.** The Tenant is not allowed to keep pets on the property without the express written consent of the landlord.
Pets allowed: ☒ Yes ☐ No

Types of Pet(s)_____ Weight _____ License No(s) _____

Types of Pet(s)_____ Weight _____ License No(s) _____

**Insurance.** Landlord's insurance policy does not provide coverage for a tenant's personal belongings. For this property, Renter's insurance is: ☐ recommended; ☒ required.

***Does not apply to MPDU tenants; An amenity MUST exist for this fee to be charged**
**+ Failure to pay rent may result in eviction; failure to pay rent timely may result in non-renewal of the lease**

44 *Steve J Osagbue*   9.2 *Kristin Shafer*

## TENANTS' RIGHTS

**Tenants have the right to:**

➢ Review the proposed lease at any location of the tenant's choosing prior to signing the lease;

➢ Receive a copy of the current DHCA Landlord-Tenant Handbook at move-in unless the tenant declines a copy and accepts referral to a copy on the County website;

➢ Be given a written explanation of the formula and calculation of the allocation of the cost for gas and electric billing in properties built prior to 1978 along with all information required under the Public Utilities Article of the Maryland Code and applicable COMAR provisions;

➢ A written explanation regarding the allocation of water if the property is not sub-metered;

➢ Have window guards installed in your unit on all openable windows if you live above the ground floor, have a child 10 years of age or younger; or on request;

➢ Receive a window guard addendum at lease signing, lease renewal, or with any notice of rent increase;

➢ Be offered a two-year lease at renewal or receive a written notice why it is not being offered;

➢ Receive at least 90 days-notice of any proposed rent increase or 60 days' notice of landlord's decision not to renew;

➢ Sublet with written permission from the landlord if it is not prohibited by the home-owner's association;

➢ Receive at least 24 hours-notice prior to a landlord/agent/contractor entering the premises, except in cases of emergency;

➢ Receive 72 hours-notice prior to annual/biannual or triennial inspections from County Code Enforcement;

➢ Make repairs with permission of the DHCA Director, after notice to the landlord and DHCA's issuance of a notice of violation, and deduct the cost of repairs from the rent (up to the equivalent of one month's rent) *if* the landlord fails to make required repairs as ordered by DHCA in the required timeframe; **

➢ Form, join, meet, or assist one another within or without tenant organizations; to meet and confer with the landlord with assistance from a representative if the tenant so chooses;

➢ Have access to meeting rooms and other tenant accessible areas suitable for meetings within the property during reasonable hours and notice to the landlord to hold tenant organization meetings;

➢ Have the first tenant organization meeting of each month free of any room reservation fees; any meeting after that is subject to the regular fee charged for reserving this area by the property;

➢ Distribute freely and post in central locations of the property, literature concerning Landlord-Tenant issues, if the origin of the literature is properly identified;

➢ Call the Office of Landlord-Tenant Affairs (240-777-0311) should they have any questions regarding Landlord-Tenant law; and

➢ File complaints with the Office of Landlord-Tenant Affairs (240-777-0311) individually or as a group.

**\*\*This pertains mainly, but not exclusively, to violations that are a threat to health and safety.**

## TENANTS' RESPONSIBILITIES

**Tenants are responsible for:**

➢ Obtaining prior written approval from the landlord before keeping any pets on the premises;

➢ Maintaining the property in a clean, safe and sanitary condition;

➢ Using the property for orderly and lawful purposes by yourself, authorized occupants and guests;

➢ Reporting any problems requiring repair or replacement to the landlord in writing, a timely manner, and paying any costs incurred due to abuse or negligence by the tenants, guests or other authorized occupants;

➢ If you are renting in a common ownership community, complying with all rules, regulations and notices of the common ownership community. Landlord must furnish a copy of these rules at move-in;

➢ Obtaining the landlord's prior written approval before subletting the property;

➢ Requesting to be present during a move-in or move-out inspection;

➢ Removing all of your personal property at move-out, leaving the property in broom-clean condition, except for ordinary wear and tear, and returning all keys.

45 *Steve J Osagbue*    93 *Kristin Shafer*

## DHCA SERVICES

➢ Mediate disputes between landlords and tenants;

➢ Investigate and resolve formal complaints from tenants and landlords;

➢ When a resolution is not forthcoming, refer the complaints to the Commission on Landlord-Tenant Affairs (COLTA) for adjudication;

➢ Approve rental housing licenses;

➢ Inspect rental properties to ensure compliance with all applicable housing codes;

➢ Answer questions from the public regarding landlord-tenant issues, licensing and registration, housing code enforcement, affordable housing and any other housing issues; and

➢ Maintain a website that provides public access to numerous printed and downloadable publications: *www.montgomerycountymd.gov/dhca*

Acknowledgment of Receipt                                    Date

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____



*Steve J Osagbue*    *Kristin Shafer*

## WINDOW GUARD LEASE ADDENDUM

> ### Window Guards Save Lives!
> This MANDATORY notice must be given to tenants of multifamily rental units at least once per year at lease signing, lease renewal, or with a notice of a rent increase.

| | | |
|---|---|---|
| For Landlord Use: ☒ First Notice | Date Delivered: _____ | Delivery Method: ☐ By Hand ☐ Mail ☐ Other _____ |
| ☒ Second Notice | Date Delivered: _____ | Delivery Method: ☐ By Hand ☐ Mail ☐ Other _____ |

### A TENANT'S LEGAL RIGHTS REGARDING WINDOW GUARDS

*YOUR* Landlord is *required* to install a window guard on any window in your apartment that can be opened if a child 10 years old or younger lives with YOU in your apartment.

*YOU* have the *right* to request at any time and for any reason that the Landlord install window guards in your apartment (regardless of the presence of children).

*YOUR* landlord is *not required* to install window guards: (1) on windows that do not open; or, (2) if your apartment is located on the ground-level floor of the building; or, (3) on any window that has an air conditioning unit permanently bolted to the window and not surrounded by an open space exceeding 4 inches.

*YOUR* Landlord is *prohibited* from making YOU pay for the cost of installing, maintaining, or repairing window guards in your apartment.

*YOU* are *prohibited* from interfering with the installation of a window guard, tampering with or modifying a window guard, or removing a window guard that has been installed.

*YOU* are *required* to promptly review, complete, sign, and return this form to your Landlord.

### TENANTS, PLEASE PLACE A CHECKMARK NEXT TO ANY OF THE BELOW STATEMENTS THAT APPLY TO YOU:

☒ Window guards are currently installed in my apartment.

☐ Window guards are not currently installed in my apartment.

☐ Window guards are not required in my apartment because it is located on a ground floor.

☐ At least one child 10 years old or younger currently lives in my apartment.

☐ I want window guards installed in my apartment (for any reason).

☐ One or more window guards in my apartment needs repair and/or maintenance. The specific window guard(s) needing this service are listed on the back of this form. (**LANDLORD: If this box is checked, see the list on the back of this form.**)

Apt. Number: _____ 1027 _____

Tenant Name(s): Steve Osagbue _____
(Print)

Tenant Name(s): _____

Tenant Name(s): _____

Tenant Name(s): _____

Tenant Name(s): _____

Tenant Name(s): _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

⁴⁷ *Steve J Osagbue*    ⁹⁵ *Kristin Shafer*

**PART B - TO BE COMPLETED AFTER THE INSTALLATION OR REPAIR OF WINDOW GUARDS IN YOUR APARTMENT:**

❑  Window guards have been installed in my apartment as I requested, or because I have children under the age of 11 in my home.

❑  My landlord did not charge me for the cost of installing window guards.

❑  I acknowledge that it is a violation of law for me to interfere with the installation of a window guard, or to tamper with, modify, or remove a window guard that has been installed. My landlord may charge me for the cost to repair any damage to a window guard caused by me or my family.

Apt. Number: _____

Tenant Name(s): _____
             *(Print)*

Tenant Name(s): _____

Tenant Name(s): _____

Tenant Name(s): _____

Tenant Name(s): _____

Tenant Name(s): _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

Tenant Signature(s): _____    Date: _____

**Addendum:**

To My Landlord - The Window Guards listed below require repair or maintenance:

_____
_____
_____
_____
_____
_____

⁴⁸ *Steve J Osaqbue*    ⁹⁶ *Kristin Shafer*

### TERMINATION BY OWNER

05/27/2022

*This addendum is incorporated into the Lease Contract (the "Lease") and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Owner: FPA/WC Wheaton Station, LLC*
*Resident(s): Steve I Osagbue*
*Dwelling No:/Address: 11215 Georgia Avenue1027, Wheaton, MD 20902*
*Lease Date: 05/31/2022*

**If disqualifying criminal background information or a misrepresentation about any other qualification is discovered by owner after execution of the lease, applicant expressly agrees that owner shall have the right to cancel the lease and terminate occupancy in accordance with state law.**

**Resident(s) has read, reviewed, agrees to, and understands the information and requirements set forth in this Addendum.**

| | |
|---|---|
| Resident | Date |
| Resident | Date |
| Resident | Date |
| Owner/Agent | Date |



© 2018, Trinity Property Consultants

[1] *Steve I Osagbue*    [2] *Kristin Shafer*

Page **1** of **1**

## Likeness Agreement

05/27/2022

This addendum is incorporated into the Lease Contract (the "Lease") and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:

*Property Owner: FPA/WC Wheaton Station, LLC*
*Resident(s): Steve I Osagbue and all others occupying the property located at*
*Dwelling No:/Address: 11215 Georgia Avenue,1027, Wheaton, MD 20902*
*Lease Date: 05/31/2022*

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the above-named depicted individual (hereinafter "Individual") gives and grants to the above-named Property Management Firm entity and any of its acquiring and/or ownership entities, parent, associated or allied companies, corporations, firms, partnerships, and/or organizations, purchasers of assets or stock, investors, joint ventures, and any related entities (including, without limitation, any clients, ownership entities, and affiliates), any other persons who might be charged with responsibility for any claims, and the shareholders, successors, counsel, assigns, board members, insurers, officers, partners, directors, joint ventures, managers, members, agents, representatives, or employees thereof (collectively referenced as "Management") the absolute and irrevocable right and permission to photograph, film, record, and/or portray the Individual, and to depict the Individual, whether by name, by appearance, by portrayal, by action, or by likeness (hereinafter "likeness"), in connection with advertising for services provided by Management.

The Individual further acknowledges and agrees that the use of the Individual's likeness may be used by Management in any manner Management deems professionally appropriate for its legitimate business purposes, including (but not limited to) art, advertising, and trade. The Individual also hereby consents to the use of the Individual's name if such is necessary for the continued legitimate business purposes.

The Individual also hereby acknowledges and agrees that the Individual is not entitled to any further compensation beyond that which has already been negotiated for the use of the Individual's likeness. The Individual further represents that the Individual is free and has the right to grant to Management the above-referenced rights without obtaining permission from, or making any payments to, any other entity.

In executing this agreement, the Individual hereinafter, fully, and finally releases Management from any alterations, whether intentional or accidental, to the Individual's likeness and waives the right to inspect the finished image or any future images before publication. The Individual further fully and finally releases Management from any and all liability arising from or related to the development, production, or use of materials incorporating the Individual's likeness.

Both Management and the Individual hereby agree that choice of law provisions shall not apply and that any and all actions regarding this agreement shall be filed in Montgomery (county), MD (state) and that all laws shall be construed as governing this agreement.

**Tenant has read, reviewed, agrees to, and understands the information and requirements set forth in this Addendum.**

**TENANT(S) SIGNATURE:**



© 2021, Trinity Property Consultants

¹ *Steve I Osagbue*    ² *Kristin Shafer*

Page **1** of **1**

# Green Authorization
# Addendum

*This addendum is incorporated into the Lease Contract (the "Lease") and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Owner: FPA/WC Wheaton Station, LLC*
*Resident(s): Steve I Osagbue*
*Dwelling No:/Address: 11215 Georgia Avenue1027,Wheaton ,MD 20902*

*Lease Date: 05/31/2022*

The Tenant agrees that Landlord may contact any utility company providing utility services to the Premises in order to obtain data on the water, wastewater/sewer, electricity, natural gas, steam, and any other fuel and utility services being utilized by the occupant on the Premises. In the event the utility provider(s) require express written authorization from the Tenant to allow the Landlord the requested access, the Tenant agrees that the execution of the Lease and this Addendum shall be deemed such written authorization. The Landlord acknowledges and agrees that any utility information obtained shall be used solely for purposes of tracking, analyzing and reporting energy consumption, usage and efficiency at the property. Where the Landlord discloses any shared data to a third party, they will procure that the third party is placed under an obligation to keep any shared data confidential and to use it only for the express purposes of monitoring and improving the Environmental Performance of the Premises and/or the Building and/or measuring the Environmental Performance of the Premises and/or the Building against agreed upon targets.

Any and all Tenant Improvement Work and/or Alterations will be performed in accordance with Landlord sustainability practices that the Tenant has accepted as part of the lease agreement, namely the leased space fit-out must meet Environmental Protection Agency's ENERGY STAR Tenant Space criteria to use efficient water fixtures, lighting fixtures, and appliances.

The Landlord may pursue green building certifications. Tenants shall do nothing to adversely impact these initiatives and collaborate as needed with its related activities.

**Authorized Person/Company Information:**

Name: Arrive Wheaton
Mailing Address: 11215 Georgia Ave., Wheaton, MD 20902
Email Address:arrivewheaton@trinity-pm.com

| | |
|---|---|
| _____ | _____ |
| Resident | Date |
| _____ | _____ |
| Resident | Date |
| _____ | _____ |
| Owners Agent | Date |



© 2021, Trinity Property Consultants

*¹ Steve I Osagbue    ² Kristin Shafer*

## SMOKE DETECTOR AGREEMENT

05/27/2022

*This addendum is incorporated into the Lease Contract (the "Lease") and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Name: Arrive Wheaton*
*Resident(s): Steve I Osagbue*
*Dwelling No:/Address: 11215 Georgia Avenue 1027, Wheaton, MD 20902*
*Lease Date: 05/31/2022*

1.  Resident is renting from the Owner the apartment located at *11215 Georgia Avenue 1027 Wheaton, MD 20902.*
2.  This agreement is an Addendum and is part of the Rental Agreement and/or Lease between Owner and Resident.
3.  The apartment is equipped with a smoke detection device(s).
4.  The resident acknowledges the smoke detector(s) was/were tested and its operation demonstrated by the management staff in the presence of the Resident at the time of initial occupancy and the detector(s) in the apartment was operating properly at that time.
5.  Each resident shall perform the manufacturer's recommended test to determine if the smoke detector(s) is/are operating properly at least once a week.
6.  Each resident understands that said smoke detector(s) is a battery-operated unit and it shall be each Resident's responsibility to:
    a.  Ensure that the battery is in operating condition at all times.
    b.  Replace that battery as needed (unless otherwise provided by law); and
    c.  If, after replacing the battery, the smoke detector(s) does not work, inform the Management Representative immediately in writing.
7.  Resident(s) must inform the Management Representative immediately in writing of any defect, malfunction, or failure of the detector(s).

**Resident(s) has read, reviewed, agrees to, and understands the information and requirements set forth in this Addendum.**

| | |
|---|---|
| Resident | Date |
| Resident | Date |
| Resident | Date |
| Owner/Agent | Date |



© 2019, Trinity Property Consultants

*¹ Steve I Osagbue   ² Kristin Shafer*

Page **1** of **2**

# CONSTRUCTION ADDENDUM

This Construction Addendum ("Addendum") dated 05/27/2022 is attached to and made a part of the lease agreement dated 05/31/2022 (the "Lease") by and between FPA/WC Wheaton Station, LLC as agent for Owner ("Landlord"), and Steve I Osagbue (individually and collectively referred to herein as "Resident") for the rental of the premises located at 11215 Georgia Avenue,1027, Wheaton, MD 20902 Premises" or "Unit") within the community commonly known as Arrive Wheaton (the "Community" or "Property"). All terms not specifically defined herein shall have the same definition as found in the Lease.

1.  Resident has been advised that there is anticipated construction at the Community. Landlord is anticipating **[refurbishing/constructing certain common areas, individual units and amenities]** at the Property in addition to []. It is Landlord's intent that such construction will ultimately improve the Premises and the Property, although certain amenities at the Community may not be accessible to Resident during the course of construction and others may be eliminated altogether

2.  The construction project will begin on 09/15/2021 and is expected to continue for approximately 60 months; although Landlord does not warrant or guarantee completion by any particular date. Construction activities may take place on weekends as well as weekdays between the hours of 7 a.m. and 7 p.m. and construction schedules may change depending on the needs of the construction project.

3.  The planned construction includes (but is not limited to) the following:

    a.  Common Areas:

    b.  Individual Units:

4.  There may be changes to the planned construction during either the planning or the construction phases. The scope of planned construction may further be expanded to add additional amenities or improvements to the Premises or the Community or reduced in scope due in the sole discretion of Landlord.

5.  Construction will cause inconveniences to Resident which may include , but not limited to: lack of access to amenities, loss of privacy, presence of construction crews and heavy equipment, loss of open parking, relocation of assigned parking, construction related noise, construction related traffic, utility outages (including water, gas, electricity, cable TV, data, telecom), loss of views, loss of storage, construction debris, extensive dust including airborne dust and construction sawdust and fibers, noise, construction materials being stored on site, construction vehicles parked on site, nail pop or popping inside units, and construction crews accessing balconies/patios, windows and doors. There will be limited use of windows during some phases due to dust and construction. Use of balconies will be restricted during phased repairs.

6.  Resident agrees that the lease between the parties will be effective notwithstanding the construction, and any inconveniences associated with the construction will not create an offset to rental obligations, or be the basis for a complaint against Landlord, its agents, employees or assigns for rent relief, or any other claim, right, or remedy against Landlord, including constructive eviction or loss of right to quiet enjoyment. Resident understands and agrees that the level of quiet enjoyment to be expected when signing the lease agreement includes the impact of construction disclosed herein.

7.  This Construction Addendum constitutes the entire understanding between Landlord and Resident with respect to the subject matter hereof, and the parties agree that there are no verbal agreements or representations between the parties with respect to the subject matter which are not included in this Addendum.

8.  This Addendum shall remain in full force and effect so long as Resident is possession of the Premises even if a new lease agreement is signed by Resident which may or may not contain a similar addendum.

9.  If any provision of this Addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this addendum or the Lease.



© 2019, Trinity Property Consultants

¹ *Steve I Osagbue*     ³ *Kristin Shafer*

Page **2** of **2**

10.  Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

**RESIDENT:**

_____          _____
Resident                                                 Date

**LANDLORD:**

By:   _____    _____
      *Signature*                                        Date

      _____    _____
      **Print Name**                                     Title



© 2019, Trinity Property Consultants

<sup>2</sup> *Steve I Osagbue*   <sup>4</sup> *Kristin Shafer*

## CARBON MONOXIDE WARNING

05/27/2022

*This addendum is incorporated into the Lease Contract (the "Lease") and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Name: Arrive Wheaton*
*Resident(s): Steve I Osagbue*
*DwellingNo:/Address:11215 Georgia Avenue1027,Wheaton,MD 20902*
*Lease Date: 05/31/2022*

Protect your family and yourself from Carbon Monoxide Poisoning. Carbon Monoxide (CO) is a colorless, odorless gas, which at high levels can cause death.

**NEVER IDLE A CAR OR ANY FUEL BURNING ENGINE OR APPLIANCE IN A GARAGE – EVEN IF THE GARAGE DOOR TO THE OUTSIDE IS OPEN. FUMES CAN BUILD UP VERY QUICKLY IN THE GARAGE AND LIVING AREA OF YOUR HOME.**

Symptoms of Carbon Monoxide poisoning at moderate levels can be severe headache, dizziness, mental confusion, nausea, or feeling faint. Low levels can cause shortness of breath, mild nausea, and mild headaches. Exposure to even low levels can result in long-term issues and death. The symptoms are like other illnesses such as the flu or food poisoning and are sometimes confused with those.

Ask yourself the following questions:

- • Do your symptoms occur only in the house?
- • Do they disappear when you leave home and then reappear when you return?
- • Is anyone else in your household complaining of similar symptoms?
- • Did everyone's symptoms appear about the same time?

Don't ignore the symptoms, particularly if more than one person is feeling them. You could lose consciousness and die if you do nothing. If you experience symptoms that you think might be from CO poisoning:

1. **GET FRESH AIR IMMEDIATELY.** Open doors and windows, turn off combustible appliances and leave the house.
2. **GO TO AN EMERGENCY ROOM** and tell the physician you suspect CO poising. CO poisoning can be diagnosed by a blood test.
3. **NOTIFY PROPERTY MANAGEMENT IMMEDIATELY.**

**Resident(s) has read, reviewed, agrees to, and understands the information and requirements set forth in this Addendum.**

| | |
|---|---|
| _____ | _____ |
| Resident | Date |
| _____ | _____ |
| Resident | Date |
| _____ | _____ |
| Resident | Date |
| _____ | _____ |
| Resident | Date |
| _____ | _____ |
| Owner/Agent | Date |



© 2018, Trinity Property Consultants

*¹ Steve I Osagbue*    *² Kristin Shafer*

Page **1** of **2**

## REQUIRED INSURANCE ADDENDUM TO LEASE AGREEMENT

*Date: 05/27/2022*

*Property Owner: FPA/WC Wheaton Station, LLC*
*Resident(s): Steve I Osagbue and any unknown occupants*
*Dwelling No:/Address: 11215 Georgia Avenue #1027, Wheaton, MD, 20902*
*Lease Date: 05/31/2022*

This Addendum is attached to and becomes a part of the Residential Lease Agreement. For the duration of the Lease, Lessee is required to maintain and provide the following minimum required insurance coverage:

- $100,000 Limit of Liability for Lessee's legal liability for damage to Lessor's property for no less than the following causes of loss: fire, smoke, explosion, backup or overflow of sewer, drain or sump, and water damage ("Required Insurance").

Lessee is required to furnish Lessor with evidence of Required Insurance prior to occupancy of leased premises and at the time of each lease renewal period. If at any time Lessee does not have Required Insurance, Lessee is in breach of the Lease and Lessor shall have, in addition to any other rights under the Lease, the right but not the obligation to purchase Required Insurance coverage protecting the sole interest of the Lessor and seek contractual reimbursement from the Lessee for all costs and expenses associated with such purchase. This may be referred to as "force placed insurance".

Lessee may obtain Required Insurance or broader coverage from an insurance agent or insurance company of Lessee's choice. If Lessee furnishes evidence of such insurance and maintains the insurance for the duration of the Lease, then nothing more is required. If Lessee does not maintain Required Insurance, the insurance requirement of this Lease may be satisfied by Lessor, who may purchase such coverage through the Lessor's Legal Liability Insurance Policy ("LLIP"). The coverage provided under the LLIP will provide the Required Insurance coverage listed above. An amount equal to the total cost to the Lessor for the LLIP coverage shall be charged to Lessee by the Lessor as a recoverable expense under the Lease. Some important points of this coverage, which Lessee should understand are:

1. LLIP is designed to fulfill the insurance requirement of the Lease. Lessor is the Insured under the LLIP. This is single interest forced placed insurance. Lessee is not an Insured, Additional Insured or beneficiary under the LLIP. All loss payments are made to the Lessor.

2. LLIP coverage is <u>NOT</u> personal liability insurance or renters insurance. LLIP does not cover the Lessee's personal property (contents), additional living expenses or liability arising out of bodily injury or property damage to any third party. If Lessee requires any of these coverages, then Lessee should contact an insurance agent or insurance company of Lessee's choice to obtain personal liability insurance or renters insurance to protect Lessee's interests.

3. Coverage under the LLIP may be more expensive than the cost of Required Insurance obtainable by Lessee elsewhere. At any time, Lessee may contact an insurance agent or insurance company of their choice for insurance options to satisfy the Required Insurance under this Lease.

4. If Lessee has purchased Renters Insurance and at any time allows such Renters Insurance to lapse in breach of the Lease Agreement, Lessor may purchase Lessor Insurance without notice and add the total cost associated therewith to Lessee's monthly rent payment.



© 2021, Trinity Property Consultants

*¹ Steve I Osagbue*    *³ Kristin Shafer*

Page **2** of **2**

5. Licensed insurance agents may receive a commission on the LLIP.

6. The total cost to the Lessee for the Lessor obtaining LLIP shall be ten dollars and ninety-five cents ($10.95) per month. This is an amount equal to the actual premium charge to the Lessor including any premium taxes and fees due to state governing bodies and also includes a four dollar and ninety-five cents ($4.95) administrative expense fee for the expense of processing monthly payments and administering this program. There is no other fees, cost or charge added to or included within this total cost.

7. In the event that loss or damage to Lessor's property exceeds the amount of Required Insurance, Lessee shall remain contractually liable to Lessor for such amount. In the event of liability to any other party for bodily injury or property damage, Lessee shall remain liable to such other party.

8. It shall be the Lessee's duty to notify Lessor of any subsequent purchase of Renters Insurance.

As used in this Addendum: "Lease" may be interchangeable with "Lease Agreement"; "Lessee" may be interchangeable with "Resident" or "Tenant", and "Lessor" may be interchangeable with "Landlord" or "Owner".

Scheduling of the premises under the LLIP is not mandatory and Lessee may purchase Required Insurance from an insurance agent or insurance company of Lessee's choice at any time and coverage under the LLIP will be terminated by the Lessor.

_____          _____
Lessee Signature                          Date



© 2021, Trinity Property Consultants

.2 *Steve J Osagbue*   4 *Kristin Shafer*

Page **1** of **3**

## <u>Lease Contract Initials Acknowledgement Addendum</u>

Date: 05/27/2022

*This Addendum is incorporated into the Lease Contract (the "Lease") and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Owner: Arrive Wheaton, FPA/WC Wheaton Station, LLC*
*Resident(s): Steve I Osagbue and any unknown occupants*
*Dwelling No:/Address: 11215 Georgia Ave. #1027,  Wheaton, MD, 20902*
*Lease Date:* 05/31/2022

Your signature on this Addendum will acknowledge and represent the required initials in Paragraph 3 - Lease Term, Paragraph 45 – 24 Month Offer, and Paragraph 57 – Landlord Tenant Handbook, of the MONTGOMERY COUNTY APARTMENT LEASE CONTRACT stated below.

**Paragraph 3 - LEASE TERM**
　　　　A. The initial term of the Lease Contract begins on the 31 day of May, 2022, and ends at 11:59 pm the 30 day of May , 2023.

**Renewal.** This Lease Contract will automatically renew month-to-month unless before the Lease Term ends, either party gives at least **90** days written notice of termination or intent to move-out as required by paragraph 58 (Move-Out Notice). If neither party gives **90** days written notice of termination or intent to move-out prior to the day that the Lease Term ends, then this Lease will automatically renew month-to-month. In the case of a month-to-month tenancy, either party must give as least **60** days written notice of termination or intent to move-out as required by paragraph 58 (Move-Out Notice). This paragraph must be initialed by you because it contains an automatic month-to-month renewal provision. Please see paragraph 15 (Rent Increases and Lease Contract Changes) pertaining to Rent Increases and Lease Contract Changes which can go into effect for month-to-month renewals at the end of the lease term or renewal periods.

　　　　B. You acknowledge that any oral representation or oral agreements made by us or our employees or agents to or with you about the dates of termination of the lease or any bi-month to bi-month terms shall be of no effect and shall not be a basis for the termination of this Apartment Lease Contract.



© 2022, Trinity Property Consultants

*¹ Steve I Osagbue*　　*⁴ Kristin Shafer*

Page **2** of **3**

**Paragraph 45 - 24 Month Offer**
Montgomery County law requires us to offer each prospective Tenant a lease for an initial term of two (2) years, and a two (2) year term at each renewal, unless we have reasonable cause to offer a different term. Reasonable cause is defined as a situation whereby a two (2) year lease would cause hardship or expense for us. The Tenant may accept or reject this offer. Before signing this Apartment Lease Contract, you confirm the checked option below:

☐   i. We offered you a 2-year lease and you accepted it.

☑   ii. We offered you a 2-year lease but you rejected it.

☐   iii. We gave you a statement attached to this Lease (a) explaining why we had reasonable cause not to offer you a 2-year lease term or a 2-year renewal; and (b) tell you that you can challenge our action by filing a complaint with the Montgomery County Department of Housing and Community Affairs no later than 180 days after the first day of the tenancy that is the subject of the complaint

If i. or ii. Above applies, you may convert a one-year to a two-year Lease within 30 days after signing the Apartment Lease Contract, but not if the one-year Lease was offered by us consistent with clause iii above.

**Paragraph 57 - Landlord Tenant Handbook**
You are hereby notified that (1) general information and assistance is available from the Department of Housing and Community Affairs regarding (a) questions about any addenda to the Apartment Lease Contract; (b) evictions; and (2) you are entitled to a hard copy of the Landlord Tenant Handbook by the Department of Housing and Community Affairs as required under subsection 29-28(f) of the Montgomery County Code and that the Landlord Tenant Handbook is available on the County Website.

A.   ☐   I was notified that I was entitled to a hard copy of the Landlord Tenant Handbook.

B.   ☐   I acknowledge that I refused a hard copy of the handbook and was referred to the Landlord Tenant Handbook maintained on the County's website.



© 2022, Trinity Property Consultants

² *Steve J Osaqbue*   ⁵ *Kristin Shafer*

Page **3** of **3**

Your signature on this Addendum will acknowledge and represent the required initials in Lessee's Acknowledgement, of the Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards stated below.

(c) ☒Lessee has received copies of all information listed in above.

(d) ☒Lessee has received the pamphlet Protect Your Family from Lead in Your Home.

Your signature on this Addendum will acknowledge and represent the required initials in 2- Year Lease Offer and at Renewal, of the Lease Summary stated below.

I was offer and ☐ accepted; ☑ rejected a 2-year lease. ☐ If a 2-year lease was not offered, a written explanation as to why is attached to the lease.

<u>05/27/2022</u>                                                    _____

Date                                                                        Resident or Residents [SEAL]



© 2022, Trinity Property Consultants

[3] *Steve J Osagbue*    [6] *Kristin Shafer*

Page **1** of **2**

## Garage, Carport, Storage and Parking Addendum

05/27/2022

*This addendum is incorporated into the Lease Contract (the "Lease") and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Name: Arrive Wheaton*
*Resident(s):Steve I Osagbue*
*Dwelling No:/Address: 11215 Georgia Avenue,1027, Wheaton, MD 20902*
*Lease Date: 05/31/2022*

*The monthly rent on the first page of the lease does not include the checked area(s) below.*

1. You are entitled to exclusive possession of:

  o  Garage space number(s) ;
  o  Carport space number(s) ; and/ or
  o  Storage unit number(s)
  o  Parking space number(s) **Unreserved Parking**

2. The initial term begins on the _05/31/2022_ and ends at midnight the _05/30/2023._ This term will automatically renew month- to-month unless either party gives at least **60** days written notice of termination or intent to move out.

3. You will pay **$120.00** monthly for the rental of the space(s), in advance without demand. It is due on the 1st of the month with no grace period and is: (check one)

  ☑  In addition to monthly rent listed on page 1 of lease contract.

  ☐  Included in the rent listed on page 1 of lease contract.

4. Garage or carport may be used only for storage of operable motor vehicles that are currently registered, properly licensed and have current tags unless otherwise stated in our rules or community policies. Storage units may be used only for storage of personal property. No one may sleep, cook, barbeque, or live in a garage, carport, or storage unit. Persons not listed as a resident or occupant in the rental agreement may not use the areas covered by this addendum. No plants may be grown in such areas.

5. Any environmental hazard or a risk to the safety or health of other residents, occupants or neighbors in our sole judgement or that violate any government regulations may not be stored. Prohibited items include fuel (other in that in a properly capped fuel tank of a vehicle or a closed briquette lighter fluid container), Fireworks, rags, piles of paper or other material that may create a fire or environmental hazard. Landlord may remove any items they believe constitute as hazardous. Due to carbon monoxide risk residents may not run the motor of a vehicle inside a garage unless the garage door is open.

6. If a garage is furnished, you will be provided a garage door opener. You will be responsible for maintenance of any garage door opener, including battery replacement. Transmitter frequency settings may not be changed on the garage door or opener without our prior written consent. Upon termination of the lease, your failure to return any garage door opener or other remote-control device will result in a charge against you.

7. You understand and agree that any judgment of possession entered against you shall be a judgment for possession of any parking spaces which you are entitled to under this addendum. Once such judgment is rendered and executed upon you, you shall immediately remove all vehicles from the property parking areas. If you fail to remove your vehicle(s), we shall tow the vehicle(s) at your expense. You agree that we shall not be liable to you for damages related to the physical towing or any consequential damages you may incur through the loss of the vehicle(s).

8. No smoke, carbon monoxide or fire detectors will be installed in a garage, carport or storage unless required by law.



© 2020, Trinity Property Consultants

<sup>1</sup> *Steve I Osagbue*  <sup>3</sup> *Kristin Shafer*

Page **2** of **2**

9.You agree to properly register all vehicles with management. If you get a new or replacement vehicle, you must notify us and complete a revised agreement.

10.If you are provided with a parking tag or sticker, it must be properly installed/displayed.

   **o**   Permit #

11.Unless your vehicle(s) has been assigned a specific space(s), you may park in any available space(s) in the parking areas except for spaces reserved for a particular use or any marked handicap space unless you possess a government issued handicap decal or similar signage.

12.If you are assigned a parking space(s), we shall assign you the space(s) and retain the right to change assigned space(s) at our sole discretion.

13.You understand and accept that we have the right at any time, without notice, to tow unauthorized or non-registered vehicles from any parking space on the property.

14.You agree to use parking spaces in accord with the terms of the Lease and Community Rules.

15.Any vehicles which are improperly parked or are in violation of this addendum or the terms of the Lease and Community Rules will be towed at your expense. You agree that we shall not be liable to you for damages related to the physical towing or any consequential damages you may incur through the loss of the vehicle(s).

16.You understand that we will not be held liable for any theft or damage that may occur while your vehicle(s) is parked on any part of the property. Upon signing this agreement, you knowingly accept the risk of parking any vehicle(s) on the property. Always remember to lock any door of a garage or storage unit and any door between the garage and the premise.  When leaving be sure to lock all keyed deadbolt locks.

17. Residents will maintain renter's liability and comprehensive insurance coverage for any vehicle parked or stored. Landlord is not responsible for any pest control in such areas.

18.Landlord may periodically open and enter garages and storage rooms to inspect compliance with this addendum. Notice will be issued by Landlord if such inspection for garage or storage is required in accordance to law.

19.Any action by you or any occupant, guest, or visitor that violates this addendum shall constitute a violation of the lease contract.

20. Locks on doors of garage and storage units may not be rekeyed, added or changed and improvements. alterations, electrical extensions or changes to the interior or exterior are not allowed without Landlords consent. Residents may not place nails, screws, bolts or hooks into walls, ceilings, floors or doors.  Any damage not caused by us or our representatives to areas covered by this addendum will be paid for by the resident.

21. Any items remaining after a resident has vacated the premises will be removed, sold or otherwise disposed of according to the rental agreement, which addresses disposition or sale of property left in an abandoned or surrendered premise. All remedies in the rental agreement apply to areas covered by this addendum.

22. Additional Rules and Regulations-

_____

Resident                   Date

_____

Owners Agent           Date



© 2020, Trinity Property Consultants

*²* *Steve I Osagbue*   *⁴* *Kristin Shafer*

Page **1** of **1**

## Fitness Center Addendum

*05/27/2022*

*Property Owner: FPA/WC Wheaton Station, LLC*
*Resident(s): Steve I Osagbue and all others occupying the property located at*
*Dwelling No:/Address: 11215 Georgia Avenue,1027, Wheaton, MD 20902*
*Lease Date: 05/31/2022*

Resident(s) recognizes that certain equipment, commonly used for exercising, and an area for its use, (hereinafter collectively referred to as the "Exercise Room"), have been made available by the Owner to the Resident. The Resident agrees that use of the Exercise Room shall be restricted to individuals who are of suitable and responsible age. For health and safety reasons, persons under the age of 16 must be accompanied and supervised by a parent, guardian, or legal custodian, or a suitable and responsible authorized representative thereof, at all times. A suitable and responsible representative is defined herein as a person authorized by a parent, guardian, or legal custodian 18 years of age or older. Resident agrees to use the Exercise Room in a prudent manner, in a manner that is consistent with the use of an Exercise Room, a manner that is not offensive or dangerous to Resident or any other users, thereof, and a manner which is in compliance with such policies as shall be established by the Owner or its representatives in connection with the operation of the Exercise Room.

Resident recognizes that the Owner provides the Exercise Room for Resident use only as an incidental service to the Resident and its connection with the Resident leasing of the Apartment. The owner shall have the right to discontinue providing the Exercise Room at any time; that no attendants or supervisors will be provided by the Owner; and that no representatives have any expertise in the operation of the exercise facilities and equipment Room and, therefore, *resident expressly agrees that use of the facilities in the exercise room by resident, residents invitees, guests, occupants and any persons present with the resident's knowledge and consent shall be wholly at residents own risk. Resident agrees to release, hold harmless and indemnify Trinity Property Consultants and their respective representatives. Resident understands that owner makes no representations or warranties, express or implied, that the exercise room and/or the equipment or facilities provided in the exercise room are fit for any particular purpose. Owner disclaims, excludes and denies all warranties and any other implied warranties as to the physical condition and operation of the equipment and facilities provided in the exercise room.*

To the extent that there is any conflict between the provisions of the Lease and this addendum, the provisions of the Lease shall be deemed to supersede and amend to that extent. Except as provided herein, the provisions of the Lease shall remain unaffected. The cost for the Exercise Room key/FOB is **$100**. If a replacement key/FOB is needed or it is not turned in at the time of moveout, a fee of **$100** will be charged.

RESIDENT SIGNATURE                    MANAGERS SIGNATURE



© 2021, Trinity Property Consultants

*¹ Steve I Osagbue    ² Kristin Shafer*

# Arrive Wheaton Blue Moon Lease

## Signature Details

| | Signer | IP Address | Date Signed |
|---|---|---|---|
| | **Arrive Wheaton Blue Moon Lease** | | |
| 1 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 2 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 3 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 4 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 5 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 6 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 7 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 8 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 9 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 10 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 11 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 12 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 13 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 14 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 15 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 16 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 17 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 18 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 19 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 20 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 21 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 22 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 23 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 24 | **Steve I Osagbue**<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |

| 25 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 26 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 27 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 28 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 29 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 30 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 31 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 32 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 33 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 34 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 35 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 36 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 37 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 38 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 39 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 40 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 41 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 42 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 43 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 44 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 45 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 46 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 47 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 48 | **Steve I Osagbue** Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:04 AM |
| 49 | **Kristin Shafer** Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 50 | **Kristin Shafer** Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 51 | **Kristin Shafer** Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |

| 52 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
|----|--------------------------------|--------------|------------------------|
| 53 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 54 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 55 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 56 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 57 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 58 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 59 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 60 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 61 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 62 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 63 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 64 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 65 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 66 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 67 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 68 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 69 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 70 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 71 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 72 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 73 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 74 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 75 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 76 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 77 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 78 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |

| 79 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
|----|---------------------------------|--------------|------------------------|
| 80 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 81 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 82 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 83 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 84 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 85 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 86 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 87 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 88 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 89 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 90 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 91 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 92 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 93 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 94 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 95 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |
| 96 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:25 PM |

**Termination By Owner**

| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:03 AM |
|---|---------------------------------------|--------------|------------------------|
| 2 | Kristin Shafer<br>Owner/Manager       | 108.51.138.8 | 06/01/2022 12:01:36 PM |

**Likeness Agreement**

| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:03 AM |
|---|---------------------------------------|--------------|------------------------|
| 2 | Kristin Shafer<br>Owner/Manager       | 108.51.138.8 | 06/01/2022 12:01:37 PM |

**Green Authorization Addendum**

| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:02 AM |
|---|---------------------------------------|--------------|------------------------|
| 2 | Kristin Shafer<br>Owner/Manager       | 108.51.138.8 | 06/01/2022 12:01:38 PM |

**Smoke Detector Agreement**

| | | | |
|---|---|---|---|
| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:01 AM |
| 2 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:39 PM |

**Construction Addendum**

| | | | |
|---|---|---|---|
| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:01 AM |
| 2 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:01 AM |
| 3 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:39 PM |
| 4 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:39 PM |

**Carbon Monoxide Warning**

| | | | |
|---|---|---|---|
| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:00 AM |
| 2 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:40 PM |

**LLIP_Required Insurance Addendum**

| | | | |
|---|---|---|---|
| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:00 AM |
| 2 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:55:00 AM |
| 3 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:41 PM |
| 4 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:41 PM |

**MD_Lease Contract Initials Acknowledgement**

| | | | |
|---|---|---|---|
| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:54:59 AM |
| 2 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:54:59 AM |
| 3 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:54:59 AM |
| 4 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:42 PM |
| 5 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:42 PM |
| 6 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:42 PM |

**Garage, Carport, Storage and Parking Custom**

| | | | |
|---|---|---|---|
| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:54:58 AM |
| 2 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:54:58 AM |
| 3 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:43 PM |
| 4 | Kristin Shafer<br>Owner/Manager | 108.51.138.8 | 06/01/2022 12:01:43 PM |

**Fitness Center Addendum**

| | | | |
|---|---|---|---|
| 1 | Steve I Osagbue<br>Primary (14950199) | 108.51.138.8 | 06/01/2022 11:54:57 AM |

2    **Kristin Shafer**                    108.51.138.8              06/01/2022 12:01:44 PM
     Owner/Manager

2018R00618 - 017

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, Alyssa Cortijo, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, attest that the information contained in this certification is true and correct. I am employed by Redtail Residential ("Company"), and my title is Property Manager. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Company. The attached records consist generally of Unit #1027 Lease Documents. I further state that:

1. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Company, and they were made by Company as a regular practice; and

2. To the extent the records were generated by an electronic process or system, such records were generated by Company's electronic process or system that produces an accurate result, to wit:

    a. The records were copied from electronic device/s, storage medium/s, or file/s in the custody of Company in a manner to ensure that they are true duplicates of the original records; and

    b. The process or system is regularly verified by Company, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Federal Rules of Evidence 902(11) and 902(13).

09/30/2024
Date

Signature

# Screening Results

## Steve Osagbue

## Details

*Screening Date*

05/26/2022

*Screening Result*

Pass

*Screening Decision*

Approved

*Screening Decision Selected By*

Benjamin Flatt

**Resident Ledger**



**Date: 09/23/2024**

| Code | t9591716 | Property | awheato | Lease From | 05/31/2022 |
|---|---|---|---|---|---|
| Name | Steve Osagbue | Unit | 1027 | Lease To | 05/30/2023 |
| Address | 11215 Georgia Avenue | Status | Past | Move In | 05/31/2022 |
| | Apt #1027 | Rent | 2743.00 | Move Out | 05/16/2024 |
| City | Wheaton, MD 20902 | Phone (H) | | Phone (W) | (443) 362-2551 |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|
| 05/31/2022 | msda | :Posted by QuickTrans (msda) | 750.00 | | 750.00 | 13950875 |
| 05/31/2022 | | chk# :QuickTrans :Posted by QuickTrans | | 750.00 | 0.00 | 10066347 |
| 08/20/2022 | otb | :Posted by QuickTrans (otb) | 3,033.55 | | 3,033.55 | 13953235 |
| 09/01/2022 | madmtx | RUBS - Admin Fee & Taxes - 07/01/22-08/01/22 | 4.61 | | 3,038.16 | 13961097 |
| 09/01/2022 | msewer | Sewer Reimbursement - 07/01/22-08/01/22 | 26.85 | | 3,065.01 | 13961099 |
| 09/01/2022 | mwater | Water Reimbursement - 07/01/22-08/01/22 | 18.20 | | 3,083.21 | 13961101 |
| 09/01/2022 | mparking | Parking (09/2022) | 120.00 | | 3,203.21 | 13966363 |
| 09/01/2022 | maptrent | Monthly Rent (09/2022) | 2,743.00 | | 5,946.21 | 13966815 |
| 09/01/2022 | | chk# 28240745062 :CHECKscan Payment | | 1,000.00 | 4,946.21 | 10070659 |
| 09/04/2022 | | chk# 26620963356 :CHECKscan Payment | | 1,000.00 | 3,946.21 | 10072299 |
| 09/04/2022 | | chk# 28240745073 :CHECKscan Payment | | 1,000.00 | 2,946.21 | 10072300 |
| 10/01/2022 | madmtx | RUBS - Admin Fee & Taxes - 08/01/22-09/01/22 | 4.61 | | 2,950.82 | 13988172 |
| 10/01/2022 | msewer | Sewer Reimbursement - 08/01/22-09/01/22 | 15.00 | | 2,965.82 | 13988173 |
| 10/01/2022 | mwater | Water Reimbursement - 08/01/22-09/01/22 | 9.81 | | 2,975.63 | 13988174 |
| 10/01/2022 | mparking | Parking (10/2022) | 120.00 | | 3,095.63 | 14011115 |
| 10/01/2022 | maptrent | Monthly Rent (10/2022) | 2,743.00 | | 5,838.63 | 14011566 |
| 10/17/2022 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services NSFed by ctrl# 10112423 Automatic NSF FKTCMG8PLJ4, Return Code: R01 Uncollected NSF | | 5,838.63 | 0.00 | 10111051 |
| 10/20/2022 | mnsf | Returned check charge | 35.00 | | 35.00 | 14025302 |
| 10/20/2022 | | chk# :ACH-WEB NSF receipt Ctrl# 10111051 | | (5,838.63) | 5,873.63 | 10112423 |
| 11/01/2022 | madmtx | RUBS - Admin Fee & Taxes - 09/01/22-10/01/22 | 4.61 | | 5,878.24 | 14046281 |
| 11/01/2022 | msewer | Sewer Reimbursement - 09/01/22-10/01/22 | 9.18 | | 5,887.42 | 14046282 |
| 11/01/2022 | mwater | Water Reimbursement - 09/01/22-10/01/22 | 6.12 | | 5,893.54 | 14046283 |
| 11/01/2022 | mparking | Parking (11/2022) | 120.00 | | 6,013.54 | 14065432 |
| 11/01/2022 | maptrent | Monthly Rent (11/2022) | 2,743.00 | | 8,756.54 | 14065861 |
| 11/02/2022 | | chk# 6708104187 :CHECKscan Payment | | 4,000.00 | 4,756.54 | 10128290 |
| 12/01/2022 | madmtx | RUBS - Admin Fee & Taxes - 10/01/22-11/01/22 | 4.61 | | 4,761.15 | 14119911 |
| 12/01/2022 | msewer | Sewer Reimbursement - 10/01/22-11/01/22 | 16.67 | | 4,777.82 | 14119912 |
| 12/01/2022 | mwater | Water Reimbursement - 10/01/22-11/01/22 | 10.88 | | 4,788.70 | 14119913 |
| 12/01/2022 | mparking | Parking (12/2022) | 120.00 | | 4,908.70 | 14133435 |
| 12/01/2022 | maptrent | Monthly Rent (12/2022) | 2,743.00 | | 7,651.70 | 14133904 |
| 01/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 11/01/22-12/01/22 | 4.61 | | 7,656.31 | 14171397 |
| 01/01/2023 | msewer | Sewer Reimbursement - 11/01/22-12/01/22 | 24.45 | | 7,680.76 | 14171399 |
| 01/01/2023 | mwater | Water Reimbursement - 11/01/22-12/01/22 | 16.32 | | 7,697.08 | 14171401 |
| 01/01/2023 | mparking | Parking (01/2023) | 120.00 | | 7,817.08 | 14204826 |
| 01/01/2023 | maptrent | Monthly Rent (01/2023) | 2,743.00 | | 10,560.08 | 14205300 |
| 01/10/2023 | | chk# 28423361035 :CHECKscan Payment | | 1,000.00 | 9,560.08 | 10193935 |
| 01/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 9,697.23 | 14236228 |
| 01/18/2023 | | chk# 28423361024 :CHECKscan Payment | | 1,000.00 | 8,697.23 | 10196992 |
| 01/30/2023 | | chk# 00099 :CHECKscan Payment | | 8,560.08 | 137.15 | 10203551 |
| 02/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 12/01/22-01/01/23 | 4.61 | | 141.76 | 14238469 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 02/01/2023 | msewer | Sewer Reimbursement - 12/01/22-01/01/23 | 17.28 | | 159.04 | 14238470 |
| 02/01/2023 | mwater | Water Reimbursement - 12/01/22-01/01/23 | 11.30 | | 170.34 | 14238471 |
| 02/01/2023 | mparking | Parking (02/2023) | 120.00 | | 290.34 | 14273587 |
| 02/01/2023 | maptrent | Monthly Rent (02/2023) | 2,743.00 | | 3,033.34 | 14274031 |
| 02/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 3,170.49 | 14295719 |
| 03/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 01/01/23-02/01/23 | 4.61 | | 3,175.10 | 14313409 |
| 03/01/2023 | msewer | Sewer Reimbursement - 01/01/23-02/01/23 | 17.27 | | 3,192.37 | 14313411 |
| 03/01/2023 | mwater | Water Reimbursement - 01/01/23-02/01/23 | 11.30 | | 3,203.67 | 14313413 |
| 03/01/2023 | mparking | Parking (03/2023) | 120.00 | | 3,323.67 | 14342500 |
| 03/01/2023 | maptrent | Monthly Rent (03/2023) | 2,743.00 | | 6,066.67 | 14342965 |
| 03/08/2023 | | chk# 00100 :CHECKscan Payment | | 3,000.00 | 3,066.67 | 10246229 |
| 03/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 3,203.82 | 14366042 |
| 04/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 02/01/23-03/01/23 | 4.61 | | 3,208.43 | 14391487 |
| 04/01/2023 | msewer | Sewer Reimbursement - 02/01/23-03/01/23 | 46.78 | | 3,255.21 | 14391488 |
| 04/01/2023 | mwater | Water Reimbursement - 02/01/23-03/01/23 | 32.23 | | 3,287.44 | 14391489 |
| 04/01/2023 | mparking | Parking (04/2023) | 120.00 | | 3,407.44 | 14422222 |
| 04/01/2023 | maptrent | Monthly Rent (04/2023) | 2,743.00 | | 6,150.44 | 14422708 |
| 04/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 6,287.59 | 14445597 |
| 04/13/2023 | | chk# 6708105743 :CHECKscan Payment | | 3,000.00 | 3,287.59 | 10283673 |
| 04/24/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 3,287.59 | 0.00 | 10286898 |
| 05/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 03/01/23-04/01/23 | 4.61 | | 4.61 | 14468701 |
| 05/01/2023 | msewer | Sewer Reimbursement - 03/01/23-04/01/23 | 22.99 | | 27.60 | 14468702 |
| 05/01/2023 | mwater | Water Reimbursement - 03/01/23-04/01/23 | 15.28 | | 42.88 | 14468703 |
| 05/01/2023 | mparking | Parking (05/2023) | 120.00 | | 162.88 | 14495516 |
| 05/01/2023 | maptrent | Monthly Rent (05/2023) | 2,743.00 | | 2,905.88 | 14496024 |
| 05/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 3,043.03 | 14520119 |
| 06/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 04/01/23-05/01/23 | 4.61 | | 3,047.64 | 14559002 |
| 06/01/2023 | msewer | Sewer Reimbursement - 04/01/23-05/01/23 | 19.74 | | 3,067.38 | 14559004 |
| 06/01/2023 | mwater | Water Reimbursement - 04/01/23-05/01/23 | 13.01 | | 3,080.39 | 14559006 |
| 06/01/2023 | mparking | Parking (06/2023) | 120.00 | | 3,200.39 | 14568425 |
| 06/01/2023 | maptrent | Monthly Rent (06/2023) | 2,743.00 | | 5,943.39 | 14568921 |
| 06/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 6,080.54 | 14593490 |
| 07/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 05/01/23-06/01/23 | 4.61 | | 6,085.15 | 14628887 |
| 07/01/2023 | msewer | Sewer Reimbursement - 05/01/23-06/01/23 | 28.32 | | 6,113.47 | 14628888 |
| 07/01/2023 | mwater | Water Reimbursement - 05/01/23-06/01/23 | 19.07 | | 6,132.54 | 14628889 |
| 07/01/2023 | mparking | Parking (07/2023) | 120.00 | | 6,252.54 | 14645383 |
| 07/01/2023 | maptrent | Monthly Rent (07/2023) | 2,743.00 | | 8,995.54 | 14645940 |
| 07/14/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 9,132.69 | 14672828 |
| 08/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 06/01/23-07/01/23 | 4.61 | | 9,137.30 | 14696900 |
| 08/01/2023 | msewer | Sewer Reimbursement - 06/01/23-07/01/23 | 11.68 | | 9,148.98 | 14696901 |
| 08/01/2023 | mwater | Water Reimbursement - 06/01/23-07/01/23 | 7.40 | | 9,156.38 | 14696902 |
| 08/01/2023 | mparking | Parking (08/2023) | 120.00 | | 9,276.38 | 14722040 |
| 08/01/2023 | maptrent | Monthly Rent (08/2023) | 2,743.00 | | 12,019.38 | 14722579 |
| 08/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 12,156.53 | 14753143 |
| 09/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 07/01/23-08/01/23 | 4.61 | | 12,161.14 | 14793026 |
| 09/01/2023 | msewer | Sewer Reimbursement - 07/01/23-08/01/23 | 12.73 | | 12,173.87 | 14793027 |
| 09/01/2023 | mwater | Water Reimbursement - 07/01/23-08/01/23 | 8.13 | | 12,182.00 | 14793028 |
| 09/01/2023 | maptrent | Monthly Rent (09/2023) | 2,743.00 | | 14,925.00 | 14804381 |
| 09/01/2023 | mgarage | Garage Rent (09/2023) | 150.00 | | 15,075.00 | 14804382 |
| 09/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 15,212.15 | 14835140 |
| 10/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 08/01/23-09/01/23 | 4.61 | | 15,216.76 | 14868564 |
| 10/01/2023 | msewer | Sewer Reimbursement - 08/01/23-09/01/23 | 12.74 | | 15,229.50 | 14868565 |
| 10/01/2023 | mwater | Water Reimbursement - 08/01/23-09/01/23 | 8.27 | | 15,237.77 | 14868566 |
| 10/01/2023 | maptrent | Monthly Rent (10/2023) | 2,743.00 | | 17,980.77 | 14893071 |
| 10/01/2023 | mgarage | Garage Rent (10/2023) | 150.00 | | 18,130.77 | 14893072 |
| 10/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 18,267.92 | 14910573 |
| 11/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 09/01/23-10/01/23 | 4.61 | | 18,272.53 | 14943102 |
| 11/01/2023 | msewer | Sewer Reimbursement - 09/01/23-10/01/23 | 35.18 | | 18,307.71 | 14943103 |
| 11/01/2023 | mwater | Water Reimbursement - 09/01/23-10/01/23 | 24.35 | | 18,332.06 | 14943104 |
| 11/01/2023 | maptrent | Monthly Rent (11/2023) | 2,743.00 | | 21,075.06 | 14952586 |
| 11/01/2023 | mmtm | Month To Month Prem (11/2023) | 300.00 | | 21,375.06 | 14952587 |
| 11/01/2023 | mgarage | Garage Rent (11/2023) | 150.00 | | 21,525.06 | 14952588 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 11/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 21,662.21 | 14990121 |
| 12/01/2023 | madmtx | RUBS - Admin Fee & Taxes - 10/01/23-11/01/23 | 4.61 | | 21,666.82 | 15020304 |
| 12/01/2023 | msewer | Sewer Reimbursement - 10/01/23-11/01/23 | 55.10 | | 21,721.92 | 15020305 |
| 12/01/2023 | mwater | Water Reimbursement - 10/01/23-11/01/23 | 38.49 | | 21,760.41 | 15020306 |
| 12/01/2023 | mgarage | Garage Rent (12/2023) | 150.00 | | 21,910.41 | 15048754 |
| 12/01/2023 | maptrent | Monthly Rent (12/2023) | 2,743.00 | | 24,653.41 | 15048755 |
| 12/01/2023 | mmtm | Month To Month Prem (12/2023) | 300.00 | | 24,953.41 | 15048756 |
| 12/01/2023 | | chk# 333474107 :CHECKscan Payment | | 2,900.00 | 22,053.41 | 10519106 |
| 12/11/2023 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 22,190.56 | 15062393 |
| 12/13/2023 | | chk# 33349834-1 | | 8,000.00 | 14,190.56 | 10528885 |
| 12/13/2023 | | chk# 33348308-5 | | 7,000.00 | 7,190.56 | 10528886 |
| 12/13/2023 | | chk# 3352015-4 | | 8,000.00 | (809.44) | 10528887 |
| 01/01/2024 | madmtx | RUBS - Admin Fee & Taxes - 11/01/23-12/01/23 | 4.61 | | (804.83) | 15096339 |
| 01/01/2024 | msewer | Sewer Reimbursement - 11/01/23-12/01/23 | 57.63 | | (747.20) | 15096341 |
| 01/01/2024 | mwater | Water Reimbursement - 11/01/23-12/01/23 | 40.19 | | (707.01) | 15096343 |
| 01/01/2024 | mmtm | Month To Month Prem (01/2024) | 300.00 | | (407.01) | 15116295 |
| 01/01/2024 | maptrent | Monthly Rent (01/2024) | 2,743.00 | | 2,335.99 | 15116296 |
| 01/01/2024 | mgarage | Garage Rent (01/2024) | 150.00 | | 2,485.99 | 15116297 |
| 01/11/2024 | mlate | Late Fee, 5% of $2743.00 | 137.15 | | 2,623.14 | 15134845 |
| 02/01/2024 | madmtx | RUBS - Admin Fee & Taxes - 12/01/23-01/01/24 :Write Off by Charge Ctrl# 15440398 | 4.61 | | 2,627.75 | 15164005 |
| 02/01/2024 | msewer | Sewer Reimbursement - 12/01/23-01/01/24 :Write Off by Charge Ctrl# 15440399 | 48.08 | | 2,675.83 | 15164006 |
| 02/01/2024 | mwater | Water Reimbursement - 12/01/23-01/01/24 :Write Off by Charge Ctrl# 15440400 | 33.65 | | 2,709.48 | 15164007 |
| 02/01/2024 | mgarage | Garage Rent (02/2024) | 150.00 | | 2,859.48 | 15194319 |
| 02/01/2024 | maptrent | Monthly Rent (02/2024) :Write Off by Charge Ctrl# 15440404 | 2,743.00 | | 5,602.48 | 15194320 |
| 02/01/2024 | mmtm | Month To Month Prem (02/2024) :Write Off by Charge Ctrl# 15440405 | 300.00 | | 5,902.48 | 15194321 |
| 02/11/2024 | mlate | Late Fee, 5% of $2743.00 :Write Off by Charge Ctrl# 15440410 | 137.15 | | 6,039.63 | 15207563 |
| 03/01/2024 | madmtx | RUBS - Admin Fee & Taxes - 01/01/24-02/01/24 :Write Off by Charge Ctrl# 15440418 | 4.61 | | 6,044.24 | 15237929 |
| 03/01/2024 | msewer | Sewer Reimbursement - 01/01/24-02/01/24 :Write Off by Charge Ctrl# 15440419 | 32.08 | | 6,076.32 | 15237930 |
| 03/01/2024 | mwater | Water Reimbursement - 01/01/24-02/01/24 :Write Off by Charge Ctrl# 15440420 | 22.06 | | 6,098.38 | 15237931 |
| 03/01/2024 | mgarage | Garage Rent (03/2024) | 150.00 | | 6,248.38 | 15257951 |
| 03/01/2024 | maptrent | Monthly Rent (03/2024) :Write Off by Charge Ctrl# 15440422 | 2,743.00 | | 8,991.38 | 15257952 |
| 03/01/2024 | mmtm | Month To Month Prem (03/2024) :Write Off by Charge Ctrl# 15440423 | 300.00 | | 9,291.38 | 15257953 |
| 03/01/2024 | mllip | Steve Osagbue - charge_id: 793877 :Write Off by Charge Ctrl# 15440428 | 10.95 | | 9,302.33 | 15270837 |
| 03/11/2024 | mlate | Late Fee, 5% of $2743.00 :Write Off by Charge Ctrl# 15440431 | 137.15 | | 9,439.48 | 15280631 |
| 03/27/2024 | | chk# 333543723 :CHECKscan Payment | | 3,000.00 | 6,439.48 | 10613522 |
| 04/01/2024 | madmtx | RUBS - Admin Fee & Taxes - 02/01/24-03/01/24 :Write Off by Charge Ctrl# 15440440 | 4.61 | | 6,444.09 | 15313707 |
| 04/01/2024 | msewer | Sewer Reimbursement - 02/01/24-03/01/24 :Write Off by Charge Ctrl# 15440441 | 43.06 | | 6,487.15 | 15313708 |
| 04/01/2024 | mwater | Water Reimbursement - 02/01/24-03/01/24 :Write Off by Charge Ctrl# 15440442 | 30.01 | | 6,517.16 | 15313709 |
| 04/01/2024 | mgarage | Garage Rent (04/2024) | 150.00 | | 6,667.16 | 15335462 |
| 04/01/2024 | maptrent | Monthly Rent (04/2024) :Write Off by Charge Ctrl# 15440449 | 2,743.00 | | 9,410.16 | 15335463 |
| 04/01/2024 | mmtm | Month To Month Prem (04/2024) :Write Off by Charge Ctrl# 15440450 | 300.00 | | 9,710.16 | 15335464 |
| 04/01/2024 | mllip | Steve Osagbue - charge_id: 852348 :Write Off by Charge Ctrl# 15440454 | 10.95 | | 9,721.11 | 15347960 |
| 04/11/2024 | mlate | Late Fee, 5% of $2743.00 :Write Off by Charge Ctrl# 15440459 | 137.15 | | 9,858.26 | 15358707 |
| 05/01/2024 | madmtx | RUBS - Admin Fee & Taxes - 03/01/24-04/01/24 :Write Off by Charge Ctrl# 15440467 | 4.61 | | 9,862.87 | 15390397 |
| 05/01/2024 | msewer | Sewer Reimbursement - 03/01/24-04/01/24 :Write Off by Charge Ctrl# 15440468 | 46.10 | | 9,908.97 | 15390398 |
| 05/01/2024 | mwater | Water Reimbursement - 03/01/24-04/01/24 :Write Off by Charge Ctrl# 15440469 | 32.21 | | 9,941.18 | 15390399 |
| 05/01/2024 | mllip | Steve Osagbue - charge_id: 928145 :Write Off by Charge Ctrl# 15440472 | 10.95 | | 9,952.13 | 15403979 |
| 05/01/2024 | mgarage | Garage Rent (05/2024) | 150.00 | | 10,102.13 | 15418137 |
| 05/01/2024 | maptrent | Monthly Rent (05/2024) :Write Off by Charge Ctrl# 15440476 | 2,743.00 | | 12,845.13 | 15418138 |
| 05/01/2024 | mmtm | Month To Month Prem (05/2024) :Write Off by Charge Ctrl# 15440477 | 300.00 | | 13,145.13 | 15418139 |
| 05/11/2024 | mlate | Late Fee, 5% of $2743.00 :Write Off by Charge Ctrl# 15440484 | 137.15 | | 13,282.28 | 15434908 |

| Date | Code | Description | Amount | | Balance | Ctrl# |
|---|---|---|---|---|---|---|
| 05/16/2024 | msda | :Security Deposit credit | (750.00) | | 12,532.28 | 15439538 |
| 05/16/2024 | maptrent | Monthly Rent (05/2024) Credit 15 days | (1,280.07) | | 11,252.21 | 15439539 |
| 05/16/2024 | mmtm | Month To Month Prem (05/2024) Credit 15 days | (140.00) | | 11,112.21 | 15439540 |
| 05/16/2024 | mgarage | Garage Rent (05/2024) Credit 15 days | (70.00) | | 11,042.21 | 15439541 |
| 05/16/2024 | moveout | Security Deposit Interest | (51.70) | | 10,990.51 | 15439542 |
| 05/16/2024 | moveout | Trash Out Fee :Write Off by Charge Ctrl# 15440506 | 500.00 | | 11,490.51 | 15439543 |
| 05/17/2024 | moveout | Final Move Out Service Fee :Write Off by Charge Ctrl# 15440496 | 10.00 | | 11,500.51 | 15438105 |
| 05/17/2024 | madmtx | Final RUBS - Admin Fee & Taxes :Write Off by Charge Ctrl# 15440497 | 4.61 | | 11,505.12 | 15438106 |
| 05/17/2024 | msewer | Final Sewer Reimbursement - 04/02/24-05/16/24 :Write Off by Charge Ctrl# 15440498 | 64.83 | | 11,569.95 | 15438107 |
| 05/17/2024 | mwater | Final Water Reimbursement - 04/02/24-05/16/24 :Write Off by Charge Ctrl# 15440499 | 45.30 | | 11,615.25 | 15438108 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15164005 RUBS - Admin Fee & Taxes - 12/01/23-01/01/24 | (4.61) | | 11,610.64 | 15440398 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15164006 Sewer Reimbursement - 12/01/23-01/01/24 | (48.08) | | 11,562.56 | 15440399 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15164007 Water Reimbursement - 12/01/23-01/01/24 | (33.65) | | 11,528.91 | 15440400 |
| 05/23/2024 | mwriteof | :Write Off Charge Ctrl#15194320 Monthly Rent (02/2024) | (674.37) | | 10,854.54 | 15440404 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15194321 Month To Month Prem (02/2024) | (300.00) | | 10,554.54 | 15440405 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15207563 Late Fee, 5% of $2743.00 | (137.15) | | 10,417.39 | 15440410 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15237929 RUBS - Admin Fee & Taxes - 01/01/24-02/01/24 | (4.61) | | 10,412.78 | 15440418 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15237930 Sewer Reimbursement - 01/01/24-02/01/24 | (32.08) | | 10,380.70 | 15440419 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15237931 Water Reimbursement - 01/01/24-02/01/24 | (22.06) | | 10,358.64 | 15440420 |
| 05/23/2024 | mwriteof | :Write Off Charge Ctrl#15257952 Monthly Rent (03/2024) | (2,743.00) | | 7,615.64 | 15440422 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15257953 Month To Month Prem (03/2024) | (300.00) | | 7,315.64 | 15440423 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15270837 Steve Osagbue - charge_id: 793877 | (10.95) | | 7,304.69 | 15440428 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15280631 Late Fee, 5% of $2743.00 | (137.15) | | 7,167.54 | 15440431 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15313707 RUBS - Admin Fee & Taxes - 02/01/24-03/01/24 | (4.61) | | 7,162.93 | 15440440 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15313708 Sewer Reimbursement - 02/01/24-03/01/24 | (43.06) | | 7,119.87 | 15440441 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15313709 Water Reimbursement - 02/01/24-03/01/24 | (30.01) | | 7,089.86 | 15440442 |
| 05/23/2024 | mwriteof | :Write Off Charge Ctrl#15335463 Monthly Rent (04/2024) | (2,743.00) | | 4,346.86 | 15440449 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15335464 Month To Month Prem (04/2024) | (300.00) | | 4,046.86 | 15440450 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15347960 Steve Osagbue - charge_id: 852348 | (10.95) | | 4,035.91 | 15440454 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15358707 Late Fee, 5% of $2743.00 | (137.15) | | 3,898.76 | 15440459 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15390397 RUBS - Admin Fee & Taxes - 03/01/24-04/01/24 | (4.61) | | 3,894.15 | 15440467 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15390398 Sewer Reimbursement - 03/01/24-04/01/24 | (46.10) | | 3,848.05 | 15440468 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15390399 Water Reimbursement - 03/01/24-04/01/24 | (32.21) | | 3,815.84 | 15440469 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15403979 Steve Osagbue - charge_id: 928145 | (10.95) | | 3,804.89 | 15440472 |
| 05/23/2024 | mwriteof | :Write Off Charge Ctrl#15418138 Monthly Rent (05/2024) | (2,743.00) | | 1,061.89 | 15440476 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15418139 Month To Month Prem (05/2024) | (300.00) | | 761.89 | 15440477 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15434908 Late Fee, 5% of $2743.00 | (137.15) | | 624.74 | 15440484 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15438105 Final Move Out Service Fee | (10.00) | | 614.74 | 15440496 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15438106 Final RUBS - Admin Fee & Taxes | (4.61) | | 610.13 | 15440497 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15438107 Final Sewer Reimbursement - 04/02/24-05/16/24 | (64.83) | | 545.30 | 15440498 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15438108 Final Water Reimbursement - 04/02/24-05/16/24 | (45.30) | | 500.00 | 15440499 |
| 05/23/2024 | mwoother | :Write Off Charge Ctrl#15439543 Trash Out Fee | (500.00) | | 0.00 | 15440506 |